FILED BY WC D.C.

MAY - 9 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. <u>18-20710-CR-ALTONAGA(s)(s)</u>
18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

**vs.**

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY,**
**ANTHONY MAUZY,**
**THOMAS SAHS,**
**RAJESH MAHBUBANI, and**
**JOHN SCHOLTES,**

   **Defendants.**
_____/

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Second Superseding Indictment:

## TRICARE PROGRAM

1.     TRICARE was a health care insurance program of the United States Department of

Defense.  TRICARE provided civilian health benefits for military personnel, military retirees, and

military dependents all around the world.  The TRICARE program provided medical coverage for

uniformed service members including those who were active duty and reservists and their families,

survivors and former spouses ("TRICARE beneficiaries").

2.     In order to pay a claim for medical benefits, TRICARE required that the item or service billed must be medically necessary, properly prescribed by a licensed physician and actually provided to a TRICARE beneficiary. As an additional prerequisite to paying a claim, TRICARE required health care providers to collect co-payments from the beneficiary unless specifically excepted by law or regulation ancillary to the provision of items or services. Requiring beneficiaries to pay for part of the services they received discouraged beneficiaries from accepting services they did not need. It was unlawful to routinely waive co-payments under any federal health care program, including TRICARE.

3.     TRICARE had strict regulations regarding the use of telemedicine as a method of treating TRICARE patients. TRICARE did not consider telemedicine a substitute for face-to-face health care except in certain limited situations. One proper use of a telemedicine "visit" was when the patient could not meet a medical professional face to face because they were in a remote location. Another proper use of a telemedicine "visit" was a situation in which there was a need for continuity of care with a specific medical professional. In addition, the originating site where the beneficiary was located for the telemedicine "visit" must be a location where an authorized TRICARE provider normally provided medical services to TRICARE beneficiaries. A patient's home was not a proper originating site for a telemedicine "visit." In addition, proper telemedicine service required the use of some form of video technology in which the patient and the medical professional could see each other and visually interact with each other.

4.     Pharmacy compounding was a practice in which a licensed pharmacist or a licensed physician combined, mixed or altered ingredients of a drug to create a medication tailored to the particular needs of an individual patient.

5.      TRICARE contracted with Express Scripts, Incorporated (ESI) to administer the TRICARE program, specifically for the processing and payment of claims.

6.      TRICARE was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

## MEDICARE PROGRAM

7.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

8.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

9.      Medicare programs covering different types of benefits were separated into different program "parts." Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

### Cancer Genomic Tests

10.     Cancer genomic (CGx) tests were a type of DNA sequencing test used to detect

3

mutations in genes that could be associated with a hereditary cancer syndrome that can indicate an increased risk for the development of cancer. CGx tests did not detect or screen for cancer, but screened for the possibility of an elevated cancer risk in the tested individual.

11.     Medicare covered many routine cancer screening tests that were designed to identify the existence of a malignancy such as chest X-rays, PAP smears and colonoscopies. Because CGx testing was not a diagnostic test, Medicare only covered such tests in limited circumstances, such as when a beneficiary had a personal history of cancer and the beneficiary's treating physician deemed such testing necessary for the beneficiary's treatment.

12.     To conduct CGx testing, a saliva sample was collected from the patient so that a genetic profile could be generated. The saliva sample was submitted to a clinical laboratory for analysis, and the results of the test were sent back to the health care provider that ordered the test.

13.     Pursuant to Federal regulations, for Medicare to pay the cost of a CGx test, the test must be (a) necessary based upon the judgment of a physician who is treating the beneficiary, and (b) the physician must use the results of the test in the management of the beneficiary's specific medical condition. Tests not ordered by the beneficiary's treating physician were not reasonable and not necessary.

### The Defendants and Related Entities

14.     Pharmacy 1, a corporation organized under the laws of the State of Florida, was a pharmacy that purportedly provided pharmaceutical drugs and compounded medications to TRICARE beneficiaries.

15.     Pharmacy 2, a corporation organized under the laws of the State of Oklahoma, was a pharmacy that purportedly provided pharmaceutical drugs and compounded medications to TRICARE beneficiaries.

4

16.     Laboratory 1, a corporation organized under the laws of the State of Georgia, was a laboratory that purportedly provided CGx testing to Medicare beneficiaries.

17.     SKR Services and Ventures, LLC. ("SKR"), a corporation organized under the laws of the State of Florida, was a company that purported to market compound medications to TRICARE beneficiaries.

18.     Med Health Quest, Inc. ("MHQ"), a corporation organized under the laws of the State of Texas, was a company that purported to market compounded medications to TRICARE beneficiaries.

19.     Q Health Services, LLC. ("Q Health"), a DE limited liability company organized under the laws of the State of Texas, was a company that purported to market CGx testing to Medicare beneficiaries.

20.     Defendant **SENTHIL RAMAMURTHY**, a resident of the State of Florida and later the State of Texas, was an owner of SKR, MHQ and Q Health.

21.     MHQ Ventures, LLC., ("MHQV"), a corporation organized under the laws of the State of Texas, was a company that purported to market compounded medications to TRICARE beneficiaries.

22.     Defendant **ANTHONY MAUZY**, a resident of the State of Texas, was an owner and operator of MHQV.

23.     Defendant **THOMAS SAHS**, a resident of the State of Texas, was an owner and operator of MHQV.

24.     Defendant **RAJESH MAHBUBANI**, a resident of the State of Texas, was an owner and operator of MHQV.

5

25.    EMET Advisors, Inc. ("EMET"), a corporation organized under the laws of the State of Florida, was located in the Southern District of Florida.

26.    Defendant **JOHN SCHOLTES**, a resident of the Southern District of Florida, was the president of EMET.

27.    Company 1, a corporation organized under the laws of the State of California, was a company that purported to provide billing services for Pharmacy 1 and Pharmacy 2.

28.    Comfort Medical Center, LLC. ("CMC"), a corporation organized under the laws of the State of Florida, was a medical clinic located in the Southern District of Florida that purported to provide medical services to TRICARE beneficiaries.

29.    Jennifer John Carbon, a resident of the Southern District of Florida, was an owner and officer of CMC.

30.    Valley Internal Medicine, Geriatric and Diabetic Center, P.A., ("Valley Internal Medicine"), a corporation organized under the laws of the State of Texas, was a medical practice that purported to provide medical services to Medicare and TRICARE beneficiaries.

31.    Defendant **MANGALA RAMAMURTHY**, a resident of the State of Texas, was a physician licensed to practice medicine in the State of Texas and a director of Valley Internal Medicine.

32.    Uddin Enterprises, Inc., a corporation organized under the laws of the State of New York, was a company located in the Southern District of Florida that purported to market compound medications to TRICARE beneficiaries.

33.    Asif Uddin, a resident of the State of New York, was the owner and operator of Uddin Enterprises, Inc.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1-6, 14-15, 17-18, and 20-33 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around September, 2014, through in or around July, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY,**
**ANTHONY MAUZY,**
**THOMAS SAHS,**
**RAJESH MAHBUBANI, and**
**JOHN SCHOLTES,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, and with Asif Uddin, Jennifer John Carbon and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.      to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and

promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) paying and receiving kickbacks in exchange for the referral of TRICARE beneficiaries and their accompanying prescriptions to compounding pharmacies, without regard to any medical necessity for the prescribed compounded medications; (b) paying kickbacks to telemedicine companies in exchange for ordering and arranging for the ordering of compounded medicines for TRICARE beneficiaries, without regard for any medical necessity for the prescribed compounded medications; (c) submitting and causing the submission of false and fraudulent claims for compounded medications to TRICARE via interstate wire communication; (d) concealing the submission of false and fraudulent claims to TRICARE, and the receipt of and transfer of fraud proceeds; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others and to further the fraud.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.     **SENTHIL RAMAMURTHY, JOHN SCHOLTES,** and others agreed with Company 1, Pharmacy 1, and Pharmacy 2 to receive as much as 50% of the gross revenues paid by TRICARE in exchange for their recruitment and referral of TRICARE beneficiaries to

Pharmacy 1 and Pharmacy 2, regardless of whether the beneficiaries needed the compounded medications.

5.     **SENTHIL RAMAMURTHY**, through SKR and Med Health Quest, offered and paid kickbacks to co-conspirators via interstate wire communication, including Asif Uddin, Jennifer John Carbon, **ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI,** and **JOHN SCHOLTES,** in exchange for recruiting TRICARE beneficiaries who agreed to order and receive compounded medications from Pharmacy 1 and Pharmacy 2, regardless of whether the beneficiaries needed the compounded medications.

6.     **SENTHIL RAMAMURTHY**, through SKR and Med Health Quest, offered and paid kickbacks to co-conspirators, including Jennifer John Carbon, in exchange for creating false and fraudulent prescriptions for compounded medications, regardless of whether the beneficiaries needed the compounded medications.

7.     **SENTHIL RAMAMURTHY** and others induced TRICARE beneficiaries to agree to order and receive compounded medications from Pharmacy 1 and Pharmacy 2 by falsely representing the beneficiaries' obligation to make co-payments for compounded medications and by instructing co-conspirators, like Asif Uddin, that they could pay the beneficiaries' co-payment.

8.     **ANTHONY MAUZY, THOMAS SAHS** and **RAJESH MAHBUBANI,** through MHQV, offered and paid kickbacks to R.G., B.S., D.B. and others in exchange for the recruitment and referral of TRICARE beneficiaries that they in turn referred to Pharmacy 1 and Pharmacy 2 through **SENTHIL RAMAMURTHY**.

9.     **JOHN SCHOLTES** coordinated and directed the development of pre-printed prescriptions for compounded medications that were transmitted to co-conspirators, including

9

Jennifer John Carbon, who were paid to ratify those prescriptions without regard to the beneficiaries' actual medical need.

10.     **MANGALA RAMAMURTHY** ratified prescriptions and authorized numerous refills for compounded medications for TRICARE beneficiaries regardless of whether the beneficiaries needed the compounded medications and without utilizing a proper telemedicine visit.

11.     **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI, JOHN SCHOLTES** and other co-conspirators caused Pharmacy 1 and Pharmacy 2 to submit false and fraudulent claims to TRICARE, via interstate wire communication, for compounded medications that were induced through kickbacks and other illicit incentives, including co-payment waivers, designed and prescribed for maximum reimbursements and regardless of medical need, and not properly prescribed by a licensed medical professional with a legitimate physician-patient relationship.

12.     As the result of these false and fraudulent claims, TRICARE made payments to Pharmacy 1 and Pharmacy 2 in at least the approximate amount of $6.3 million.  Pharmacy 1 and Pharmacy 2 in turn paid **SENTHIL RAMAMURTHY** approximately $2.5 million through Company 1, via interstate wire communication.

13.     **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI, JOHN SCHOLTES** and others used the fraud proceeds received from Pharmacies 1 and 2 to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-9
## Health Care Fraud
## (18 U.S.C. § 1347)

1.      Paragraphs 1-6, 14-15, 17-18, and 20-33 of the General Allegations section of this

Second Superseding Indictment are re-alleged and incorporated by reference as though fully set

forth herein.

2.      From in or around September, 2014, through in or around July, 2015, in Miami-

Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY,**
**ANTHONY MAUZY,**
**THOMAS SAHS,**
**RAJESH MAHBUBANI, and**
**JOHN SCHOLTES,**

in connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined by Title 18, United States Code, Section

24(b), that is, TRICARE, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices

to unlawfully enrich themselves by, among other things: (a) paying and receiving kickbacks in

exchange for the referral of TRICARE beneficiaries and their accompanying prescriptions to

compounding pharmacies, without regard to any medical necessity for the prescribed compounded

medications; (b) paying kickbacks to telemedicine companies in exchange for ordering and

arranging for the ordering of compounded medicines for TRICARE beneficiaries, without regard for any medical necessity for the prescribed compounded medications; (c) submitting and causing the submission of false and fraudulent claims for compounded medications to TRICARE via interstate wire communication; (d) concealing the submission of false and fraudulent claims to TRICARE, and the receipt of and transfer of fraud proceeds; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others and to further the fraud.

## The Scheme and Artifice

4.     The Manner and Means section of Count 1 of this Second Superseding Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution or Attempted Execution of the Scheme and Artifice

5.     On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant identified in each count, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, TRICARE, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendants submitted and caused the submission of false and fraudulent claims seeking the identified dollar amounts, and representing that Pharmacy 1 and Pharmacy 2 provided compounded medications that were medically necessary and properly prescribed as required by law and by TRICARE regulations, as set forth below:

12

| Count | Defendant(s) | Tricare Beneficiary | Approx. Date of Submission of Claim | Rx No. | Item Claimed and Approx. Amount Claimed |
|---|---|---|---|---|---|
| 2 | **SENTHIL RAMAMURTHY** | J.V. | 12/18/2014 | 102588 | Fluticasone $12,205 |
| 3 | **SENTHIL RAMAMURTHY** | J.R. | 1/21/2015 | 103423 | Lipoic Acid Powder $23,047 |
| 4 | **SENTHIL RAMAMURTHY** | C.M. | 3/2/2015 | 103800 | Lipoic Acid Powder $23,790 |
| 5 | **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, REJESH MAHBUBANI, JOHN SCHOLTES** | J.R. | 3/2/2015 | 103794 | Lipoic Acid Powder $23,790 |
| 6 | **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, REJESH MAHBUBANI, JOHN SCHOLTES** | C.M. | 3/2/2015 | 103802 | Fluticasone $12,283 |
| 7 | **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, REJESH MAHBUBANI, JOHN SCHOLTES** | S.T. | 3/5/2015 | 103797 | Lipoic Acid Powder $23,790 |

| Count | Defendant(s) | Tricare Beneficiary | Approx. Date of Submission of Claim | Rx No. | Item Claimed and Approx. Amount Claimed |
|-------|--------------|---------------------|-------------------------------------|--------|------------------------------------------|
| 8 | SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, REJESH MAHBUBANI, JOHN SCHOLTES | J.H. | 4/9/2015 | 104069 | Fluticasone $13,070 |
| 9 | SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, REJESH MAHBUBANI, JOHN SCHOLTES | D.B. | 4/28/2015 | 104370 | Methyltetra-hydrofolate Powder $3,413 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 10
**Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.      Paragraphs 1-6, 14-15, 17-18, and 20-33 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around September, 2014, through in or around July, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY,**
**ANTHONY MAUZY,**
**THOMAS SAHS,**
**RAJESH MAHBUBANI, and**
**JOHN SCHOLTES,**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly

combine, conspire, confederate and agree with each other, with Asif Uddin and Jennifer John

Carbon, and with others known and unknown to the Grand Jury, to:

a. defraud the United States by impairing, impeding, obstructing, and defeating through

deceitful and dishonest means, the lawful government functions of the United States Department

of Defense in its administration and oversight of the TRICARE program; and to commit certain

offenses against the United States, that is:

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly

and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and

indirectly, overtly and covertly, in cash and in kind, including by wire transfer, in return for

referring an individual to a person for the furnishing and arranging for the furnishing of any item

and service for which payment may be made in whole and in part under a Federal health care

program, that is, TRICARE; and

c.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly

and willfully offering and paying any remuneration, including kickbacks and bribes, directly and

indirectly, overtly and covertly, in cash and in kind, including by wire transfer, to a person to

induce such person to refer an individual to a person for the furnishing and arranging for the

furnishing of any item and service for which payment may be made in whole and in part by a

Federal health care program, that is, TRICARE; and

d.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, to a person in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, this is, TRICARE.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (1) soliciting, receiving, offering and paying kickbacks and bribes in return for recruiting and referring TRICARE beneficiaries to serve as compounded medication pharmacy patients; (2) offering and paying kickbacks to order and arrange for orders for compounded medications for TRICARE beneficiaries; and (3) submitting and causing the submission of claims to TRICARE for compounded medications that compounding pharmacies purported to provide to those TRICARE beneficiaries.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.      **SENTHIL RAMAMURTHY**, through SKR and Med Health Quest, solicited and received kickbacks, including from Pharmacy 1 and Pharmacy 2, in exchange for recruiting and referring TRICARE beneficiaries to those pharmacies, knowing that they would bill TRICARE for compounded medications purportedly dispensed to the recruited TRICARE beneficiaries.

5.      **SENTHIL RAMAMURTHY**, through SKR and Med Health Quest, offered and paid kickbacks to **ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI, JOHN**

**SCHOLTES**, Asif Uddin, Jennifer John Carbon, and others in exchange for the recruitment and referral of TRICARE beneficiaries that **SENTHIL RAMAMURTHY** in turn referred to pharmacies including to Pharmacy 1 and Pharmacy 2.

6.      **ANTHONY MAUZY, THOMAS SAHS** and **RAJESH MAHBUBANI**, through MHQV, offered and paid kickbacks to R.G., B.S, D.B. and others in exchange for the recruitment and referral of TRICARE beneficiaries that they in turn referred to Pharmacy 1 and Pharmacy 2 through **SENTHIL RAMAMURTHY**.

7.      **SENTHIL RAMAMURTHY**, through SKR and Med Health Quest, offered and paid kickbacks to Jennifer John Carbon and others in exchange for the ordering and arranging for ordering compounded medications for TRICARE beneficiaries.

8.      **JOHN SCHOLTES** coordinated and directed the development of pre-printed prescriptions for expensive compounded medications that were transmitted to co-conspirators, including Jennifer John Carbon, who were paid to ratify those prescriptions without regard to actual medical need.

9.      **JOHN SCHOLTES** designed and implemented a system used to track the referral of TRICARE beneficiaries' compounded medication prescriptions to pharmacies in order to calculate the amount of kickbacks owed to **SENTHIL RAMAMURTHY** and their co-conspirators.

10.      **JOHN SCHOLTES** coordinated and directed the movement of TRICARE beneficiaries' prescriptions between one or more compounding pharmacies in an effort to maximize the amount of kickbacks paid to **SENTHIL RAMAMURTHY** and their co-conspirators.

11. **MANGALA RAMAMURTHY** ratified compounded medication prescriptions for TRICARE beneficiaries, knowing that Pharmacies 1 and 2 would fill those prescriptions, and in turn pay kickbacks to **SENTHIL RAMAMURTHY** for those prescriptions.

12. **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI** and **JOHN SCHOLTES** caused TRICARE to pay Pharmacy 1 and Pharmacy 2 reimbursements for compounded medications purportedly dispensed to TRICARE beneficiaries.

13. As the result of these claims, TRICARE made payments to Pharmacy 1 and Pharmacy 2 in at least the approximate amount of $6.3 million.  Pharmacy 1 and Pharmacy 2 in turn paid **SENTHIL RAMAMURTHY** approximately $2.5 through Company 1, via interstate wire communication.

14. **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI, JOHN SCHOLTES** and others used the kickbacks received from Pharmacy 1 and Pharmacy 2 to benefit themselves and others, and to further the scheme.

**OVERT ACTS**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about September 30, 2014, **SENTHIL RAMAMURTHY** obtained an Employer Identification Number from the Internal Revenue Service for SKR.

2. On or about October 4, 2014, **SENTHIL RAMAMURTHY** sent a text message to Asif Uddin offering to pay Uddin 25% for each TRICARE beneficiary Uddin referred to

RAMAMURTHY.

3.      On or about December 2, 2014, **SENTHIL RAMAMURTHY** sent a text message Asif Uddin instructing Uddin how to fill out a pre-printed prescription for compounded medications, and telling Uddin to use pre-paid Visa cards to pay copayments on TRICARE beneficiaries' behalf.

4.      On or about December 3, 2014, **SENTHIL RAMAMURHTY** e-mailed Asif Uddin, Jennifer John Carbon and others a pre-printed MHQ script pad with instructions as to which compounded medications to select and how many refills to authorize.

5.      On or about December 8, 2014, **SENTHIL RAMAMURTHY** e-mailed Jennifer John Carbon a list of TRICARE beneficiaries with script pad instructions.

6.      On or about December 16, 2014, **SENTHIL RAMAMURTHY** e-mailed Jennifer John Carbon instructing her how to fill out a prescription for compounded medications.

7.      On or about January 29, 2015, **SENTHIL RAMAMURTHY**, through SKR, paid Asif Uddin a kickback in the approximate amount of $97,774 in exchange for Uddin's referral of TRICARE beneficiaries to SKR.

8.      On or about January 29, 2015, **SENTHIL RAMAMURTHY**, through SKR, paid CMC a kickback in the approximate amount of $23,939 in exchange for Jennifer John Carbon furnishing and arranging for the furnishing of compound medication prescriptions for TRICARE beneficiaries.

9.      On or about February 18, 2015, **SENTHIL RAMAMURTHY** e-mailed Jennifer John Carbon a pre-printed prescription pad directing Carbon to prescribe "metabolic support and #4 pain crème."

10.     On or about February 27, 2015, **MANGALA RAMAMURTHY** e-mailed

**ANTHONY MAUZY** confirming her contact information.

11.     On or about February 28, 2015, **MANGALA RAMAMURTHY** signed a prescription for compounded medications for TRICARE beneficiary D.B.

12.     On or about February 28, 2015, **MANGALA RAMAMURTHY** signed a prescription for compounded medications for TRICARE beneficiary J.R.

13.     On or about March 16, 2015, **SENTHIL RAMAMURTHY,** through SKR, wired to **JOHN SCHOLTES,** through EMET Advisors, the approximate amount of $105,000 in exchange for **SCHOLTES** coordinating the referral of TRICARE beneficiaries to SKR.

14.     On or about March 23, 2015, **ANTHONY MAUZY, THOMAS SAHS,** and **RAJESH MAHBUBANI,** through MHQV, paid B.S. a kickback in the approximate amount of $2,866 in exchange for B.S.'s referral of TRICARE beneficiaries to MHQV.

15.     On or about March 23, 2015, **ANTHONY MAUZY, THOMAS SAHS,** and **RAJESH MAHBUBANI,** through MHQV, paid D.B. a kickback in the approximate amount of $4,540 in exchange for D.B.'s referral of Tricare beneficiaries to MHQV.

16.     On or about March 31, 2015, **SENTHIL RAMAMURTHY**, through SKR, paid Asif Uddin a kickback in the approximate amount of $33,482 in exchange for Uddin's referral of TRICARE beneficiaries to SKR.

17.     On or about April 15, 2015, **ANTHONY MAUZY, THOMAS SAHS,** and **RAJESH MAHBUBANI,** through MHQV, paid B.S. a kickback in the approximate amount of $15,780 in exchange for B.S.'s referral of TRICARE beneficiaries to MHQV.

18.     On or about April 15, 2015, **ANTHONY MAUZY, THOMAS SAHS,** and **RAJESH MAHBUBANI,** through MHQV, paid R.G. a kickback in the approximate amount of $6,630 in exchange for R.G.'s referral of TRICARE beneficiaries to MHQV.

19.     On or about May 12, 2015, **SENTHIL RAMAMURTHY** caused a kickback payment to be made to SKR in the approximate amount of $550,000 in exchange for referrals of TRICARE beneficiaries to Pharmacy 1 and Pharmacy 2.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 11-24
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1-6, 14-15, 17-18, and 20-33 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants identified in each count did knowingly and willfully solicit and receive any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, this is, TRICARE:

| Count | Defendant(s) | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|---|---|---|---|
| 11 | **SENTHIL RAMAMURTHY** | 12/23/2014 | $55,774 |
| 12 | **ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI** | 3/12/2015 | $78,123 |
| 13 | **SENTHIL RAMAMURTHY** | 3/16/2015 | $155,663 |
| 14 | **ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI** | 3/16/2015 | $25,961 |
| 15 | **JOHN SCHOLTES** | 3/16/2015 | $105,000 |
| 16 | **JOHN SCHOLTES** | 3/17/2015 | $35,000 |

| Count | Defendant(s) | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|-------|--------------|----------------------------------|----------------------------------|
| 17 | ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI | 3/31/2015 | $54,327 |
| 18 | SENTHIL RAMAMURTHY | 4/10/2015 | $488,622 |
| 19 | ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI | 4/14/2015 | $206,376 |
| 20 | SENTHIL RAMAMURTHY | 5/12/2015 | $550,000 |
| 21 | ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI | 5/15/2015 | $170,343 |
| 22 | ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI | 5/26/2015 | $49,490 |
| 23 | SENTHIL RAMAMURTHY | 7/10/2015 | $235,601 |
| 24 | ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI | 7/14/2015 | $66,222 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## COUNTS 25-36
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1.      Paragraphs 1-6, 14-15, 17-18 and 20-33 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants identified in each count did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, as set forth below, to a person, to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, TRICARE:

| Count | Defendant(s) | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|---|---|---|---|
| 25 | **SENTHIL RAMAMURTHY** | 12/24/2014 | $9,636 |
| 26 | **SENTHIL RAMAMURTHY** | 1/29/2015 | $97,774 |
| 27 | **SENTHIL RAMAMURTHY** | 1/29/2015 | $23,939 |
| 28 | **SENTHIL RAMAMURTHY** | 3/16/2015 | $105,000 |
| 29 | **SENTHIL RAMAMURTHY** | 3/27/2015 | $14,890 |
| 30 | **SENTHIL RAMAMURTHY** | 3/31/2015 | $33,482 |
| 31 | **SENTHIL RAMAMURTHY** | 4/14/2015 | $6,855 |
| 32 | **SENTHIL RAMAMURTHY** | 4/20/2015 | $10,000 |
| 33 | **ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI** | 5/18/2015 | $16,587 |
| 34 | **ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI** | 5/18/2015 | $9,763 |
| 35 | **SENTHIL RAMAMURTHY** | 5/20/2015 | $8,000 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNTS 36-38
### False Statements
### (18 U.S.C. §1001(a)(2))

On or about the dates enumerated as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, in a matter within the jurisdiction of the United States Department of Defense, an agency of the executive branch of the Government of the United States, the defendant,

**MANGALA RAMAMURTHY,**

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and

23

representation:

| Count | Approximate Date | False Statement |
|-------|------------------|-----------------|
| 36 | 10/19/2018 | **MANGALA RAMAMURTHY** represented that she did not know that **SENTHIL RAMAMURTHY** had any interest and involvement in MedHealth Quest, when in truth and in fact, as then well known to **MANGALA RAMAMURTHY**, **SENTHIL RAMAMURTHY** did have an interest and involvement in MedHealth Quest. |
| 37 | 10/19/2018 | **MANGALA RAMAMURTHY** represented that she personally spoke to each patient identified in Counts 5-9 of this Second Superseding Indictment when she wrote them prescriptions for compounded medication, when in truth and in fact, as then well known to **MANGALA RAMAMURTHY**, she did not speak to those patients in connection with writing prescriptions for compounded medications. |
| 38 | 10/19/2018 | **MANGALA RAMAMURTHY** denied having any involvement with, and conducting any business on behalf of, SKR, when in truth and in fact, as then well known by **MANGALA RAMAMURTHY**, she did have involvement with, and conducted business on behalf of, SKR. |

In violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## <u>COUNT 39</u>
### Conspiracy to Defraud the United States and to Receive Health Care Kickbacks
### (18 U.S.C. §371)

1.    Paragraphs 7-13, 16, 19-20, 25-26 and 30-31 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by references as though fully set forth herein.

2.    From in or around July, 2016, through in or around December, 2017, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY, and**
**JOHN SCHOLTES,**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to:

a. defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and to commit certain offenses against the United States, that is;

b. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and services for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (1) soliciting and receiving kickbacks in return for recruiting referring Medicare beneficiaries to Laboratory 1 for CGx tests to be paid for by Medicare and without regard to whether the beneficiaries needed the test; and (2) submitting and causing the submission of claims to Medicare for CGx tests that Laboratory 1 purported to provide to those Medicare beneficiaries.

## MANNER AND MEANS

4.     The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the

following:

5.      **SENTHIL RAMAMURTHY** and **JOHN SCHOLTES** negotiated an agreement to recruit and refer Medicare beneficiaries to Laboratory 1 in exchange for kickbacks equaling 45% of the net revenue paid to Laboratory 1 for each CGx test.

6.      **SENTHIL RAMAMURTHY** paid kickbacks to "marketers" to recruit and refer Medicare beneficiaries to Lab 1 for CGx texts to be paid for by Medicare.

7.      **MANGALA RAMAMURTHY** and others recruited Medicare beneficiaries to agree to order CGx tests by falsely and fraudulently representing that the CGx tests were free, could be conducted irrespective of whether the beneficiary had any indicators of cancer, and regardless of whether **MANGALA RAMAMURTHY** was their treating physician.

8.      **MANGALA RAMAMURTHY** falsely and fraudulently signed requisition forms documenting to Laboratory 1 the existence of a medical necessity for CGx tests for Medicare beneficiaries that she never examined or treated.

9.      **MANGALA RAMAMURTHY, SENTHIL RAMAMURTHY, JOHN SCHOLTES** and their co-conspirators submitted and caused the submission of false and fraudulent claims for CGx tests by Laboratory 1 to Medicare.

10.     As a result of the false and fraudulent claims, Medicare paid approximately $2.5 million to Laboratory 1.  Laboratory 1 in turn paid **SENTHIL RAMAMURTHY** $1.44 million.

11.     **SENTHIL RAMAMURTHY, JOHN SCHOLTES** and their co-conspirators used the fraud and kickback proceeds received from Laboratory 1 to benefit themselves and others, and to further the scheme.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.   On or about July 27, 2016, **JOHN SCHOLTES** e-mailed the CEO of Laboratory 1 to negotiate the kickback percentage Laboratory 1 would pay to Q Health in exchange for the referral of beneficiary DNA specimens.

2.   On or about September 15, 2016, **JOHN SCHOLTES** e-mailed the CEO, the Director of Account Management, and another employee at Laboratory 1 requesting a Marketing Services Agreement between Laboratory 1 and Q Health.

3.   On or about September 22, 2016, **SENTHIL RAMAMURTHY** executed a Laboratory Sales Representative Distribution Agreement with Laboratory 1.

4.   On or about September 22, 2016, **MANGALA RAMAMURTHY** completed Laboratory 1's Provider's Preferred Order Form and executed a provider authorization related to DNA specimens referred by **SENTHIL RAMAMURTHY** to Laboratory 1.

5.   On or about November 16, 2016, **MANGALA RAMAMURTHY** signed a Molecular Diagnostics Requisition form requesting CGx testing for Medicare beneficiary M.M.

6.   On or about December 13, 2016, **SENTHIL RAMAMURTHY** sent a text message to a principal of Laboratory 1 stating "Valley Internal Medicine in Texas is out of kits. Please send 50 thx."

7.   On or about December 16, 2016, **MANGALA RAMAMURTHY** signed a Molecular Diagnostics Requisition form requesting CGx testing for Medicare beneficiary A.C.

8.   On or about February 1, 2017, **SENTHIL RAMAMURTHY** received payment

from Laboratory 1 in the approximate sum of $74,217, including kickbacks in exchange for the referral of Medicare beneficiary A.C.'s DNA specimen to Laboratory 1.

9.     On or about February 2, 2017, **MANGALA RAMAMURTHY** signed a Molecular Diagnostics Requisition form requesting CGx testing for Medicare beneficiary M.C.

10.     On or about February 16, 2017, **SENTHIL RAMAMURTHY** e-mailed a principal of Laboratory 1 complaining about the decrease in commissions when the number of DNA samples Q Health was referring to Laboratory 1 was increasing.

11.     On or about February 20, 2017, **SENTHIL RAMAMURTHY** e-mailed a principal of Laboratory 1 and others related to "Medicaid low reimbursement" for DNA samples.

12.     On or about February 20, 2017, **JOHN SCHOLTES** e-mailed **SENTHIL RAMAMURTHY** and a principal of Laboratory 1 regarding a "CGx Org. Call to review billing protocols and reimbursements."

13.     On or about March 15, 2017, **SENTHIL RAMAMURTHY** received payment from Laboratory 1 in the approximate sum of $258,279, including kickbacks in exchange for the referral of Medicare beneficiary M.C.'s DNA specimen to Laboratory 1.

14.     On or about April 3, 2017, **SENTHIL RAMAMURTHY** received payment from Laboratory 1 in the approximate sum of $116,544, including kickbacks in exchange for the referral of Medicare beneficiaries' DNA specimens to Laboratory 1.

15.     On or about April 17, 2017, **JOHN SCHOLTES** sent a text message to an employee of Laboratory 1 asking "do you know when wires will be sent today?"

16.     On or about May 1, 2017, **JOHN SCHOLTES** sent a text message to an employee of Laboratory 1 asking "was Rama's wire sent?  I believe he was told it would be today."

17.     On or about May 15, 2017, **JOHN SCHOLTES** sent a text message to an employee

28

of Laboratory 1 asking: "N, can rama expect his wire today?"

18.     In or around June, 2017, **JOHN SCHOLTES** sent a text message to an employee of Laboratory 1 inquiring about reimbursements on behalf of **SENTHIL RAMAMURTHY.**

19.     On or about July 26, 2017, **SENTHIL RAMAMURTHY** sent a text message to a principal of Laboratory 1, stating: "This entire month has been low.  The lowest since I started back in August.  And there's 1.2 $mil of my samples at the lab."

All in violation of Title 18, United States Code, Section 371.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 982(a)(7))**

1.     The allegations of this Second Superseding Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **SENTHIL RAMAMURTHY, MANGALA RAMAMURTHY, ANTHONY MAUZY, THOMAS SAHS, RAJESH MAHBUBANI,** and **JOHN SCHOLTES,** have an interest.

2.     Upon conviction of a "Federal health care offense," as defined by Title 18, United States Code, Section 24, as alleged in this Second Superseding Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.     Upon conviction, the United States of America will seek entry of a forfeiture money judgment for a sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the Federal health care offenses charged in this Second Superseding Indictment.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

GRAND JURY FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.** 18-CR-20710-CMA(s)(s)

**v.**

SENTHIL RAMAMURTHY,
MANGALA RAMAMURTHY,
ANTHONY MAUZY,
THOMAS SAHS,
RAJESH MAHBUBANI, and
JOHN SCHOLTES,

## CERTIFICATE OF TRIAL ATTORNEY*

_____ **Defendants.** _____/

**Superseding Case Information:**

**Court Division:** (Select One)

| | | | | |
|---|---|---|---|---|
| ✓ | Miami | ___ | Key West | |
| ___ | FTL | ___ | WPB | ___ FTP |

New defendant(s)          Yes ✓   No ___
Number of new defendants        4
Total number of counts        39

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     No
   List language and/or dialect     _____

4. This case will take   20   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

|   | (Check only one) | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ | |
| II | 6 to 10 days | _____ | Minor | _____ | |
| III | 11 to 20 days | ✓ | Misdem. | _____ | |
| IV | 21 to 60 days | _____ | Felony | ✓ | |
| V | 61 days and over | _____ | | | |

6. Has this case previously been filed in this District Court?     (Yes or No)   Yes
   If yes: Judge CECILIA M. ALTONAGA   Case No.  18-CR-20710 and 18-CR-20710(s)
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?     (Yes or No)   No
   If yes: Magistrate Case No.   _____
   Related miscellaneous numbers:   _____
   Defendant(s) in federal custody as of   _____
   Defendant(s) in state custody as of   _____
   Rule 20 from the District of   _____

   Is this a potential death penalty case? (Yes or No)     No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes ___   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes ___   No ✓

KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY
FL Bar No. A5501050

*Penalty Sheet(s) attached

REV 8/13/2018

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:   SENTHIL RAMAMURTHY

Case No:   18-20710-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Twenty (20) Years' Imprisonment

Counts #: 2-9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

Count #: 10

Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**      Five (5) Years' Imprisonment

Counts #:   11, 13, 18, 20, 23

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320(a)-7b(b)(1)(A)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:**  SENTHIL RAMAMURTHY

**Case No:**   18-20710-CR-ALTONAGA(s)(s)

Counts #:   25-32, and 35

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:**       Ten (10) Years' Imprisonment As to Each Count

Count #:   39

Conspiracy to Defraud the United States and to Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**       Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:  MANGALA RAMAMURTHY

**Case No**:   18-20710-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:       Twenty (20) Years' Imprisonment

Counts #: 5-9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**       Ten (10) Years' Imprisonment As to Each Count

Count #: 10

Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**       Five (5) Years' Imprisonment

Counts #: 36-38

False Statements

Title 18, United States Code, Section 1001(a)(2)

**\*Max. Penalty:**       Five (5) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:**  MANGALA RAMAMURTHY

**Case No:**        18-20710-CR-ALTONAGA(s)(s)

Count #: 39

Conspiracy to Defraud the United States and to Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**        Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  ANTHONY MAUZY

**Case No:**   18-20710-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Twenty (20) Years' Imprisonment

Counts #: 5-9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

Count #: 10

Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**      Five (5) Years' Imprisonment

Counts #:   12, 14, 17, 19, 21, 22 and 24

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320(a)-7b(b)(1)(A)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  ANTHONY MAUZY

**Case No:**  18-20710-CR-ALTONAGA(s)(s)

Counts #:  33-34

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  THOMAS SAHS

**Case No**:   18-20710-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:      Twenty (20) Years' Imprisonment

Counts #: 5-9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

Count #: 10

Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**      Five (5) Years' Imprisonment

Counts #:   12, 14, 17, 19, 21, 22 and 24

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320(a)-7b(b)(1)(A)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name:**  THOMAS SAHS

**Case No:**   18-20710-CR-ALTONAGA(s)(s)

Counts #:   33-34

<u>Payment of Kickbacks in Connection with a Federal Health Care Program</u>

<u>Title 42, United States Code, Section 1320a-7b(b)(2)(A)</u>

**\*Max. Penalty:**       Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  RAJESH MAHBUBANI

**Case No:**   18-20710-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**        Twenty (20) Years' Imprisonment

Counts #: 5-9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**        Ten (10) Years' Imprisonment As to Each Count

Count #: 10

Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**        Five (5) Years' Imprisonment

Counts #:   12, 14, 17, 19, 21, 22 and 24

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320(a)-7b(b)(1)(A)

**\*Max. Penalty:**        Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  RAJESH MAHBUBANI

**Case No:**   18-20710-CR-ALTONAGA(s)(s)

Counts #:  33-34

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  JOHN SCHOLTES

**Case No:**   18-20710-CR-ALTONAGA(s)(s)

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      Twenty (20) Years' Imprisonment

Counts #: 5-9

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

Count #: 10

Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**      Five (5) Years' Imprisonment

Counts #:   15 and 16

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320(a)-7b(b)(1)(A)

**\*Max. Penalty:**      Ten (10) Years' Imprisonment As to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** JOHN SCHOLTES

**Case No:** 18-20710-CR-ALTONAGA(s)(s)

Count #: 39

Conspiracy to Defraud the United States and to Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**