```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                    CASE NO.  18-20710-CR-CMA


    UNITED STATES OF AMERICA,

              Plaintiff,

       vs.
                                       Miami, Florida
                                       September 20, 2018
    SENTHIL RAMAMURPHY,                Pages 1-19

              Defendant.
    _____


              TRANSCRIPT OF INITIAL APPEARANCE
         BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
              UNITED STATES MAGISTRATE JUDGE


    APPEARANCES:

    FOR THE PLAINTIFF:
                        United States Attorney's Office
                        BY:  KEVIN LARSEN, A.U.S.A.
                        99 Northeast Fourth Street
                        Miami,  Florida 33132


    FOR THE DEFENDANT:
                        Zuckerman Spaeder, LLP
                        BY:  GREGG BERNSTEIN, ESQ.
                        100 East Pratt Street
                        Suite 2440
                        Baltimore, Maryland 21202



    TRANSCRIBED BY:     DAWN M. SAVINO, RPR
                        Official Court Stenographer
                        400 N. Miami Avenue, 10S03
                        Miami, Florida  33128
                        Telephone:  305-523-5598
```

1                    P-R-O-C-E-E-D-I-N-G-S
2            COURTROOM DEPUTY:  Calling case number
3  18-20710-criminal-Judge Altonaga, this is also a sealed case,
4  Senthil Ramamurthy, United States versus.
5            MR. LARSEN:  Good afternoon, Your Honor.  Kevin Larsen
6  on 2019 on behalf of the United States.
7            THE COURT:  Thank you, Mr. Larsen.  I have a proposed
8  order to unseal this case upon the Defendant's arrest, I've
9  signed it, so it is no longer sealed.
10           MR. LARSEN:  Thank you, Your Honor.
11           THE COURT:  Good morning, Mr. Ramamurthy; is that
12 correct?
13           THE DEFENDANT:  Yes, Your Honor.
14           THE COURT:  Okay.  Sir, you are making your initial
15 appearance today on an indictment that charges you with a
16 conspiracy to commit healthcare and wire fraud, substantive
17 counts of healthcare fraud, a conspiracy to pay and receive
18 healthcare kickbacks, receipt of kickbacks and payment of
19 kickbacks.
20           Do you understand that that is the nature of the
21 charges in the indictment against you?
22           THE DEFENDANT:  Yes, Your Honor.
23           THE COURT:  Okay.  With respect to the maximum
24 penalties that may be imposed in your case, the conspiracy to
25 commit a healthcare fraud carries a 20 year statutory maximum;

```
 1    the substantive healthcare fraud counts each carry a 10 year
 2    stat max; the conspiracy to pay the receipt of kickbacks and the
 3    payment of kickbacks, all of those counts each carry a five year
 4    statutory maximum penalty.
 5             Do you understand those are the maximum penalties the
 6    Government may seek in your case?
 7             THE DEFENDANT:  Yes, Your Honor.
 8             THE COURT:  And Mr. Ramamurthy, do you have your own
 9    counsel or do you wish the Court to appoint one for you?
10             THE DEFENDANT:  I have counsel, Your Honor.
11             THE COURT:  Okay.  Counsel?
12             MR. BERNSTEIN:  Your Honor, that would be me.  I'm
13    Gregg Bernstein, Zuckerman Spaeder.  My partner, Mr. Fernandez,
14    who is a member of the bar of this Court filed a motion *pro hac*
15    *vice* for my admission.  It should be in the ECF, we filed it
16    yesterday.  I'm entering my appearance on behalf of
17    Mr. Ramamurthy, along with my partner, Jack Fernandez.
18             THE COURT:  Okay.  Have you already filed that notice
19    of appearance?
20             MR. BERNSTEIN:  Well, the motion for *pro hac* was filed
21    yesterday.
22             THE COURT:  Okay.
23             MR. BERNSTEIN:  I presume that would have to be -- and
24    the entry of appearance for my partner.
25             THE COURT:  Okay.
```

1     MR. BERNSTEIN:  But I presume the motion would have to
2  be granted before I could formally enter my appearance.
3     THE COURT:  It seems like it would make sense.  I was
4  interested mostly for purposes of whether or not we can arraign
5  your client today.
6     MR. BERNSTEIN:  We can, Your Honor.
7     THE COURT:  Well, we can't if you're not permanently in
8  the case.
9     MR. BERNSTEIN:  I am permanently in the case, Your
10 Honor.
11    THE COURT:  Okay.  Ms. Williams thinks differently.
12 Nothing has been in.  Okay.  We can't.  Okay.  But can't he file
13 it here in court?  Can't he fill out a notice of permanent
14 appearance and we can proceed to arraignment?
15    Okay.  So that's -- we're having some indecision
16 because it said sealed case, it may very well be the case that
17 nothing as of yet has been filed and so, you know, our local
18 rule is very particular about permanent appearance of counsel
19 and whether or not you're in for trial or appellate purposes and
20 that all has to be decided at or before the time of arraignment.
21    So just given the nature of the uncertainty
22 Mr. Bernstein, did you travel to be here for this arraignment?
23    MR. BERNSTEIN:  I did, Your Honor.  I'm from
24 Washington, yes.
25    THE COURT:  And what about Mr. Ramamurthy?  Have you --

```
 1              MR. BERNSTEIN:  He traveled from Texas which is his
 2   home state, Your Honor.
 3              THE COURT:  Okay.  Can we possibly take then the next
 4   item on the calendar and see if we can't figure out if this
 5   arraignment can go forward without violating our local rules so
 6   they don't have to come back?
 7              COURTROOM DEPUTY:  Yes, Judge.  We can do that.
 8              THE COURT:  Okay.  All right.  I'm going to just ask if
 9   you could be patient with us for a moment, we just want to make
10   sure that if we do it wrong today and you have to come back
11   anyway, then I've saved you no time.
12              MR. BERNSTEIN:  Of course, Your Honor.  As I told
13   Mr. Larsen, I thought there might be a wrinkle, but we'll work
14   through it.
15              THE COURT:  Okay.  In the interim though, I imagine
16   we've got a matter of bond to set.
17              MR. LARSEN:  Yes, Your Honor.  The Defendant did appear
18   in the Southern District of Texas, and my understanding is that
19   at least the bond was initially communicated to the magistrate
20   judge there.  Were you there?  But I took a look at the Pretrial
21   Services Report and the bond that's recommended is consistent
22   with my understanding of what -- the bond that the Government
23   would be requesting in this case.  I have to look at page --
24   it's not numbered, but the recommended bond --
25              THE COURT:  Is $100,000 personal surety?
```

1          MR. LARSEN:  I saw it just a moment ago.  This is the
2    order.  So Mr. Bernstein just handed me a copy of an order out
3    of the Southern District of Texas that the Defendant was
4    released on bond in that case with a $250,000, 10% bond; $25,000
5    cash deposit to be signed by both the Defendant and his two
6    parents as co-sureties, then there was an additional $250,000
7    personal surety bond, again signed by the Defendant and his two
8    parents, and the special condition the Defendant's parents were
9    agreeing not to dispose or encumber a property located at 1014
10   Rio Grande Drive in Mission, Texas until the case is resolved.
11         In addition to that, there were some other conditions
12   that the Government is asking for, and I believe it had to do
13   with -- yes, and it's also captured in the order, I'm sorry.
14   The Defendant will participate in active GPS monitoring through
15   home incarceration.  He will be restricted to his place of
16   residence at all times except for medical necessities, court
17   appearances, other activities that are pre-approved by the US
18   Probation office.  One of the court activities that I had
19   contemplated in recommending the bond or negotiating the bond is
20   he would be permitted to obviously meet with his attorneys -- to
21   travel to meet with his attorneys, provided Probation is aware
22   of that.
23         THE COURT:  So it seems like a real high bond.  Why?
24         MR. LARSEN:  Well Your Honor, the case involves at
25   least $7 million in loss to the TRICARE program.

1         THE COURT: Okay.

2         MR. LARSEN: The -- all the money, the whereabouts of
3 the money is unknown at this point.

4         THE COURT: But if he has access to 7 million, then
5 25,000 wouldn't really be much of a contribution if that was the
6 concern.

7         MR. LARSEN: Well, the money I don't -- we don't know
8 where the money is at this point. This was a stipulated bond,
9 Your Honor. It was basically negotiated per the value of the
10 family home. The family home is unencumbered at about 550,000,
11 so the intent was to put the home into the skin in the game, if
12 you will, Your Honor.

13         THE COURT: All right.

14         MR. LARSEN: That's how we fashioned it with those
15 numbers.

16         THE COURT: Okay. So he's going to reside in Texas?

17         MR. LARSEN: That's my understanding.

18         THE COURT: I'm just trying to find the -- oh, there it
19 is, I see the address. Okay. Okay. So the Southern District
20 of Texas will vacate its bond and we'll enter this one?

21         MR. LARSEN: Your Honor, this is -- I actually haven't
22 handled procedurally how this works before. If that's how it
23 works, I certainly will take any order of this Court to report
24 back to the US Attorney's Office in the Southern District of
25 Texas.

1  THE COURT: Yes, ma'am. Just a moment before I do
2  anything else wrong.
3  (Inaudible discussion)
4  THE COURT: Okay. So I think it's actually going to be
5  incumbent on Mr. Bernstein to move to vacate the bond in the
6  Southern District in favor of it here. I'm just thinking about
7  $25,000 being posted in both places as a practical matter,
8  because that's double what was stipulated. So but that's the --
9  your role, and the US Attorney's Office doesn't have to do it.
10  So then with the stipulation of the parties then, the
11  Court will accept that it's -- I lost the page that had it.
12  Here we are. Okay. So it's a -- I'm sorry. I'm looking at
13  this quite different. This has a $25,000 unsecured bond.
14  MR. LARSEN: That's --
15  THE COURT: You have paperwork that says 250,000?
16  MR. BERNSTEIN: Your Honor, if I may, I have an order
17  that I pulled off of ECF, document seven.
18  THE COURT: Do you mind? Can I see a copy?
19  MR. BERNSTEIN: Yes, ma'am.
20  THE COURT: Thank you. Okay. Thank you.
21  Mr. Larsen, I mean, this followed a detention hearing.
22  MR. LARSEN: Yes. There were some confusion, and I
23  wasn't present for the hearing. I spoke to the special
24  assistant united states attorney. The magistrate judge had some
25  concern about the issue of putting the house up, so it was --

1  there was actually never a detention hearing I believe.
2          THE COURT:  Oh, okay.  The order that I've been handed
3  says that a hearing was conducted on September 11, 2018.
4          MR. LARSEN:  There was a bond hearing.  I don't believe
5  -- there was never any detention hearing conducted.  I was in
6  contact on the 11th with the AUSA in McAllen who communicated to
7  me what had occurred at court, and it was the concerns of the
8  magistrate judge related to how mechanically he could effectuate
9  the parties' intended bond, which was to have the home be part
10 of the bond.  He directed the probation office the -- that next
11 day, he directed probation in the Southern District of Texas to
12 contact probation here in the Southern District of Florida to
13 discuss what we do here.  I then spoke with probation and --
14         THE COURT:  Okay.
15         MR. LARSEN:  That next day, and then we did get the
16 bond done, I think that day on the 12th.
17         MR. BERNSTEIN:  Your Honor, if I may, Mr. Ramamurthy
18 was arrested on September the 10th, I believe.
19         THE COURT:  Okay.
20         MR. BERNSTEIN:  And at that time, we -- as Mr. Larsen
21 said, we engaged in conversations with him to reach an agreement
22 about what would be appropriate conditions of release.  And
23 those -- that agreement is reflected in the order.  But as
24 Mr. Larsen noted, for whatever reason, the magistrate judge in
25 Texas had trouble understanding how to document all of this.  So

1  that required Mr. Ramamurthy, unfortunately, to stay detained
2  for about two or three days just to work out the paperwork,
3  that's all it was.
4      THE COURT: It happens.
5      MR. BERNSTEIN: It happens. So it finally was resolved
6  to his satisfaction, and the property was posted and it's,
7  again, reflected in the order that you have before you.
8      THE COURT: Okay. Now last practical question: How do
9  we effectuate a bond here that is going to, as a condition,
10 require nonencumbrance of the property which was probably a
11 condition of that bond such that entry of this bond would
12 violate that one. Or have we thought this through?
13     MR. LARSEN: My understanding, Your Honor, is it's a
14 voluntary -- it's a signed -- the parents will sign something as
15 part of their agreement that they agree --
16     THE COURT: Not to encumber.
17     MR. LARSEN: They are agreeing not to encumber the
18 property.
19     THE COURT: Okay.
20     MR. LARSEN: That it is pledged as collateral in
21 support of the two bounds, they're co-signers on the bond.
22     THE COURT: Okay. Let me address you individually,
23 Mr. Ramamurthy. Have you been able to understand the discussion
24 regarding the conditions of your bond here as we talk about
25 various amounts of money and encumbrances?

1          THE DEFENDANT:  Yes.
2          THE COURT:  Okay.  The recommendation between your
3   counsel and the Government is that this Court adopt and simply
4   impose the same conditions of bond, financial, and the special
5   conditions that was previously imposed in Texas.  Do you
6   understand that's the recommendation that's being made here?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  Okay.  And do you feel like you understand
9   that bond that was entered in the Southern District of Texas
10  sufficiently that you'll understand it if I enter the same
11  conditions here?
12         THE DEFENDANT:  Yes, Your Honor.
13         THE COURT:  And is that what you want me to do?
14         THE DEFENDANT:  Yes, Your Honor.
15         THE COURT:  Okay.  Court will adopt the parties'
16  recommendation and impose a bond that consists of a $250,000 10%
17  bond, requiring a $25,000 cash deposit and a $25,000 personal
18  surety bond which will be co-signed by both of the parents of
19  Mr. Ramamurthy.
20         Mr. Larsen, any objection to me giving seven days to
21  obtain those signatures so that he doesn't have to stay in while
22  that's being obtained?
23         MR. LARSEN:  No.  No objection.
24         THE COURT:  Okay.  And as a special condition of the
25  bond, it will remain the case that your parents can't encumber

```
 1    their ownership of that house at 1014 Rio Grande Drive in
 2    Mission, Texas.  Okay?  You will continue to reside in that home
 3    with your parents, that means that you'll be responsible for
 4    getting back and forth to this district.  You understand?
 5            THE DEFENDANT:  Yes, Your Honor.
 6            THE COURT:  Okay.  I see you on your feet.  What did I
 7    do?  Nothing yet.
 8            THE PROBATION OFFICER:  Nothing, Your Honor.  We would
 9    like to recommend an additional special condition.  Should the
10    Defendant be employed, not to be employed in the healthcare
11    field.
12            THE COURT:  Okay.  Thank you for that.  So we're going
13    to have special conditions of your bond which will include that
14    you will surrender to Pretrial Services as directed, and correct
15    me if I'm wrong, that will remain in the Southern District of
16    Texas, right?
17            THE PROBATION OFFICER:  I believe so, Your Honor.
18            THE COURT:  Okay.  You'll surrender any travel
19    documents or passports, not obtain any new ones.  Have you
20    already surrendered your travel documents?
21            THE DEFENDANT:  Yes, Your Honor.
22            THE COURT:  You have.  I can see that.
23            Are you currently employed?
24            THE DEFENDANT:  No, Your Honor.
25            THE COURT:  Okay.  So then -- so we're going to be
```

1   doing home confinement; is that right?
2           MR. LARSEN:  Yes, Your Honor.
3           THE COURT:  So then you will not be seeking gainful
4   employment during that time with allowances just for court
5   appearances, legal appointments, medical appointments.
6   Mr. Bernstein, does he need other allowances besides those
7   three?  I'll repeat them because I know you were with the
8   Marshal.
9           MR. BERNSTEIN:  I heard Your Honor.
10          THE COURT:  Okay.
11          MR. BERNSTEIN:  Contrary to what my wife says, I can
12  multitask.  Those -- yes.
13          THE COURT:  I'll give her a chance for rebuttal.  Those
14  are the only three that he needs allowances for?
15          MR. BERNSTEIN:  Yes, ma'am.
16          THE COURT:  Travel extended to the Southern District of
17  Texas.  Is there any other district that we need to visit or is
18  it just these two?
19          MR. BERNSTEIN:  Well, my office is in the state of
20  Maryland, so to meet --
21          THE COURT:  Well done, sir.  Baltimore?
22          MR. BERNSTEIN:  Yes.
23          THE COURT:  That's where I'm from.
24          MR. BERNSTEIN:  Really?
25          THE COURT:  Yes.

1   MR. BERNSTEIN: Oh, okay.
2   THE COURT: So, Mr. Larsen --
3   MR. BERNSTEIN: I'll ask you the question, Your Honor,
4   if you're from Baltimore, you'll understand. Where did you go
5   to school?
6   THE COURT: Bryn Mawr.
7   MR. BERNSTEIN: There you go. I'm around the corner.
8   THE COURT: Wow. I can't believe I just put that on
9   the record. Thanks, Mr. Bernstein.
10   Mr. Larsen, is there any objection to the Defendant
11   traveling to the District of Maryland for legal counsel?
12   MR. LARSEN: No. I anticipated that the District of
13   Maryland would be implicated in travel.
14   THE COURT: Okay. All right. Pretrial, so we have
15   that, both the Southern District of Texas, District of Maryland,
16   Southern District of Florida.
17   MR. BERNSTEIN: Can we also do the Middle District of
18   Florida where my partner's office is in Tampa?
19   THE COURT: Mr. Larsen?
20   MR. LARSEN: That's fine, Your Honor.
21   THE COURT: No objection. So we're going to include
22   the Middle District as well.
23   The home confinement and -- rather, the GPS will be
24   paid for by the Defendant. Pretrial services makes me say that.
25   Okay. Is that all the special conditions?

```
1              THE PROBATION OFFICER:  Yes, Your Honor.
2              THE COURT:  Okay.  Anything else, Mr. Larsen?
3              MR. LARSEN:  Nothing from the Government.
4              THE COURT:  Okay.  Then what did we decide, Ms.
5    Williams?  Can we do the permanent appearance paperwork?  No.
6    It's because of the sealing.  Okay.
7              But what you can do is waive -- okay.  So
8    Mr. Bernstein, we can't proceed with the arraignment because we
9    can't facilitate your permanent appearance, but what we can do
10   is you can execute a waiver for his appearance at the
11   arraignment should you decide that that's appropriate, and your
12   local counsel can come in for you, neither of you have to
13   presently appear.
14             But I'm going to reschedule -- I'm sorry, yeah.  I'm
15   going to schedule the arraignment for you, do you have a
16   preference as to when I set it for?
17             MR. BERNSTEIN:  No, Your Honor.
18             THE COURT:  You want me to put it down for sometime
19   next week?
20             MR. BERNSTEIN:  Yes, Your Honor.
21             THE COURT:  All right.  Then we'll put it down for
22   Thursday the 27th, it will be at 10 a.m. in front of the duty
23   magistrate judge.
24             And has Mr. Ramamurthy received a copy of the
25   indictment in this case?
```

```
1            MR. LARSEN:  Yes.
2            MR. BERNSTEIN:  He has, Your Honor.
3            THE COURT:  Okay.  So it's on the record that he has
4    already received and you've reviewed it with him?
5            MR. BERNSTEIN:  Yes.
6            THE COURT:  Okay.  Well, that's half of your waiver.
7    So someone will see you then in front of the duty judge next
8    week.
9            MR. BERNSTEIN:  May I ask just a couple questions, Your
10   Honor?
11           THE COURT:  Sure.
12           MR. BERNSTEIN:  First, with respect to the conditions
13   of release, is there anything more we have to do to walk out of
14   here today or are they all just transferred over?
15           THE COURT:  I think you have to sign the bond
16   paperwork.  I have to sign the bond paperwork, and I think you
17   have to go across the street to the 7th floor to report to
18   pretrial and then --
19           MR. BERNSTEIN:  For the fingerprint and photographing,
20   but that's it.  We don't have to post any --
21           THE COURT:  That's a Marshal's question.  Oh, okay.  So
22   for purposes of the posting --
23           MR. BERNSTEIN:  Yes.
24           THE COURT:  Do you need additional time in order to
25   post the 25,000?
```

```
1              MR. BERNSTEIN:  Yes.  Yes.
2              THE COURT:  Mr. Larsen, do you have any objection to
3    that?
4              MR. LARSEN:  No, Judge.
5              THE COURT:  Okay.  Seven days?
6              MR. BERNSTEIN:  Sure.  That's fine.
7              THE COURT:  Okay.  So both of those conditions of the
8    bond can be met within the next seven days.  Those are the
9    signatures and the posting of the 25,000.
10             MR. BERNSTEIN:  And again, Your Honor, I'm sorry to
11   take up your time, but the point would be that the order in
12   Texas is rescinded?
13             THE COURT:  No, I can't do that.
14             MR. BERNSTEIN:  I have to file a motion in Texas?
15             THE COURT:  Yes, you do.
16             MR. BERNSTEIN:  Okay.  And then once that is rescinded,
17   whatever money was posted then will be released and whatever
18   encumbrances that were on the property will be released, and
19   then it will all have to be encumbered here as part of your
20   order?
21             THE COURT:  Well, it's actually a nonencumbrance.  The
22   condition is that the parents agree not to encumber their
23   property.
24             MR. BERNSTEIN:  I'm sorry, poor language.
25             THE COURT:  It's okay, because I thought that I had
```

```
 1   heard that part of the Texas bond was that the house was
 2   actually collateralized and that they weren't allowed to
 3   encumber and that you wanted both of those done here.
 4            MR. BERNSTEIN:  Right.
 5            THE COURT:  Which would contradict each other, but it's
 6   fine.
 7            MR. BERNSTEIN:  I'm just trying to avoid what you had
 8   said, Your Honor, about having to pay $25,000 twice.  So we
 9   would get that released and then we can just transfer it over?
10            THE COURT:  Yes.  That's how it would work if it were
11   here and it was our bond being vacated in favor of somebody
12   else's.  I am guessing that the Southern District does it the
13   same.
14            MR. BERNSTEIN:  We will endeavor to take care of that.
15            THE COURT:  Okay.  Is there anything further?
16            MR. LARSEN:  No, thank you.
17            MR. BERNSTEIN:  I'm going to speak to the clerk though
18   because I think she wants to educate me on some things.
19            THE COURT:  Right.  Okay.  All right then.
20            MR. BERNSTEIN:  I always listen to the clerk, Your
21   Honor.
22            THE COURT:  As do I.
23            So then your next proceeding, Mr. Ramamurthy, will be
24   in front of the duty magistrate judge next week.  Your case has
25   been indicted in front of Judge Altonaga, so beyond that, I will
```

refer you to her chambers for all future scheduling and proceedings.

I won't see you again and I wish you the best of luck, sir.

THE DEFENDANT: Thank you, Your Honor.

(PROCEEDINGS CONCLUDED)

\* \* \* \* \*

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the digital audio recording of proceedings in the above-entitled matter.

<u>7/15/2019</u>        <u>/s/ Dawn M. Savino</u>
Date             DAWN M. SAVINO, RPR

**PROCEEDINGS RECORDED BY DIGITAL AUDIO RECORDING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION**