UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20710-CR-ALTONAGA

UNITED STATES OF AMERICA

vs.

SENTHIL RAMAMURTHY,
MANGALA RAMAMURTHY,
ANTHONY MAUZY,
THOMAS SAHS,
RAJESH MAHBUBANI, and
JOHN SCHOLTES,

    Defendants.
_____/

**DEFENDANTS ANTHONY MAUZY, THOMAS SAHS, AND RAJESH MAHUBABI'S MOTION FOR MISJOINDER AND INCORPORATED MEMORANDUM OF LAW**

    Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B) and 8(b), defendants Anthony Mauzy, Thomas Sahs, and Rajesh Mahbubani (the "MHQV Marketing Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Second Superseding Indictment as to the MHQV Marketing Defendants, or, in the alternative, sever the MHQV Marketing Defendants from the Second Superseding Indictment. The Court must dismiss or sever the MHQV Marketing Defendants from this action because it misjoins multiple distinct conspiracies—at least one of which does not involve the MHQV Marketing Defendants—in violation of Federal Rule of Criminal Procedure 8(b).

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    The history of this case long pre-dates the filing of charges against the MHQV Marketing Defendants. On August 30, 2018, the United States filed an indictment charging Senthil Ramamurthy with conspiracy to commit health care fraud and wire fraud, health care fraud, conspiracy to pay and receive kickbacks, receipt of kickbacks, and payment of kickbacks. (ECF

3). On December 13, 2018, the United States entered a superseding indictment charging Mangala Ramamurthy in the same conspiracy as her son Senthil, which caused the Court to continue the trial by four months. (ECF 32; 87).

On May 10, 2019—mere weeks before the case had been set to go to trial against the Ramamurthy defendants—the Government filed its Second Superseding Indictment (the "Indictment") (ECF 117), which added new defendants, including the MHQV Marketing Defendants, as well as an entirely new and separate conspiracy, which does not include the MHQV Marketing Defendants.[1]

## II.    ARGUMENT

The Indictment fails to properly join the MHQV Marketing Defendants because it alleges two distinct conspiracies—one of which is entirely unrelated to the MHQV Marketing Defendants—that took place at different times, with different participants, by different means, and for different objectives. The first conspiracy (Counts 1 and 10 of the Indictment and the related substantive offenses) alleges fraudulent billing by a compounding pharmacy against all six defendants (the "Compounding Pharmacy Conspiracy"). The Compounding Pharmacy Conspiracy, according to the Indictment, ended in July of 2015. (ECF 117 at 7). A whole year later, in July of 2016, the Indictment alleges that three of the defendants began a *new* conspiracy (Count 39 of the Indictment) involving fraudulent billing for genetic cancer testing through a diagnostic lab (the "Genetic Testing Conspiracy"). (ECF 117 at 25).

---

[1] For purposes of this motion, the MHQV Marketing Defendants distinguish between the conspiracy or series of conspiracies charged in the Compounding Pharmacy Conspiracy and the Genetic Testing Conspiracy. However, the MHQV Marketing Defendants do not concede that the indictment charges *only* two conspiracies and leave open the argument that the Compounding Pharmacy Conspiracy contains multiple separate conspiracies.

2

Were the government permitted to bring this case to trial as indicted, the result would be nothing short of chaos. At a minimum, trying the case would require impaneling three juries (two of which would be excluded from hearing certain prejudicial evidence), and for each jury, separate jury instructions, and separate charging conferences. In addition, counsel would be required to argue separate opening and closing statements for the two distinct sets of conspiracies. Such a trial would be impractical, financially burdensome, and prejudicial to the MHQV Marketing Defendants.

As described in the ensuing paragraphs, Eleventh Circuit case law is clear: Joinder of the MHQV Defendants in the Indictment contravenes Federal Rule of Criminal Procedure 8(b). Therefore, the Court must remove the misjoined MHQV Defendants from this case.

### A. The Government failed to properly join the MHQV Marketing Defendants in the Indictment.

When multiple defendants are charged in a single indictment, Federal Rule of Criminal Procedure 8(b) governs both the joinder of defendants and the proper joinder of offenses. *See United States v. Gentile*, 495 F.2d 626, 628 n. 2 (5th Cir.1974). Rule 8(b) reads as follows:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Under Rule 12(b)(3)(B)(iv), a defendant may object to improper joinder in a pre-trial motion.

"To determine whether joinder is sound, a reviewing court must examine the face of the indictment." *United States v. Castro,* 829 F.2d 1038, 1044 (11th Cir. 1987), *modified on other grounds,* 837 F.2d 441 (11th Cir.1988) (citing *United States v. Andrews*, 765 F.2d 1491, 1496–97 (11th Cir.1985)). The misjoinder in this case is evident from the face of the Indictment. To begin

3

with, while all six Defendants are charged in the Compounding Pharmacy Conspiracy, the Genetic Testing Conspiracy does not charge the MHQV Marketing Defendants or relate to them in any way. (ECF 117, Count 39). Likewise, there is no temporal overlap between the two conspiracies; the actions charged in the Compounding Pharmacy Conspiracy occurred in 2014 and 2015, while the actions charged in the Genetic Testing Conspiracy occurred in 2016.[2] (ECF 117 at 18-19; 27). Moreover, apart from participation by three of the six defendants in both conspiracies, the schemes share very little factual or evidentiary commonality. The Compounding Pharmacy Conspiracy alleges fraud on *Tricare*, whereas the Genetic Testing Conspiracy alleges fraud on *Medicare*. (ECF 117 at 8, 25). The Compounding Pharmacy Conspiracy alleges schemes to submit fraudulent claims for custom compounded medications, whereas the Genetic Testing Conspiracy alleges a scheme to submit fraudulent claims for genetic testing. *Id.* Nothing on the face of the Indictment bridges the gap between these two conspiracies.

When an indictment includes multiple conspiracies, joinder of a defendant with no connection to one or more of the conspiracies is improper under Rule 8(b). *Castro,* 829 F.2d at 1044–45.[3] In *Castro*, the Eleventh Circuit described a "wheel" conspiracy, "in which two common

---

[2] The passage of time between conspiracies is evidence that conspiracies were not properly joined under Rule 8(b). *See Gentile*, 495 F.2d 626, 630 (5th Cir. 1974) (finding misjoinder under Rule 8(b) when two conspiracies involving the sale of drugs occurred three weeks apart).

[3] *See also United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir. 1987) (severing defendant from case when indictment charged two separate conspiracies, the underlying activities of the two conspiracies were "unconnected," and defendant "was not connected to" the acts in the second conspiracy); *Gentile*, 495 F.2d 626, 630 (5th Cir. 1974) (in joint prosecution of defendants for distribution and conspiracy to distribute prescribed substances, count charging only one defendant with a particular distribution was misjoined with another count in which both defendants were charged); *United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir. 1975) (separate conspiracies to obstruct justice were misjoined even though there was a common defendant in both counts and both conspiracies had the common purpose of preventing witnesses from testifying against the same person); *United States v. Adkinson*, 135 F.3d 1363, 1374 (11th Cir. 1998); *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978).

defendants . . . form the 'hub' and in which Castro is one of several 'spokes,'" each spoke representing a unique conspiracy. *Id.* at 1045. The court held that because Castro, as one of the spokes, only knew about one of the conspiracies charged and did not know about the "existence, actions or objectives" of the other conspiracy, joinder of Castro was necessarily improper under Rule 8(b). *Id.* The MHQV defendants are identically situated to Castro. In the wheel presented in the Second Superseding Indictment, one spoke, the Compounding Pharmacy Conspiracy, involves all six defendants. However, the MHQV Marketing Defendants knew nothing of the existence, actions, or objectives of the second spoke, the Genetic Testing Conspiracy. Therefore, the MHQV Marketing Defendants are not properly joined in the indictment.

The Government attempts to argue that joinder of defendants is proper because the two conspiracies are part of "an overarching scheme to defraud health care benefit programs."[4] (DE 187). This argument fails because even where "each of the conspiracies ha[s], broadly speaking, a similar illegal objective," defendants allegedly involved in separate conspiracies cannot be joined where "neither depended on, was aided by or had any operational interest in the success of the other conspiracy." *Castro,* 829 F.2d at 1044; s*ee also United States v. Fazzio*, 2013 WL 818888, at *2 (E.D. La. Mar. 5, 2013) (misjoinder where an indictment alleged two separate conspiracies, despite the fact that the two conspiracies alleged a common participant and "a similar *modus operandi*" because the standard for joining *defendants* does *not* depend on similarity of the alleged *offenses*).

---

[4] This argument appears in DE 187, the Government's Notice of Filing Supplement Regarding Joinder. Regardless of the Government's characterization of the Indictment in a supplemental filing, "[t]o determine whether joinder is sound" under Rule 8(b) "a reviewing court must examine the face of the indictment." As argued above, joinder is improper based on the face of the Indictment. *See Castro,* 829 F.2d at 1044.

### B. Joinder of the MHQV Marketing Defendants in the Indictment is prejudicial and impractical.

The same facts that support a finding of misjoinder—multiple conspiracies each involving different defendants, completely separate evidence, and distinct actions—would make trial of the case as indicted impracticable if not impossible. Moreover, such a trial would inherently prejudice the MHQV Marketing Defendants.

At the hearing on June 6, 2019, the Court apparently recognized the practical difficulties caused by the Government's misjoinder of the MHQV Marketing Defendants, and therefore ordered the Government to "lay out for all of us your trial plan, how you plan to try it and how [the defendants] would be present or not present, and I want you to give me a road map of how to do that" and to "show me how you intend to put it together, your list of witnesses and how it impacts each Defendant." (ECF 185-1 at 17-19). The Government filed two documents with the Court, but neither was the trial "roadmap" the Court ordered. (ECF 179, 184). If the Government cannot decipher which evidence and which witnesses will pertain to each conspiracy and each defendant, the jury will certainly not be able to make those critical distinctions either. *See Castro,* 829 F.2d at 1047; *see also Fazzio,* 2013 WL 818888, at *1 (defendant "likely prejudiced" by spill-over effect associated with jury hearing evidence unrelated to defendants); *Adkinson*, 135 F.3d at 1374 (holding joinder improper and noting that "[i]n a trial of this duration and size, guilt by association is always a threat").

If trial did proceed as indicted, the court must, as an initial matter, require a third jury specifically for the MHQV Marketing Defendants.[5] Another jury is necessary because it would be highly prejudicial for the MHQV Marketing Defendants to be judged by a jury that sits through

---

[5] The Court has already ordered a second jury be empaneled specifically to hear evidence against Mangala Ramamurthy. (ECF 90).

weeks of irrelevant testimony related solely (or even partially) to the Genetic Testing Conspiracy. Without a third jury, there is a high probability of jury confusion. Indeed, to prove the Genetic Testing Conspiracy, the government has indicated that it will elicit testimony relating only to Medicare and Genetic Testing.[6]

Moreover, the MHQV Marketing Defendants would be prejudiced by having to pay for counsel to attend weeks of trial that relate only to the Genetic Testing Conspiracy. *See Castro,* 829 F.2d at 1047 (misjoinder where testimony against defendant occupied a fraction of total trial time, "the balance of which related to the conspiracy in which [defendant] was involved"). The MHQV Marketing Defendants estimate that trial for their charges alone would last between five and eight trial days. On the other hand, the Government has represented that trying all counts, including the separate Genetic Testing Conspiracy, would require 15 to 20 trial days. (ECF 185-1 at 7:17–18).

In addition, if the case were to proceed to trial as indicted, the following questions must first be resolved:

- Is there enough physical space in the courtroom for three juries?
- Where will three juries be physically separated for deliberations?
- How would the Court ensure that no jurors are seated immediately behind defendants?

---

[6] The Government admits that certain witnesses and evidence will relate only to the Genetic Testing Conspiracy:

> The Government expects to call some of the genetic testing beneficiaries whose testimony applies **only to the third conspiracy** charged in count 39. Similarly, the Government will call a Medicare program witness to introduce and explain the Medicare claims and the **rules relevant to genetic testing**. The Government will also introduce certain documents and communications **related only to the Medicare scheme**.

(ECF 179 at 3) (emphasis added).

- Would counsel for the MHQV Marketing Defendants start closing arguments immediately after the conclusion of evidence with respect to the Compounding Pharmacy Conspiracy, which would require two sets of charge conferences, two sets of closing arguments, and jurors deliberating at separate times?  Or, would all closing arguments occur at the very end of the trial, which would require the jurors for the MHQV Marketing Defendants to be sent home for multiple weeks while the Genetic Testing Conspiracy portion of the trial proceeds, potentially forgetting critical evidence and testimony?
- If opening statements and closing arguments are given together, how would the Court keep the MHQV Marketing Defendants' jury from hearing the portions of the opening statement and closing argument that relate only to the genetic testing conspiracy?
- Even if the Court dismisses the jury for the MHQV Marketing Defendants for a portion of the opening and closing arguments, would the risk be too great that lawyers on both sides would inadvertently mix the conspiracies and make improper comments in front of a jury?
- There are multiple witnesses, including cooperating witnesses and potentially even expert witnesses, that will have information pertinent to more than one of the conspiracies.  Would these defendants have to be called twice to testify on different topics?  Would that mean their cross-examinations would be limited to the topic they discuss during their separate direct exams and, if so, does this limit the defense lawyers' ability to effectively impeach them for the misconduct described each conspiracy?  Would the defense lawyers have to divide their impeachment into two parts?
- How can the Court mitigate the heightened risk of jurors discussing the case and spillover of evidence with three juries?

These complications and risks are precisely why the joinder of defendants who are alleged to have participated in separate conspiracies is inappropriate in the first place.  As the *Fazzio* court explained, with indictments like this, "[w]hen two entirely separate factual scenarios are charged, the only 'savings' in terms of time is the time it takes to select a jury. . . considering the great risk of prejudicial spillover from trying both of these separate conspiracies together, the wiser course is to sever now, rather than risk a reversal later." *Fazzio*, 2013 WL 818888, at *4–7.

### III.   CONCLUSION

For the foregoing reasons, the MHQV Marketing Defendants were improperly joined under Federal Rule of Criminal Procedure 8(b), and the Indictment is defective on its face.

WHEREFORE, the MHQV Marketing Defendants respectfully request that this Court enter an ORDER dismissing the Indictment or, in the alternative, severing the MHQV Marketing Defendants.[7]

Date: August 2, 2019

Respectfully Submitted,

/s/ *Ryan K. Stumphauzer*
Ryan K. Stumphauzer, Esq.
Fla. Bar No. 0012176
Stumphauzer Foslid Sloman
Ross & Kolaya PLLC
2 South Biscayne Blvd., Suite 2550
Miami, FL 33131
305.371.9686
rstumphauzer@sfslaw.com
*Attorney for Anthony Mauzy*

/s/Andrew S. Feldman
FELDMAN FIRM PLLC
200 S. Biscayne Blvd, Suite 2770
Miami, Florida 33131
305.714.9474
afeldman@feldmanpllc.com
Florida Bar No. 60325
*Attorney for Thomas Sahs*

---

[7] Although S.D. Florida Local Rule 7.1(a)(3) applies only in civil cases, counsel for the MHQV Marketing Defendants conferred with the Government prior to filing this motion and the Government indicated its opposition.

        /s/ Marissel Descalzo
        Marissel Descalzo, Esq.
        Florida Bar No. 0669318
        150 S.E. 2nd Avenue, Suite 600,
        Miami, FL 33131
        305.537.9565
        mdescalzo@tachebronis.com
        service@tachebronis.com
        *Attorney for Rajesh Mahbubani*

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of August, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record listed below.

        s/ *Ryan K. Stumphauzer*
        Ryan K. Stumphauzer