**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case Number 18-20710-CR-ALTONAGA/GOODMAN(s)(s)

**UNITED STATES OF AMERICA,**

vs.

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY,**
**ANTHONY MAUZY,**
**THOMAS SAHS,**
**RAJESH MAHBUBANI, and**
**JOHN SCHOLTES,**

       **Defendants.**
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**ANTHONY MAUZY, THOMAS SAHS, AND RAJESH MAHBUBANI'S**
**MOTION FOR MISJOINDER [D.E. 188]**

**I.     INTRODUCTION**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to the motion for misjoinder [D.E. 188], filed by three defendants, Anthony Mauzy, Thomas Sahs and Rajesh Mahbubani (collectively "the MHQV defendants").[1]  The motion seeks to dismiss the indictment as to the MHQV Defendants, or alternatively, to sever the MHQV Defendants from the indictment.  However, the defendants offer no basis to dismiss the indictment, and the request to sever defendants should be denied.

In summary, the indictment charges six defendants in 39 counts.  All the conduct arises from the same series of acts or transactions, specifically, a master scheme devised by defendant

---

[1] These 3 defendants jointly operated MHQ Ventures, LLC ("MHQV").

Senthil Ramamurthy ("Ramamurthy"), in which all six defendants participated, including the three MHQV Defendants. Simply put, the plan was to enrich themselves with millions of dollars in kickbacks from health care providers, such as pharmacies and laboratories, in exchange for referring individuals, without regard to medical necessity, for costly medications and tests.

The motion does not dispute that the MHQV defendants are properly joined with respect to counts 1 through 38 of the indictment. The MHQV defendants are specifically charged, together with all the defendants, in Count 1, a conspiracy to commit health care fraud and wire fraud, and in Count 10, a conspiracy to defraud the United States and to receive and pay kickbacks for referring Tricare[2] beneficiaries to pharmacies for compounded medications. The MHQV defendants are also charged in multiple related substantive counts.[3]

The MHQV defendants' severance argument relates to Count 39, in which they are not charged. Count 39 charges Ramamurthy, Managala Ramamurthy, and John Scholtes with a similar conspiracy to enrich themselves with kickbacks for referring Medicare[4] beneficiaries to laboratories for genetic cancer tests. The MHQV defendants claim that they would be unfairly prejudiced by the "spillover" of evidence related to Count 39. [D.E. 188 at 6].

However, contrary to the assertions made by the MHQV defendants, Count 39 is part of the same continuing series of acts and transactions. The evidence is intertwined and overlaps in time. All the defendants, including the MHQV defendants, jointly planned and took steps towards targeting beneficiaries for genetic cancer testing, while still pursuing the compounded medications.

---

[2] Tricare is the health insurance program for U.S. military personnel, retirees and dependents.
[3] Counts 5, 6, 7, 8, 9, 12, 14, 19, 21, 22, 24, 33, 34.
[4] Medicare is a federal health insurance program for the elderly, blind and disabled.

The MHQV defendants will not be unfairly prejudiced by "spillover."  In fact, a separate trial for the MHQV defendants would unnecessarily duplicate most of the evidence. *See* Exh. A.[5] The United States respectfully requests that Court deny the motion to sever the three MHQV defendants.

## II.     FACTUAL BACKGROUND

### A.     The Charges in the Second Superseding Indictment

The second superseding indictment contains 39 counts.  Thirty-eight (38) counts relate to the defendants' scheme targeting the Tricare program with fraudulent claims for expensive compounded medications.  The indictment charges *all of the defendants* with conspiring to commit health care and wire fraud in violation of Title 18, United States Code, Section 1349 (Count 1) and conspiring to defraud the United States and to pay and receive health care kickbacks in violation of Title 18, United States Code, Section 371 (Count 10) (collectively, the "Compounding Pharmacy Fraud and Kickback Conspiracies").

All the defendants are charged with related substantive counts. The second superseding indictment also alleges each of the defendants to have committed substantive counts of health care fraud in violation of Title 18, United States Code, Section 1347 (Counts 2-9).  All of the defendants except Mangala Ramamurthy are charged with at least one substantive kickback count, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) (Counts 11-24) (receiving kickbacks); and Section 1320a-7b(b)(2)(A) (Counts 25-36) (paying kickbacks).   Defendant Mangala

---

[5] The government through this Exhibit submits its "Trial Road Map" in continued compliance with the order of this Court.  As previously asserted by counsel for the government at the August 5, 2019 status conference, the Trial Road Map is the government's preliminary estimate of its order of proof at the trial scheduled for January 22, 2020.  The government's estimate of the number of trial days required does not take into account scope of permitted cross-examination or other matters such as jury selection or other court hearings that may arise on the Court's calendar.

Ramamurthy is also charged in Counts 36-38 with making false statements in violation of Title 18, United States Code, Section 1001(a)(2).

The last count, Count 39, involves a similar conspiracy targeting the Medicare program with false and fraudulent claims for genetic cancer tests (the "Genetic Testing Conspiracy"). The indictment charges *three of the six defendants,* Ramamurthy, his mother Mangala Ramamurthy, and John Scholtes ("Scholtes"), with conspiracy to defraud the United States and to receive health care kickbacks in violation of Title 18, United States Code, Section 371.

### B. The Genetic Testing Conspiracy Sprang out of the Compounding Pharmacy and Kickback Conspiracies and the Evidence is Intertwined

#### 1. The master scheme and the dates of the charged conspiracies

The three conspiracies charged in the second superseding indictment (the Compounding Pharmacy Fraud and Kickback Conspiracies and the Genetic Testing Conspiracy) are part of the same series of acts or transactions. They arose out of Ramamurthy's master scheme to defraud the United States and target Tricare, Medicare and Medicaid -- federal programs that serve American soldiers, retirees, and their dependents, and programs that serve the elderly, disabled and indigent. The three charged conspiracies share evidence that is overlapping and inextricably intertwined.

The indictment charges that the Compounding Pharmacy Fraud and Kickback Conspiracies (Counts 1 and 10) ran from "in or around" September 2014 through "in or around" July 2015. The indictment further charges that the Genetic Testing Conspiracy (Count 39) ran from "in or around July 2016 through "in or around" December 2017. The "in or around" dates are framed around the dates of Tricare and Medicare claims, interstate wires, and kickback payments. However, the evidence will show that the joint conduct and planning by the MHQV defendants continued with

respect to both compounded medications and genetic testing throughout 2015 and continued into the early months of 2016.

### 2.     The joint plan to pursue compounded medications paid by Tricare

The schemes charged in the second superseding indictment originated at least as far back as late 2014 when Ramamurthy recruited the MHQV Defendants (and others) to target American soldiers and their families – anyone with Tricare insurance – to push unnecessary compounded medications from distant pharmacies. Tricare would pay tens of thousands of dollars, per month, per beneficiary for these compounded medications. The defendants' aim was to receive large kickbacks from the pharmacies for each referral for which the pharmacy was paid by Tricare.

Ramamurthy needed to find doctors willing to sign the prescriptions that Ramamurthy gave to them for these compounded medications. Ramamurthy's mother, defendant Dr. Mangala Ramamurthy, joined the Compounding Pharmacy Conspiracy for this purpose. She signed prescriptions for patients recruited and referred by her son and the MHQV Defendants. Mangala Ramamurthy neither spoke to nor examined these individuals. Ramamurthy sent the prescriptions that his mother signed to compounding pharmacies, including Pharmacies 1 and 2, in exchange for hundreds of thousands of dollars in kickbacks.

As the Compounding Pharmacy Conspiracy evolved and the number of beneficiaries recruited by Ramamurthy and the MHQV Defendants increased significantly, Ramamurthy, the MHQV Defendants and their co-conspirators needed more doctors to sign prescriptions. In early 2015, after Defendant John Scholtes joined the scheme, he introduced the idea of paying doctors to sign prescriptions for compounded medications for patients who they purportedly saw via telemedicine.

By mid-2015, however, Tricare caught onto these schemes and significantly curtailed reimbursement for compounded medications. This move by Tricare left the defendants with a financial vacuum that they needed to fill quickly.

### 3. The continuing joint plan to pursue genetic testing paid by Medicare

Ramamurthy soon found a financial solution, recruiting beneficiaries for expensive genetic cancer tests. On June 20, 2015 Ramamurthy e-mailed the MHQV Defendants about his discovery of a *"7k cancer buccal swab,"* stating "*Behold! The holy grail. Let's go to New York and meet the owners ASAP and unroll this in every mall in America* (Exh. B)." Later that day defendant Mauzy replied: "*Holy shit@! Let's get it.*" Id.

The evidence at trial will show that from June 2015 through December 2015, Ramamurthy, Scholtes and the MHQV Defendants marched in lockstep toward the goal of capitalizing on this so-called "Holy Grail" opportunity involving genetic testing for cancer. The evidence will also show that the defendants continued to see government health care programs as the best targets for their scheme, *"[T]ricare is still a good target with avg reimbursements of 8k per swab. Medicaid and Medicare are steady with lower reimbursements and commercial ppo payers work as well* (Exh. C)."

Documents produced by the MHQV Defendants show their joint plan for Med Health Quest to "*expand to lab/diagnostic testing in Q3 and Q4 of 2015* (Exh. D)." In pursuit of this plan, the defendants discussed the development of an "Mhq wellness kiosk," which would be located in shopping malls across the USA offering, "*[o]nsite pre cancer dna screening and other swab tests, access to telemedicine and compound pharmaceuticals and creams* (Exh. C)."

Also, documents produced by the MHQV Defendants show a plan to offer "*the first Comprehensive Cancer Risk Assessment test designed to determine a patient's risk of developing*

6

*up to 8 cancer types* (Exh. E)." The MHQV Defendants, Ramamurthy and Scholtes also pursued the genetic cancer scheme by getting trained on the "Preventest," which is the exact test implicated in the conduct charged in count 39. *See* (Exh. F).

As part of the defendants' joint planning, they highlighted how little effort they expected to expend in exchange for large financial rewards. Defendant Sahs stated to the others in an e-mail that the *"[t]ransaction process"* would involve a total time investment of roughly "*5 min per patient (90 seconds for swab, 3-4 mins for paperwork)* (Exh. C)." Sahs predicted that the scheme would generate monthly revenues between $113,400 and $259,200, even after taking out the $5,000 per month they anticipated having to pay to a "*local dr.*" whose job would be to "*process each swab and send directly to the lab.*" *Id.*

Just like they did in the Compounding Pharmacy Fraud and Kickback Conspiracies, the MHQV Defendants, along with Ramamurthy and Scholtes planned to use telemedicine as a means to circumvent the involvement of beneficiaries' primary care doctors. The evidence will show that the defendants engaged the services of telemedicine companies, including one based in South-Florida, to "[a]id *with our genetic swab campaign. . .*(Exh. G)." A Med Heath Quest sales orientation document dated December 7, 2015 and signed by defendant Mauzy touted the "Family Health Package," that included *both* compounded medications *and* a DNA Cancer Risk Swab (Exh. H).

In support of the motion to sever, the MHQV Defendants incorrectly claim that the Genetic Testing Conspiracy is "entirely unrelated" to them in both temporal and factual scope. [D.E. 188 at 2]. As detailed above, the MHQV Defendants continued throughout 2015 to plan, together with their co-defendants, Ramamurthy and Scholtes, to recruit beneficiaries for genetic testing. In fact, documents illustrate the incorporation of genetic cancer testing into the MHQ "sales bag." *See*

7

(Exh. I). The MHQV Defendants continued planning with Ramamurthy and Scholtes well into 2016. However, the evidence will show that in February, 2016, the MHQV Defendants suddenly cut off their deal with Scholtes and Ramamurthy, citing a payment dispute. *See* (Exh. J). They then formed a separate company, ConsumerRx, to continue marketing, among other things, compounded medications and genetic tests.

### 4. The final phase of the plan to pursue genetic testing paid by Medicare

The evidence will show that after the MHQV Defendants cut off the business relationship, Ramamurthy and Scholtes continued to pursue the cancer DNA testing scheme by partnering with a Georgia-based lab (Laboratory 1) that agreed to pay them 45% of the amount reimbursed by Medicare for each test they referred. Ramamurthy and Scholtes continued to depend upon and pay for telemedicine doctors to ratify orders for genetic DNA cancer tests for patients that those doctors never examined or treated. Dr. Mangala Ramamurthy also joined the Genetic Testing Conspiracy. She facilitated the payment of kickbacks to her son by dispatching her employees and other so-called medical marketers to local adult day care centers to collect saliva specimens from elderly and disabled Medicare beneficiaries, with whom she did not have any doctor-patient relationship. In the end the defendants' schemes resulted in approximate combined losses to federal programs of at least $11.5 million.

### III. ARGUMENT

The MHQV Defendants argue that they should be severed, and tried separately, because they are not charged in the last count in the indictment, Count 39. The defendants do not dispute that they are properly joined with their co-defendants as to Counts 1 through 38. They incorrectly focus solely on the face of the indictment to argue that Count 39 is an "entirely unrelated"

conspiracy [D.E. 188 at 2-3]. Moreover, the MHQV Defendants argue that they would be unfairly prejudiced in a joint trial by "spillover" of the evidence as to Count 39. *Id.*

This Court should deny the MHQV Defendants' motion because the Compounding Pharmacy Fraud and Kickback Conspiracies were properly joined in the same indictment with the Genetic Testing Conspiracy as the alleged conduct emanates from the same series of acts or transactions. Moreover, a joint trial is in the public's interest in judicial economy, and the MHQV Defendants will not be unfairly prejudiced. As in other similar multi-defendant cases, the jury will be able to follow the Court's instructions and render a fair verdict as to each defendant.

### A. The MHQV Defendants are Properly Joined with the other Defendants in the Second Superseding Indictment.

Rule 8(b) states that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," and "[t]he defendants may be charged in one or more counts together or separately," but they "need not be charged in each count." Fed. R. Crim. P. 8(b). The joinder of the MHQV defendants is entirely proper under Rule 8(b). The three conspiracies (the Pharmacy Fraud and Kickback Conspiracies and the Genetic Testing Conspiracy) and the related substantive counts are part of the same series of acts or transactions. The MHQV defendants "need not be charged in each count." Fed. R. Crim. P. 8(b).

The MHQV defendants incorrectly claim that this Court is confined to looking solely at the "face" of the indictment in deciding whether there is misjoinder. *See* [D.E. 188] at 3 (citing *United States v. Castro*, 829 F.2d 1038, 1044 (11th Cir. 1987), *modified on other grounds*, 837

Case 1:18-cr-20710-CMA   Document 194   Entered on FLSD Docket 08/16/2019   Page 10 of 14

F.2d 441 (11th Cir 1988)). [6] However, in *United States v. Dominguez*, 226 F.3d 1235 (11th Cir. 2000), the Eleventh Circuit explained that even where the indictment may not "explicitly" state "the connection between the charges," joinder may be found to be proper based on "evidence proffered by the government before trial." *Id.* at 1241. In *Dominguez*, the Eleventh Circuit upheld the denial of a severance motion in a case where the government had proffered pretrial that a charged drug offense was connected to the charged mortgage fraud offense. *Id.* at 1242. The government's response to the motion to sever "explained why the two groups of charges were properly joined: Concealing income from the drug activity was the motive for the mortgage fraud." *Id.*

The Eleventh Circuit also rejected arguments to sever in a similar multi-conspiracy scenario in *United States v. Hill*, 643 F.3d 807, 828 (11th Cir. 2011). In *Hill*, the court found that a non-lead defendant was properly joined, even though two out of the three conspiracies charged did not implicate him and differed as to time, participants, and factual particulars. The Court explained that the three conspiracies were properly joined because they all related to the lead defendant's "master scheme" to commit mortgage fraud and "[t]he fact that [the lead defendant] used a different set of actors to perform the three acts of his play did not transform it into three different plays." *Id.* at 829.

---

[6] *Castro* is different from this case. In *Castro*, all the defendants had been charged in a single conspiracy in violation of 18 U.S.C. §371. However, the Court ruled that the case involved two distinct conspiracies that were improperly joined. *Castro*, 829 F.2d at 1244-45. Castro was a banking lawyer who had been hired by one of the codefendants (owners and employees of coffee companies). *Id.* at 1039-40. Castro's involvement was limited to concealing that bank Certificates of Deposit had been pledged without the bank's knowledge. The Court ruled that this was separate from the main conspiracy, which was obtaining loans based on fictitious coffee company inventory. *Id.* at 1244-45. Furthermore, the Court found Castro was prejudiced by the joint trial because the evidence as to him was not overwhelming. Also, while the trial took six and a half months, the evidence as to the CD conspiracy was only 10 trial days. *Id.* at 1046.

The basis for joinder in this case is much stronger than in *Hill*. The MHQV Defendants, while not charged in the Genetic Testing Conspiracy (Count 39), are charged in not one but two of the three conspiracies, as well as multiple related substantive offenses. As in *Hill*, all three conspiracies originated with Senthil Ramamurthy's "master-scheme" to defraud health care programs. Much of the evidence and many of the witnesses overlap. *See* Exh. A. Indeed, if the three MHQV defendants were tried separately, much the evidence would be need to be presented at both trials.[7] *Id.*

Where, as here, multiple defendants are involved in the same or similar conduct, there is a preference for joint trials so as to promote efficiency and ensure consistency in verdicts among defendants. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). Generally "persons who are charged together should also be tried together." *United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995) (quoting *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989)).

### B.     The MHQV Defendants will not be prejudiced in a joint trial.

The MHQV Defendants argue that even if the Court finds this case to have been properly joined, that they are still entitled to a severance on the basis of prejudice that a joint trial would

---

[7] The MHQV Defendants erroneously assert that this Court has already ordered a second jury to be empaneled to specifically hear evidence against Mangala Ramamurthy. At this point, the Court has not made a ruling as to whether a severance or a second jury would be required.
In fact, now that Mangala Ramarmurthy and Senthil Ramamurthy have also been charged in the Genetic Testing Conspiracy, the circumstances have changed. Mangala Ramamurthy previously argued that she was entitled to a severance so that her son, defendant Senthil Ramamurthy, could offer exculpatory evidence at her separate trial. Now Count 39 charges Mangala Ramamurthy with additional conduct that shows she actively participated in all the charged schemes. These facts diminish the likelihood that defendant Senthil Ramamurthy could offer exculpatory evidence. Moreover, no affidavit has been filed to outline defendant Senthil Ramamurthy's proposed testimony, as necessary for the Court to engage in any meaningful evaluation of the testimony's exculpatory nature. *See United States v. Green*, 818 F.3d 1258, 1280-82 (11th Cir. 2016); *see also United States v. Hanna, et al.,* Case. No. 12-CR-20254-Seitz (S.D. Fla., August 21, 2012) (E.C.F. No. 71); *United States v. Alston et. al.,* Case No. 99-CR-10035-Moore (S.D. Fla., March 24, 2003) (ECF No. 209).

impose on them. [D.E. 188 at 6].[8] Severance is appropriate under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. In this case, a joint trial will not prejudice the MHQV defendants or compromise "a specific trial right."

As described above, this case involves six defendants who all participated in the Tricare Compounding Fraud and Kickback Conspiracies together. When the opportunity to similarly exploit payers (ultimately Medicare) through the Genetic Testing Conspiracy arose, the MHQV Defendants participated in part of the planning and some of the execution of the scheme in substantially similar fashion as they had in connection with the Compounding Pharmacy Fraud and Kickback conspiracies.[9] Any "spillover" prejudice from Count 39 can easily be mitigated through limiting instructions during trial and in the jury instructions. *See Hill*, 643 F.3d at 829 ("we apply 'the strong presumption ... that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered.'") (quoting *United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004)).

---

[8] In making this prejudice argument, the MHQV Defendants attempt to paint the government's case as "chaos," [D.E. 188 at 3] that would require impaneling three juries, multiple sets of jury instructions, separate charging conferences and separate opening and closing statements. *Id*. The MHQV Defendants also assert a financial prejudice argument related to paying their counsel to attend trial for the days that relate to the Genetic Testing Conspiracy. *Id.* at 7. Finally, the MHQV Defendants lay out a series of questions which they contend must be answered in connection with a joint trial, such as for example, whether there is enough physical space in the courtroom for the juries, seating arrangements, timing of opening and summation, etc. *Id.* at 7-8. However, as explained in this response, the MHQV defendants will not be prejudiced by a joint trial.

[9] The evidence of the continued joint planning by the MHQV defendants is intrinsic and inextricably intertwined. *See United States v. Gallo*, 12-20630-Cr-Lenard, D.E. 368 (ruling pretrial that evidence was admissible that showed the defendant's continuing plans to use a similar scheme to defraud new victims via a new company).

Moreover, the mere fact that there may be less evidence against the MHQV Defendants not charged in Count 39 is insufficient to justify severance. "If it were enough, in every joint trial the defendant facing the fewest charges with the least amount of evidence would be automatically entitled to a severance." *Hill*, 643 F.3d at 831.  In fact, even when the number of charges and the quantum of evidence pertaining to a defendant is significantly less than other defendants, a severance is not justified.  As the Eleventh Circuit explained in *Hill*, "even if, as [defendant] asserts, there had been an enormous disparity in the amount of evidence that related to other defendants or charges compared with the evidence that related to him, '[a] defendant does not suffer compelling prejudice, sufficient to mandate a severance, simply because much of the evidence at trial is applicable only to co-defendants.'" *Hill*, 643 F.3d at 829 (quoting *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997)).

The evidence to be adduced at trial will show that the MHQV Defendants were properly joined in the second superseding indictment because the schemes charged stem from the same series of acts or transactions spearheaded by Ramamurthy.  The evidence as it pertains to the MHQV Defendants' participation in the Compounding and Pharmacy and Kickback Conspiracies is inextricably intertwined with the government's proof as to the Genetic Testing Conspiracy charged in Count 39.  This is precisely the purpose behind Rule 8's provisions regarding permissive joinder.  For these reasons, as well as for reasons stated above and by counsel for the

government in Court, the United States respectfully requests that MHQV's Defendants' the motion be denied.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:  */s/ Kevin J. Larsen*
KEVIN J. LARSEN
Assistant United States Attorney
Special Bar Number: A5501050
99 NE 4th Street, 6th Floor
Miami, FL 33132
Tel: (305) 961-9356
Email: kevin.larsen@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via Notices of Electronic Filing generated by CM/ECF.

s/ *Kevin J. Larsen*
KEVIN J. LARSEN
Assistant United States Attorney