UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20710-CR-ALTONAGA

UNITED STATES OF AMERICA

vs.

SENTHIL RAMAMURTHY,
MANGALA RAMAMURTHY,
ANTHONY MAUZY,
THOMAS SAHS,
RAJESH MAHBUBANI, and
JOHN SCHOLTES,

    Defendants.
_____/

**DEFENDANTS ANTHONY MAUZY, THOMAS SAHS, AND RAJESH MAHUBABI'S
REPLY IN SUPPORT OF THEIR MOTION FOR MISJOINDER**

    Defendants Anthony Mauzy, Thomas Sahs, and Rajesh Mahbubani (the "MHQV Marketing Defendants") respectfully submit this reply to D.E. 194, the Government's response ("Response") to D.E. 188, the MHQV Marketing Defendants' Motion for Misjoinder ("Motion"). The Court must dismiss or sever the MHQV Marketing Defendants from this action pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) because their joinder is improper under Rule 8(b).

**I.    INTRODUCTION**

    This case involves the improper joinder of criminal offenses in an Indictment charging two groups of defendants in two separate schemes, the first involving a 2014–2015 fraud on Tricare related to claims for compounded prescription pain creams (collectively, the "Compounding Pharmacy Conspiracy")[1] and the second involving a 2016–2017 fraud on Medicare related to

---

[1] In the Response, the Government refers to the conspiracies in Counts 1 and 10 as the "Compounding Pharmacy Fraud and Kickback Conspiracies." The MHQV Defendants

claims for genetic testing (the "Genetic Testing Conspiracy"). All defendants in this case are charged in the Compounding Pharmacy Conspiracy. However, the MHQV Marketing Defendants are not charged in the separate Genetic Testing Conspiracy, which began a full year after the Compounding Pharmacy Conspiracy ended, used different means of marketing, relied on different beneficiaries, and targeted different government programs. Based on the four corners of the Second Superseding Indictment (the "Indictment") joinder of the MHQV Marketing Defendants in this action is impermissible under Rule 8(b).

The Government attempts to cure this deficiency in its Indictment by proffering evidence in the form of emails and slide deck presentations showing that for a couple of months in mid-2015 the MHQV Marketing Defendants communicated with each other, Ramamurthy, and John Scholtes about a business idea related to the marketing of DNA screening tests. However, the MHQV Marketing Defendants did not profit from that idea, never implemented it, and abandoned it entirely prior to the start of the Genetic Testing Conspiracy. *See* Response, Exhibits B–J. Not only do these documents fail to justify joinder of the MHQV Marketing Defendants, but they also reveal that the presentation of evidence related to the Genetic Testing Conspiracy at trial would necessarily prejudice the MHQV Marketing Defendants.

The Government's long-anticipated "Trial Road Map" further undergirds the conclusion that joinder is improper and that the separate conspiracies can, and should, be severed into two separate trials. *See* Response, Exhibit A. Contrary to the Government's assertion that the conspiracies are "inextricably intertwined," the Trial Road Map shows that there is little

---

acknowledge that these are charged as two separate conspiracies in the Indictment. For purposes of consistency with the Motion, we will continue to refer to the conspiracies in Counts 1 and 10 collectively as the "Compounding Pharmacy Conspiracy."

evidentiary overlap between the two schemes. In fact, of the thirty-four witnesses identified by the Government, only *six* would provide testimony relevant to both conspiracies.

## II. ARGUMENT

### A. Joinder of the MHQV Marketing Defendants is improper under Rule 8(b).

The entirety of the Government's joinder argument boils down to one conclusory assertion repeated throughout its Response: that the Genetic Testing Conspiracy is part of the same "series of acts or transactions" as the Compounding Pharmacy Conspiracy the MHQV Marketing Defendants are charged in, Response at 2, 4, 9, 13, and as a result the evidence is inextricably "intertwined," *Id.* at 2, 4, 12, 13. However, rather than show how the conspiracies connect through a "series of acts," as required by Rule 8(b), the Government, at best, offers evidence to show that the conspiracies are—in its own words—"similar." *Id.* at 2, 4, 11, 12. Joinder of two separate but similar conspiracies is not proper under Rule 8(b).

In its Response, the Government attempts to articulate how the conspiracies "arose out of Ramamurthy's master scheme to defraud the United States and target Tricare, Medicare, and Medicaid." *Id.* at 4. However, the Government describes two entirely separate schemes—the first on Tricare and the second on Medicare; the first ending before the second started; and the first resulting in charges against six defendants while the second resulted in three defendants charged. By the Government's narrative, the Compounding Pharmacy Conspiracy *ended* "in or around July 2015" when "Tricare caught onto these schemes and significantly curtailed reimbursement for compound medications," meaning that after that date there is no evidence that defendants made claims or received payments related to that conspiracy. *Id.* at 4–5. The crimes charged in the Genetic Testing Conspiracy did not begin until a year later, "in or around July 2016." *Id.* at 4.

3

Perhaps the strongest evidence that the conspiracies are not intertwined, and are, indeed, extricable from each other, is the Government's own Trial Road Map. Response, Exhibit A. The Government has identified *fifteen* witnesses who will testify *only* as to the Compounding Pharmacy Conspiracy and *thirteen* witnesses who will testify *only* as to the Genetic Testing Conspiracy.[2] In contrast to these twenty-eight witnesses whose testimony will be unique to only one conspiracy, the Government plans to call just three fact witnesses with information relevant to both conspiracies. In addition, as it would in any case involving claims related to healthcare fraud and kickback schemes, the Government plans to call on an expert witness, a special agent, and a government analyst who will testify about the mechanisms of the two separate schemes. This is hardly the "inextricably intertwined" case the Government claims it is.

Likewise, the emails and slide presentations attached to the Government's Response do not show that the Genetic Testing Conspiracy arose out of the same "acts or transactions" as the Compounding Pharmacy Conspiracy.[3] The Government claims that the "evidence at trial will show that from June 2015 through December 2015, Ramamurthy, Scholtes, and the MHQV

---

[2] Among other things, the Trial Road Map demonstrates that the Genetic Testing Conspiracy, although charged in only one count of a thirty-nine count Indictment, is not an insignificant tag-along charge, as the Government seems to suggest in its Response.

[3] The Government asserts that, pursuant to *United States v. Dominguez*, in deciding whether joinder is proper a court may look beyond the face of the indictment to evidence proffered by the prosecution before trial. 226 F.3d 1235, 1241 (11th Cir. 2000) ("If the indictment fails to show and the prosecutor fails to proffer a sufficient basis in the expected evidence to justify joined, then a severance should be ordered."). While the language in *Dominguez* does suggests that this holding extends to Rule 8(b), joinder of defendants, we note that the joinder analysis in *Dominguez* pertains to Rule 8(a), joinder of offenses. There is no factual comparison to be made between the facts of the instant case and *Dominguez*, where The Eleventh Circuit held that drug and mortgage fraud charges were properly joined in the same indictment against a defendant where the motive to commit mortgage fraud was to conceal the drug-related crimes. *Id.* at 1237. Here, however, there is no evidence that the Government must present evidence of the Compounding Pharmacy Conspiracy to prove the charges in Genetic Testing Conspiracy.

Marketing Defendants marched in lockstep toward the goal of capitalizing on th[e] so-called 'Holy Grail' opportunity involving genetic testing for cancer." Response at 6. While the evidence attached to the Government's Response does not show a six-month march in lockstep, it does show the MHQV Marketing Defendants communicating about DNA screening with each other, Ramamurthy, and Scholtes in June and July 2015 (Response, Exhibits B through G) before formally terminating their business relationship with Ramamurthy and Scholtes in February 2016 (Response, Exhibit J), months before the Genetic Testing Conspiracy began, in July 2016.

What this evidence fails to show, however, is any connection between communications, conduct, or other evidence related to the Genetic Testing Conspiracu and the Compounding Pharmacy Conspiracy. Indeed, the Government admits that the defendants turned to genetic testing *after* the Compounding Pharmacy Conspiracy ended because Tricare curtailed reimbursements, which "left the defendants with a financial vacuum they needed to fill quickly." *Id.* at 6. The common motivation of financial gain and a commonality between some defendants is not enough to show an inextricable connection between two otherwise unrelated and different-in-time healthcare fraud schemes.

Moreover, the Government's reliance on *Hill* is misplaced. The Court in *Hill* held that two conspiracies were properly joined because there was a "master scheme to defraud mortgage lenders *through a common plan and design*," not a loosely defined "'master scheme' to commit mortgage fraud" as the Government purports. *United States v. Hill,* 643 F.3d 807, 829 (11th Cir. 2011) (emphasis added); Response at 10. The "common plan and design" that existed in *Hill* was key in the Eleventh Circuit's decision that joinder was proper. *Hill* 643 F.3d at 829. That plan included

a dozen very detailed and specifically prescribed tasks, [4] with the only moving part being a few of the people carrying out tasks. *See id.* at 819-21. Even as framed by the Government, here there is no detailed "design" or "plan" continued seamlessly between the multiple conspiracies, nor is there a list of steps common to both. Rather, one involved laboratories, while the other did not; one involved false prescriptions and medications, while the other involved testing; each involved completely different kinds of patients and marketing; and each operated within different reimbursement guidelines for very different programs.

In the Response the Government unsuccessfully attempts to articulate an overall "scheme" broad enough to encompass both the Compounding Pharmacy Conspiracy and the separate Genetic Testing Conspiracy.[5] At best, the Government suggests that the two conspiracies may have "similar illegal objective[s]," but that in itself is insufficient to support joinder. *See United States v. Castro,* 829 F.2d 1038, 1044 (11th Cir. 1987), *modified on other grounds,* 837 F.2d 441 (11th Cir.1988). Furthermore, none of the evidence proffered in or attached to the Response supports the existence of a common scheme. In sum, the Government has failed to demonstrate a

---

[4] These steps included: purchase a property, take a "hard loan" for closing costs, locate a "straw buyer" to purchase the property for greater than its actual value, create fake lease contracts and other routine lies in order to help the straw buyer qualify for a mortgage, bribe attorneys to participate, promise straw buyers that mortgage payments would be taken care of, have attorneys leave the room while the checks were distributed, have straw buyer quitclaim deed the property back to Hill after closing, conceal the quitclaim deed, and re-sell the property. *See id.* at 819-821.

[5] *See* Response at 2 ("[T]he plan was to enrich themselves with millions of dollars in kickbacks from health care providers, such as pharmacies and laboratories, in exchange for referring individuals, without regard to medical necessity, for costly medications and tests"); *see also* Response at 11 (broadly referring to "Senthil Ramamurthy's 'master scheme' to defraud health care programs.").

6

connection between the "plans" and "designs" of the separate conspiracies and as such has not shown that joinder is proper under Rule 8(b).[6]

### B. Trying the case as indicted would be prejudicial to the MHQV Defendants.

The Government has now put the Court and the MHQV Marketing Defendants on notice that it plans to elicit testimony about the MHQV Marketing Defendants related to the Genetic Testing Conspiracy. *See* Response, Exhibits B–I. Furthermore, the Government will use this evidence to build a picture of an overarching scheme by Defendant Ramamurthy to defraud government healthcare providers. Allowing the jury to hear evidence that purports to associate the MHQV Marketing Defendants with the Genetic Testing Conspiracy in which they have not been charged is prejudicial and cannot be corrected by instructing the jury to disregard certain evidence.

This is not a routine multi-defendant case where a limiting instruction can resolve a defendant's concerns about the jury hearing testimony relating to a co-defendant. *Compare, e.g., Hill,* 643 F.3d at 829-30. In *Hill,* the Eleventh Circuit held that a limiting instruction was sufficient where a jury heard evidence that could easily be compartmentalized because it related only to *other defendants* and *other counts*. *Id.* If this case is tried as indicted, the jury will hear evidence about the MHQV Marketing Defendants that is unrelated to the charges against them but relevant to charges against other defendants in the same trial.

As the Government previewed in its Response, should the trial continue as indicted, defendants would no doubt move to exclude testimony implicating the MHQV defendants in the Genetic Testing Conspiracy under Federal Rule of Evidence 403. That evidence is not relevant

---

[6] Moreover, the Court in *Hill* had the benefit of appellate hindsight, the trial having revealed that "most of the evidence that was introduced at trial" related to the counts which the defendant was charged with. *Id.* at 829. Here, the Government's Trial Road Map reveals that a significant portion of the trial will be devoted only to the Genetic Testing Conspiracy.

because it does not make it more or less probable that the MHQV Marketing Defendants participated in the charged Compounding Pharmacy Conspiracy or paid or received kickbacks in connection with that conspiracy as alleged in the Indictment. Moreover, under Federal Rule of Evidence 404(b), the exhibits to the Response are not evidence of other bad acts.[7] To the contrary, introducing such evidence will confuse the jurors and improperly drain more of the court's time at trial. No limiting instruction could cure the prejudice and confusion that this situation would present. As explained in our Motion, if the Court does not dismiss or sever for misjoinder, this risk of prejudice could only be mitigated by impaneling a separate jury for the MHQV Marketing Defendants.

### C. Trying the case as indicted would be impracticable, unnecessarily costly, and likely to create confusion.

Nothing presented in the Government's Response demonstrates that trying this case as indicted would be practicable or even feasible. In fact, the Government did not respond to one of the many practical or logistical questions presented in the Motion that must first be resolved before this case can be tried. To the contrary, the Government proffered new information that serves to further complicate matters.

---

[7] The Government argues that such testimony would be permitted, citing to, *United States v. Gallo*, 12-20630-Cr-Lenard, D.E. 368. However, *Gallo* only permitted evidence of the continuation of the *same* scheme that the defendants were charged with, not a new and separate conspiracy that began from scratch only after the conclusion of the charged conduct. *Id.* at 9. Moreover, because the evidence relates to a separate conspiracy, that occurred after the close of the conspiracy, it is not "necessary to complete the story of the crime." *Id.* Thus, the Government's proffered evidence that forms the only basis for its joinder arguments will be inadmissible at trial. *See United States v. Perez*, No. 07-20714-CR, 2008 WL 11342484, at *3 (S.D. Fla. Oct. 22, 2008) (evidence showing intent to plan a crime other than crime charged inadmissible under Rule 404(b)).

Per the Government's Trial Road Map, six prosecution witnesses would testify about both conspiracies during the initial Compounding Pharmacy Conspiracy portion of the trial. If there are in fact multiple juries, this begs the questions: How would the jury for the MHQV Marketing Defendants be present for some but not all of the testimony of one witness? And how would the court ensure that a witness did not address the Genetic Testing Conspiracy in the presence of the MHQV Marketing Defendant jurors? Additionally, an examination of the exhibits attached to the Response further underscores the logistical burdens of a trial. Those exhibits may be relevant to the genetic testing portion of the trial but should not be admissible to prove the charges against the MHQV Marketing Defendants, which would present additional issues for the jury or juries. Moreover, if there is only one jury, and the Government plans to submit evidence related to the MHQV Marketing Defendants in the genetic testing portion of the trial, counsel for the MHQV Marketing Defendants would be required to be present at and participate in the entire trial.

Although the Trial Road Map does not ameliorate the logistical concerns of trying the six defendants and two conspiracies in one setting, it does present a silver lining. In it, the Government has provided the template for a trial in two neatly divided parts: first, the presentation of evidence related to the Compounding Pharmacy Conspiracy by fifteen witnesses and second, the presentation of evidence related to the Genetic Testing Conspiracy by thirteen separate witnesses, with six additional witnesses, including one expert witness and two government witnesses, testifying to separate elements of both conspiracies. Instead of a road map for trial, the Government has provided a foolproof road map for severance.

### III.   CONCLUSION

For the foregoing reasons, the MHQV Marketing Defendants were improperly joined under Federal Rule of Criminal Procedure 8(b), and the Indictment is defective on its face. As such, the

MHQV Marketing Defendants respectfully request that this Court dismiss the charges against the MHQV Marketing Defendants or, in the alternative, sever the MHQV Marketing Defendants from the Indictment or sever Counts 1 through 38 from Count 39.

Date: August 23, 2019

           Respectfully Submitted,

/s/ *Ryan K. Stumphauzer*
Ryan K. Stumphauzer, Esq.
Fla. Bar No. 0012176
Stumphauzer Foslid Sloman
Ross & Kolaya PLLC
2 South Biscayne Blvd., Suite 2550
Miami, FL 33131
305.371.9686
rstumphauzer@sfslaw.com
*Attorney for Anthony Mauzy*

/s/Andrew S. Feldman
FELDMAN FIRM PLLC
200 S. Biscayne Blvd, Suite 2770
Miami, Florida 33131
305.714.9474
afeldman@feldmanpllc.com
Florida Bar No. 60325
*Attorney for Thomas Sahs*

/s/ Marissel Descalzo
Marissel Descalzo, Esq.
Florida Bar No. 0669318
150 S.E. 2nd Avenue, Suite 600,
Miami, FL 33131
305.537.9565
mdescalzo@tachebronis.com
service@tachebronis.com
*Attorney for Rajesh Mahbubani*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of August, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record listed below.

s/ <i>Ryan K. Stumphauzer</i><br>
Ryan K. Stumphauzer