```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 18-cr-20710-CMA
 3

 4    UNITED STATES OF AMERICA,        Miami, Florida

 5              Plaintiff,             June 6, 2019

 6         vs.                         12:09 p.m. to 12:46 p.m.

 7    SENTHIL RAMAMURTHY, et al.,      Courtroom 12-2

 8              Defendants.            (Pages 1 to 30)

 9                          STATUS CONFERENCE
              BEFORE THE HONORABLE CECILIA M. ALTONAGA,
10                   UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12      FOR THE GOVERNMENT:    KEVIN J. LARSEN, ESQ.
                               JONATHAN D. STRATTON, ESQ.
13                             Assistant United States Attorney
                               99 Northeast 4th Street
14                             Miami, FL 33132
                               (305) 961-9001
15                             kevin.larsen@usdoj.gov
                               jonathan.stratton@usdoj.gov
16
        FOR THE DEFENDANT      DANIELLA R. STERNS, ESQ.
17      SENTHIL RAMAMURTHY:    JACK E. FERNANDEZ, JR., ESQ.
                               Zuckerman Spaeder LLP
18                             101 East Kennedy Boulevard, Suite 1200
                               Tampa, FL 33602-5838
19                             (813) 321-8225
                               (813) 321-8215
20                             dsterns@zuckerman.com
                               jfernandez@zuckerman.com
21
        FOR THE DEFENDANT      DAVID O. MARKUS, ESQ.
22      MANGALA RAMAMURTHY:    ANITA M. MOSS, ESQ.
                               Markus/Moss PLLC
23                             40 Northwest 3rd Street, PH 1
                               Miami, FL 33128-1838
24                             (305) 379-6667
                               dmarkus@markuslaw.com
25                             mmoss@markuslaw.com
```

```
 1    APPEARANCES CONTINUED:

 2    FOR THE DEFENDANT        JEFFREY H. SLOMAN, ESQ.
      ANTHONY MAUZY:           Stumphauzer Foslid Sloman Ross & Kolaya
 3                             2 South Biscayne Blvd., Suite 2550
                               Miami, FL 33131-1806
 4                             (305) 371-9686
                               jsloman@sfslaw.com
 5
      FOR THE DEFENDANT        ANDREW S. FELDMAN, ESQ.
 6    THOMAS SAHS:             Feldman Firm PLLC
                               Miami Southeast Financial Center
 7                             200 South Biscayne Blvd., Suite 2770
                               Miami, FL 33131-5300
 8                             (305) 714-9474
                               afeldman@feldmanpllc.com
 9
      FOR THE DEFENDANT        MARISSEL DESCALZO, ESQ.
10    RAJESH MAHBUBANI:        Tache, Bronis, Christianson and
                               Descalzo, P.A.
11                             150 Southeast 2nd Ave., Suite 600
                               Miami, FL 33131-1571
12                             (305) 537-9565
                               mdescalzo@tachebronis.com
13
      FOR THE DEFENDANT        JEFFREY D. MARCUS, ESQ.
14    JOHN SCHOLTES:           ALLISON M. GREEN, ESQ.
                               DANIEL L. RASHBAUM, ESQ.
15                             Marcus Neiman & Rashbaum LLP
                               2 South Biscayne Blvd., Suite 1750
16                             Miami, FL 33131-1815
                               (305) 400-4260
17                             jmarcus@mnrlawfirm.com
                               agreen@mnrlawfirm.com
18                             drashbaum@mnrlawfirm.com

19
      REPORTED BY:             STEPHANIE A. McCARN, RPR
20                             Official Court Reporter
                               400 North Miami Avenue
21                             Twelfth Floor
                               Miami, Florida 33128
22                             (305) 523-5518
                               Stephanie_McCarn@flsd.uscourts.gov
23

24

25
```

```
 1                          I N D E X

 2                          WITNESSES

 3
    WITNESSES FOR THE GOVERNMENT:                    Page
 4                                                    --

 5


 6
    WITNESSES FOR THE DEFENDANT:                     Page
 7                                                    --

 8

 9  EXHIBITS MARKED & ADMITTED IN EVIDENCE   MARKED   ADMITTED

10  Government's Exhibit No.                   --        --

11  Defendant's Exhibit No.                    --        --

12

13

14

15

16

17                        MISCELLANEOUS

18                                                   Page
    Proceedings.......................................   4
19  Court Reporter's Certificate.....................  30

20

21

22

23

24

25
```

```
 1          (The following proceedings were held at 12:09 p.m.)

 2               COURT SECURITY OFFICER:  All rise.

 3               THE COURT:  Good afternoon.  Please be seated.

 4               Please state your appearances.

 5               MR. LARSEN:  Good afternoon, Your Honor.  Kevin Larsen

 6     and Jonathan Stratton appearing on behalf of the United States.

 7               MR. FELDMAN:  Good morning, Your Honor.  Andrew

 8     Feldman on behalf of Thomas Sahs, who is present before the

 9     Court through video conference in the Central District of

10     California, Los Angeles.

11               THE COURT:  All right.  Can we see who that gentleman

12     is.

13               MR. FELDMAN:  Yes, Your Honor.  He is seated in a

14     white T-shirt -- oh, sorry -- white polo shirt.

15               THE COURT:  All right.  Thank you.

16               MS. STERNS:  Good afternoon, Your Honor.  Daniella

17     Sterns and Jack Fernandez on behalf of the Defendant Senthil

18     Ramamurthy.  He is also appearing via teleconference.  He's in

19     the top left corner video, wearing a blazer.

20               THE COURT:  Thank you.

21               MR. D. MARKUS:  Good afternoon, Your Honor.  David

22     Markus and Anita Moss for Mangala Ramamurthy who is to the

23     left.

24               THE COURT:  Thank you.

25               MR. J. MARCUS:  Good afternoon, Your Honor.  Jeff
```

1    Marcus, Allison Green, and Dan Rashbaum on behalf of John

2    Scholtes, who is present.

3            MR. SLOMAN:  Good afternoon, Your Honor.  Jeffrey

4    Sloman on behalf of Anthony Mauzy.  He is in the upper

5    right-hand corner.

6            THE COURT:  Thank you.

7            MS. DESCALZO:  Good afternoon, Your Honor.  Marissel

8    Descalzo on behalf of Mr. Rajesh Mahbubani, and he is present

9    with the Court in Austin, Texas.  He is in the top left of the

10   screen, wearing a suit with a white shirt.

11           THE COURT:  Thank you very much.

12           I'm glad we were able to accomplish the technology

13   part of the case.  And going forward, we know that we can do

14   this and have all Defendants present and participating

15   observers and listening.

16           Let me get a status, if I could, from Government's

17   counsel.

18           MR. LARSEN:  Thank you, Judge.

19           All discovery has been turned over as of today.  We

20   provided some discovery to some of the Defendants in the last

21   several days and the past week.

22           But, as of today, I have handed the Government's

23   discovery to the remaining Defendants with the exception of

24   some amount that's being reproduced.

25           And when I say reproduced, Your Honor, it's reproduced

1    in a format that is usable in e-discovery, is fully searchable.

2    That is the only work, sort of discovery issue, that is

3    outstanding.

4           But that -- that information has been produced.  It

5    would just be reproduced in a formatted -- in a format that is

6    searchable and usable to all Defendants.  We expect to have

7    that done shortly.

8           So we have produced discovery.  We don't expect any

9    other major discovery issues at this point.  There is a couple

10   of pieces of discovery the Government is still waiting on.

11          We received approximately -- today we received some

12   additional patient files from counsel for Dr. Ramamurthy.

13   Today they produced 158 patient files of the 227 patient files

14   that we have requested.  They have been producing them on a

15   rolling basis.  There are still some that are outstanding.

16          There is an additional amount of evidence that the

17   Government's requested from Mr. Ramamurthy's company, Q Health,

18   and that subpoena remains outstanding.  We have not received

19   that yet.

20          But the subpoena -- we reissued the subpoena, and

21   that's due, I think, June 20th.  We have been working with

22   Mr. Ramamurthy's counsel on that issue.

23          But as far as discovery from the Government to the

24   Defendants, we have made an effort to come together to propose

25   the trial date.  I have not been able to reach a consensus with

1    counsel for each of the Defendants.

2         I did speak with Mr. Stumphauzer yesterday.  He has

3    been the only counsel that has provided me with any sort of

4    answer at this point.  So I suspect that counsel have their

5    proposals for a trial date, but I don't know what that is at

6    this point, Your Honor.

7         THE COURT:  All right.  Thank you very much.

8         Mr. Feldman.

9         MR. FELDMAN:  Good afternoon, again, Your Honor.

10        With respect to a trial date, we would ask for some

11   time in October or November except not between the dates of

12   October 22nd and November 2nd.

13        MR. LARSEN:  And, Your Honor, just from the

14   Government's perspective, October is a period that was proposed

15   by the Government as being a possible date we could do the

16   trial.

17        For the Court's information, we anticipate that the

18   Government's case will take roughly 15 to 20 trial days -- just

19   depends on how long the days are going to be -- there are six

20   Defendants -- and what type of cross-examination we're looking

21   at.

22        I am prepared to discuss in broad terms from the

23   number of witnesses and what I anticipate, you know, the length

24   of those categories of witnesses being.

25        But our estimation at this point would be roughly an

1    estimate between 15 and 20 trial days for the Government's case

2    in chief.

3           THE COURT:  So Mr. Feldman doesn't want trial after

4    the 22nd of October for that period until November 2nd.

5           MR. FELDMAN:  Well, Your Honor, presumably, we could

6    start the trial after that period of time.

7           THE COURT:  But then we get into Thanksgiving.

8           MR. FELDMAN:  That's true.

9           THE COURT:  So I'm looking at starting the trial at

10    the end of September so that we can have it done before this

11    conference of yours that begins on October 22nd.  And that

12    gives the Government 15 to 20 trial days and days thereafter

13    for the defense.  So I was looking at Monday, the 23rd of

14    September.

15           So why don't I hear from the other Defendants'

16    attorneys on their availability and what they see with regard

17    to that.

18           MR. FELDMAN:  Thank you, Your Honor.

19           THE COURT:  Thank you.

20           MR. J. MARCUS:  If I may, Your Honor.

21           THE COURT:  Yes.

22           MR. J. MARCUS:  So we're new to this case.

23           THE COURT:  Um-hmm.

24           MR. J. MARCUS:  We yesterday got a huge electronic

25    load file from the Government.  Still processing.  So I can't

1    talk to you other than to say that the discovery, we've heard,

2    is voluminous, hundreds of thousands, I think, documents,

3    certainly pages.

4            Our client is charged -- there's really two different

5    cases here.  There are two separate conspiracies.  You have a

6    compounding pharmacy case that starts in the fall of '14 and

7    ends July '15.

8            Then there's a year gap and then there's a separate

9    conspiracy charged involving screening -- genetic screening for

10   cancer, and it starts July of '16 and goes through 2017.

11           Our client was a consultant -- an outside consultant

12   who worked compliance, worked with an attorney.  He's charged

13   in both cases.

14           The Government has said that they intend to call

15   experts on the necessity of compounding medicine, telemedicine,

16   which is involved in how these prescriptions were written on

17   the compounding side and on the cancer genetic screen.

18           It's June.  I think September 23rd frankly is not

19   enough time for us to do our job effectively.  We're going into

20   the summer.  One of the pharmacies is in Oklahoma, visit the

21   lab for the cancer screening in Atlanta.

22           We have a lot of out-of-state witnesses.  We need time

23   to investigate, meet with witnesses, go through the documents,

24   hire retained experts.  You know, three experts, to do it on

25   this short of a timetable is really not enough time.

1    I understand that there's been some history here, but

2    we're new and I don't see us being ready in September for this

3    kind of a fraud trial.

4         THE COURT:  All right.  Thank you.

5         Ms. Descalzo.

6         MS. DESCALZO:  I was with Mr. Feldman on a trial date

7    sometime in October, November.

8         THE COURT:  The Ramamurthys are the original

9    Defendants in the case.  So why don't we hear about their

10   availability for trial and ready for trial.

11        MR. D. MARKUS:  Your Honor, we are available to start

12   that September 23rd, if that's the date the Court chooses.

13   Just a couple things about that.

14        We have no objection to a later date, if that's better

15   for everybody and they need more time.  So I throw that out

16   there as well.

17        A couple of things about Dr. Ramamurthy's unique case,

18   which is, if the Court remembers, it granted two separate

19   juries before all the others were added.

20        If that still holds with six Defendants, it's going to

21   be a strange trial because Dr. Ramamurthy's part of the case is

22   very different than the other five.

23        She's the only doctor charged, and the case against

24   her deals with whether she should have been prescribing or not.

25   And so, for that length of a trial, it's a much shorter trial

if it was just Dr. Ramamurthy.

So we would renew our motion to -- instead of having one trial with two separate juries, to sever Dr. Ramamurthy out and have a very short trial for her so that one jury is not sitting there for that whole time when it doesn't really relate to her.  So I ask the Court for that.

And in terms of trial dates itself, like I said, we're available.  I would ask -- or maybe it's more appropriate when the Court decides what trial date it chooses.

I think the Court should set some very strict deadlines on the Government for expert disclosures, which we don't have yet, exhibit lists, witness lists, so that whatever date it chooses, we can go on that date and be ready because right now it's just a mess, Your Honor.

THE COURT:  Ms. Sterns.

MS. STERNS:  Your Honor, Daniella Sterns on behalf of Senthil Ramamurthy.

We are also available to start on September 23rd, if that that's the date the Court chooses.  With that being said, we are presenting a defense that could take a week or more; and so, from that perspective, it might make sense to wait until after Mr. Feldman's period of unavailability so that we can all lead over into that time; and then there is also a more recent production and ongoing discovery issues that we're working through with the Government.  But because we haven't been able

1    to analyze the more recent production yet, we submit that more

2    time would be welcomed.

3              MR. D. MARKUS:  Your Honor, could I add one other

4    thing on behalf of Dr. Ramamurthy?

5              THE COURT:  Yes, of course.

6              MR. D. MARKUS:  I'm Mr. Markus.  It is going to be

7    confusing.

8              THE COURT:  I was thinking that myself.  That's why I

9    said Dr. Ramamurthy's counsel.

10              MR. D. MARKUS:  Jeff Marcus mentioned that there are

11    two separate conspiracies in the case.  The only thing I would

12    add to that is we are also charged in both of those

13    conspiracies.  I'll call them the MHQ Defendants.

14              Mr. Feldman and the other two -- Ms. Descalzo and

15    Mr. Sloman's clients -- are not charged in both.  So it may be,

16    if Jeffrey Marcus needs more time, that we could be separated

17    out.  I know, in that trial because there's two conspiracies

18    where the other three Defendants can go at a separate time.  It

19    may make things more manageable for the Court.

20              In terms of dates, if we wait until after

21    Mr. Feldman's conflict, I know that Ms. Moss will be away

22    starting November 21st through December 6th, and I'm worthless

23    without her in trial.  So I would ask that the Court not set it

24    during that time.

25              THE COURT:  Mr. Sloman.  I'm sorry.  I did not see

1    that.

2          MR. J. MARCUS:  If I could add, Your Honor, to the

3    older Mr. Markus's request --

4          THE COURT:  In deference to age.

5          MR. J. MARCUS:  -- we don't object to going later with

6    his client in terms of availability.

7          I am out of town the week of Christmas.  My father is

8    turning 75.  So we have a family reunion.

9          I would suggest after -- like January or after anyways

10   just for the issues we have to deal with, with the case.  And

11   that would be our suggestion for trial.

12         MR. RASHBAUM:  I'm sorry, Judge.  We would have a

13   lengthy defense case.

14         THE COURT REPORTER:  I'm sorry, sir.  Your name?

15         MR. RASHBAUM:  Dan Rashbaum.

16         We will have a lengthy defense case.

17         MS. DESCALZO:  Your Honor, Marissel Descalzo on behalf

18   of Mr. Mahbubani.

19         And the remaining defendants will have a case.  I

20   don't know if it will be lengthy, but we are looking at a

21   couple of days.

22         THE COURT:  I am looking at Tuesday, January 21st.

23         MR. LARSEN:  Your Honor, that's acceptable to the

24   Government, January's generally available.

25         MR. SLOMAN:  May I go now?

1           THE COURT:  Of course.  I invited you to.  You

2    deferred to use from that end.

3           MR. SLOMAN:  Thank you, Judge.  Jeffrey Sloman on

4    behalf of Anthony Mauzy.

5           Judge, I don't want Mr. Feldman to be blamed for the

6    dates in October, that's my conflict and I should also say that

7    I have a really good excuse for a conflict at the end of

8    September.  My daughter is getting married.

9           THE COURT:  Oh, excellent.  Congratulations.  One

10   down.

11          MR. SLOMAN:  But I know the Court has already denied a

12   prior motion to sever.  And, as Mr. David Markus alluded to,

13   the MHQ Defendants are kind of -- it is a separate conspiracy.

14          And as loathe as I know the Court is to sever a trial

15   such as this and judicial economy is at a premium, I think that

16   one of the other considerations that we have is just the pure

17   expense for our clients to employ us to sit through six weeks

18   when our trial, I think, would probably be about a week, a week

19   and a half.

20          But, in any event, I point that out.  I'm sure it will

21   be our motion to sever at some point in time, but --

22          THE COURT:  Let me interrupt you, if I could, because

23   I had already discussed this with Mr. David Markus, having two

24   juries.

25          And if we're going to have two juries, there's no need

1    for the lawyers whose jury is not in the courtroom to have to

2    be in the courtroom during those times.

3         If we were efficient enough to know what dates or

4    afternoons or period Defense Counsels would not be needed

5    either.

6         MR. SLOMAN:  Well --

7         THE COURT:  It would only be the Government would have

8    to be here for the duration.

9         MR. SLOMAN:  Well, you know, we discussed that

10   beforehand and, not having experience with multiple juries, I

11   defer to the Court.

12        However, I was told that the Court's practice was

13   to -- if there was, let's say, a -- the Government's case and

14   our case was done as to our jury, the Court wouldn't, let's

15   say, send it to -- closing arguments wouldn't take place for

16   that portion or to that jury.  So we would still at some level

17   be involved in a 6-week trial.

18        THE COURT:  No.  We could start so that the Government

19   presented all of the pertinent evidence and the Defendants were

20   able to -- we would have to work that out to get you done and

21   out of here while the other part of the case progressed with

22   other testimony and witnesses that were not relevant to your

23   part of the case.

24        MR. SLOMAN:  Okay.  I like the echo.

25        Can I say -- I wanted to say, you know, Lou Gehrig's

1  speech, I feel like the luckiest man on the face of the earth

2  and hear it reverberates.  Thank you, Judge.

3          THE COURT:  And you hear it over and over again.  Very

4  good.

5          MR. STRATTON:  Your Honor, just to be clear on the

6  severance, I'm not particularly sure -- and I'm not taking away

7  from what Mr. David Markus said in regards to this Court

8  granting the two juries.  I think that was the Court's

9  suggestion.

10          The Government has two positions on that.  One is the

11  new superseding indictment.  We're not sure two juries are

12  necessary.  But even if the Court believes that it is, the

13  dynamics of that to what Defense Counsel is arguing get very

14  tricky.

15          And what I mean by that is, originally, the two juries

16  was because Senthil Ramamurthy was going to testify on behalf

17  of his mother.  I believe Defense Counsel is now arguing that

18  they're separate conspiracies.

19          So in a severance in that regard, two juries wouldn't

20  absolve that issue, if that makes sense to the Court, because

21  the one jury would hear Senthil Ramamurthy's testimony about

22  his mother, but that wouldn't alleviate the issue, if I'm

23  thinking through correctly, as to two separate conspiracies.

24  And I am loathe to suggest a third jury in this already crowded

25  courtroom.

1          But do you understand what I'm trying to get at here?

2     I don't think two juries are appropriate, given the new second

3     superseding indictment.  But, beyond that, I don't think they

4     will resolve this issue.

5          The Government is clear that we would argue in

6     response against any motion to sever with ample case law, and

7     we can litigate that issue.  We don't think a severance is

8     appropriate in any regard.

9          THE COURT:  Well, as we speak, I keep thinking that

10    you're the ones who chose to indict it this way.  You're the

11    ones who chose to put this group of Defendants together in one

12    indictment and in one case.

13         MR. STRATTON:  Absolutely.

14         THE COURT:  So I'm going to have you lay out for all

15    of us your trial plan, how you plan to try it and how they

16    would be present or not be present, and I want you to give me

17    and them a road map of how to do that.

18         MR. STRATTON:  Okay.

19         THE COURT:  And I'll give you 30 days to do it so that

20    we all know where we're going with this case.

21         MR. STRATTON:  Understood.

22         THE COURT:  Some Defendants say that there is

23    conspiracy involved.  The Ramamurthys have issues that have not

24    been addressed before.  And we've already talked about possibly

25    having to impanel two juries.

1        I'm hearing from some Defense Counsel it's going to

2   cost them lots of money to sit through.  I know I've been

3   uninvolved with regard to testimony of witnesses as it

4   pertained to their client.

5        I want you to show me how you intend to put it

6   together, your list of witnesses and how it impacts each

7   Defendant so we can all have an intelligent discussion as to

8   how this case is going to be tried.

9        MR. STRATTON:  Absolutely.  We'll lay out our

10  business.  The case is significantly intertwined, and that's

11  why it was charged this way.  That's why a severance would not

12  be appropriate.

13       THE COURT:  All right.  So I'll expect that road map

14  in 30 days.

15       MR. LARSEN:  Your Honor, just on the road map, we are

16  in the process -- I think that this case could have as many as

17  30 witnesses, but it certainly could have fewer than that.

18       So, in 30 days, I might not know a final list of

19  witnesses, but I could certainly for the Court categorize the

20  categories of witnesses, fact witnesses, expert witnesses.

21       A lot of the case will come in through beneficiaries

22  of TRICARE and Medicare.  I need to meet these people that are

23  out of state to meet them and see if they're capable of

24  traveling.  I may pick from that category of witnesses a

25  smaller subset to present our case, and I just don't know that

        at this time.

                But I can represent to the Court that I am traveling

        two out of the next four weeks to meet several of those

        witnesses to interview them and speak with them in person.

                And I will be in a position to better represent to the

        Court a more refined witness list, at least with respect to

        those categories of witnesses.

                I certainly can lay out for the Court how the

        Government intends to present its case in terms of through

        cooperators, what that evidence would look like as far as

        documents, testimony.

                THE COURT:  And what -- what Defendants those

        witnesses pertain to.

                MR. LARSEN:  Sure, Your Honor.  Sure.

                THE COURT:  All right.

                MR. LARSEN:  Just for the Court, our theory is that,

        at the apex of this conspiracy, Mr. Ramamurthy -- he engaged in

        a scheme to defraud federal healthcare programs.

                There were all six Defendants charged in the -- in

        Count 1.  Two or three of them may have fallen off and not

        continued to join the plan.

                But in terms of the scheme, the scheme was the same,

        to defraud federal healthcare programs through substantially --

        substantially the same mechanism, which was to target and

        recruit beneficiaries.

1          They were incentivized by hundreds of thousands, if

2    not millions, of dollars in kickbacks for patients that did not

3    either need this or want this -- want these products.

4          So I can lay that out certainly for the Court and how

5    we intend to prove, but I just want to make sure that whatever

6    I provide to the Court is what the Court is asking for.

7          And just hearing the Court -- the concerns of the

8    Court, I want to represent that I don't have a final set of

9    witnesses, but I certainly do have a large -- a large list.

10          THE COURT:  It may not be a final set, but it needs to

11    let me know that we can do this in one trial and I don't have

12    to have two trials.

13          MR. LARSEN:  Okay.  Fair enough.  Thank you.

14          THE COURT:  So if you could have that for all of us by

15    July 8th.  And I've already given the trial date in January.

16    And Mr. David Markus had a suggestion, a good one, that you

17    disclose your experts.

18          And so when are you going to be prepared to disclose

19    your experts and their opinions?

20          MR. LARSEN:  Your Honor, I have identified one

21    specific expert, and I'm in the process of looking at --

22    identifying a second.

23          My proposal would be to have what would be

24    simultaneous -- or simultaneous exchange of reports and witness

25    and exhibit lists.  I think that this case -- you heard from

several counsel today that they expect to present lengthy and,

what we anticipate to be, complicated legal defenses, Your

Honor.

There has been all kinds of smoke about an advice of

counsel defense.  I specifically have asked if that is a

defense, and I have not been able to get yet an affirmative yes

from any Defendant that that is a defense.

We have a deceased attorney in this case, so there is

going to be a complicated legal defense, and I believe that the

Government is entitled to have advance notice of that defense

and of their experts.  My proposal would be to provide expert

disclosures four weeks in advance of trial.

THE COURT:  That's not enough time.

MR. LARSEN:  Okay.

THE COURT:  That's usually how long in a civil case,

let alone a criminal case.

MR. LARSEN:  Your Honor, I can be flexible as far as

advance disclosures.  But we would request, Your Honor, that

that be a reciprocal obligation by the Defense, if there are

experts, that we would be afforded adequate time to explore the

defense case that has been disclosed today.

MR. D. MARKUS:  Judge, I've never heard of

simultaneous expert exchanges in a criminal case.  What happens

is that the prosecution presents its experts to the Defense.

We then have our -- get experts, if need be, to review those

1    and see if there is a contrary opinion and then present, if

2    we're going to use those, to the Government.

3         It would be impossible for us -- we don't know what

4    theories or what their experts are going to say.  Our experts

5    are responsive experts.  So we need to see what theirs say

6    first and then respond.

7         In terms of simultaneous exhibit disclosures, I have

8    not seen that either.  Again, what would happen is we see what

9    the Government is going to rely on in their case in chief, and

10   then a couple of weeks later or whatever it is, we are required

11   to give our exhibit list in response.

12        So they have the burden of proof.  That's why they

13   have to provide experts and so on first and exhibit lists

14   first, so that we can review them, consult with experts and

15   then respond.

16        MR. LARSEN:  Your Honor, with respect to the defense

17   that we know is out there, that this is not being said, I think

18   the Government is entitled to advance notice of that, and

19   certainly that can be teed up in some sort of motion in limine.

20        But that -- I know that's somewhat of a pseudo expert

21   or Defendant's expert issue.  I don't have an issue with

22   turning over our experts in advance, but we do request that we

23   be given adequate time in advance of trial to review any expert

24   disclosures by the Defense.

25        THE COURT:  All right.  So why don't we talk about

```
 1    having the Government disclose its experts and expert reports

 2    on October 1st.

 3              MR. LARSEN:  October 1st.

 4              THE COURT:  And then the Defendants are required to

 5    disclose their expert and expert reports by October 28th.  That

 6    gives the Government a good two-plus months to review that

 7    information.

 8              Does that work for everyone?

 9              MR. D. MARKUS:  Yes, Your Honor.

10              One other request.  I know you had said January 21st,

11    which is a Tuesday, to begin trial.  I hate to move it but is

12    there any way that we could start on Wednesday, January 22nd?

13    I am on a plane that day, on the 21st.

14              THE COURT:  Sure.

15              MR. D. MARKUS:  Thank you.

16              THE COURT:  And witness list and exhibit list, shall

17    we do that a month ahead of trial?

18              MR. D. MARKUS:  Yes, Your Honor.

19              MR. LARSEN:  Would that be simultaneous?

20              THE COURT:  Simultaneous.

21              MR. LARSEN:  Thank you, Your Honor.

22              THE COURT:  And the exhibit and witness lists would be

23    disclosed and exchanged on December 2nd.

24              MR. D. MARKUS:  I'm sorry.

25              December 2nd is the date for exhibit and witness
```

1    lists?

2         THE COURT:  Correct.

3         MR. D. MARKUS:  Your Honor, if the Government is

4    required to disclose it on December 2nd, could we at least have

5    a week or two weeks to review theirs and then respond to ours?

6         Because I think we need to see what exhibits they are

7    going to rely on so that we can decide how we're going to

8    respond to those exhibits in our case.

9         THE COURT:  All right.  So the Government on

10   December 2nd.  The Defense will have to turn that over by

11   December 13th.

12        MR. D. MARKUS:  Thank you.

13        THE COURT:  Motion deadline.  I will hear suggestions.

14        MR. D. MARKUS:  Judge, if their experts are due

15   October 1st, I'm sure there will be motions regarding the

16   experts.

17        So maybe we could make motions due the same day that

18   our expert disclosures are due, October 28th, and that gives us

19   all of November and December to have those motions teed up for

20   the Court.

21        THE COURT:  We would want the Government, if it has an

22   issue with any of your experts, to also be allowed to file

23   motions.

24        So why don't I indicate that any motions -- pretrial

25   motions would be due by -- how is November 8th?

1           MR. D. MARKUS:  That works, Your Honor.

2           MR. LARSEN:  That's fine for the Government, Your

3    Honor.

4           THE COURT:  And let me be clear.

5           I don't want to see multiple motions attacking the

6    same expert.  I don't want to see multiple motions in limine

7    attacking to the same items of evidence, so I am going to be

8    requiring the Defendants file combined or indicate who else

9    joins in that particular motion to try to minimize the work on

10   my end.

11          MR. D. MARKUS:  We'll make the young guy, Jeffrey

12   Marcus, do all of it.

13          THE COURT:  I bet so.

14          Any other issues?

15          And I will -- if I haven't done it already, I thought

16   I had, but discovery matters are referred to the Magistrate

17   Judge.  So I'll indicate that as well.

18          MR. LARSEN:  Your Honor, just on the advice of counsel

19   defense, we believe we are entitled to know if that is a

20   defense -- the defense that -- this lengthy defense that has

21   been talked about today has raised or is being relied on by

22   counsel.

23          We are going to need to be able to look at facts,

24   documents.  I know that there are records.  I have -- I

25   obviously have not seen them because there are privilege

1    issues.

2         But the Government is entitled to examine the facts

3    that were communicated in support of an advice of counsel

4    defense and to review that and analyze that, and so we ask the

5    Court for the Court's thoughts on how that defense can be

6    articulated.

7         I realize it is not an affirmative defense, but it is

8    certainly an issue of law that we believe needs to be

9    litigated.

10         MS. DESCALZO:  Your Honor, I think there is no

11    question on the advice of counsel Defense at least on behalf of

12    the MHQ Defendants.

13         MHQ waived its attorney-client privilege and produced

14    all e-mails and correspondence to the attorneys for the

15    Government, and those e-mails and correspondence have been

16    produced in discovery to all Defendants.

17         THE COURT:  All right.

18         MR. LARSEN:  Okay.  Okay.  They have all been

19    produced.  That's the first I have heard of the waiver -- the

20    actual waiver in production.

21         I know there were some -- there were some, but is that

22    the issue?

23         MR. FELDMAN:  Well, just to piggyback off of what Ms.

24    Descalzo said, they corporate counsel for MHQ produced several

25    hundred e-mails and, in doing so, we are not obligated to

1    produce attorney-client communications when we respond to

2    subpoenas and so I think there is a legal effect to that to do

3    it.

4              MR. LARSEN:  Well, Your Honor, I do know that there is

5    this particular attorney who is now deceased.  There is a -- I

6    have been told by the personal -- the attorney for the personal

7    representative that there is a file -- that there is a file in

8    storage.  Certainly the Government has not attempted to get any

9    control of those because of the attorney-client-privilege

10   issue.

11             But there is some universe of information and, if the

12   Court recalls, there was Rule 17(c) subpoenas issued by

13   Mr. Ramamurthy, and Judge Goodman ordered them to turn those

14   documents over to the Government.  I was advised by

15   Mr. Fernandez that they do not expect to receive any

16   third-party production.

17             So I know, on one hand, there is a file, but there is

18   nothing forthcoming.  Again, I don't know what subpoena was

19   issued -- what third-party subpoena issued in support of the

20   defense.  And the named Defendant in this case, as we all know,

21   is advice of counsel.

22             THE COURT:  But you'll have by December 13 the exhibit

23   list.  So you'll have well in advance of trial -- over a

24   month -- to review all of the attorney communications that will

25   consist of that -- that defense and support defense.

1          MR. LARSEN:  Okay.  Thank you, Your Honor.

2          THE COURT:  Any other issue?

3          MR. D. MARKUS:  Thank you.

4          THE COURT:  And I know the younger Mr. Marcus asked

5    for permission for his client to travel.  Let me just say I'm

6    not allowing it for trial and during the pretrial proceeding in

7    this case.

8          They have certain bond conditions and they are limited

9    to those bond conditions, and the rest of the time they need to

10   be working on reviewing all of this extensive discovery and

11   getting trial ready, not traveling for anything, just to be

12   clear here.

13         Now all other family commitments and vacations and

14   other travel needs to wait until the case is over.  All right?

15   I assume Mr. Marcus had a question why I was denying it, but

16   now that I'm denying it is that your client needs to be working

17   and reviewing these documents with you.  All right?

18         MR. J. MARCUS:  Okay.  Thank you, Your Honor, for

19   that.

20         THE COURT:  Anything else?

21         MR. LARSEN:  Thank you, Your Honor.  Nothing on behalf

22   of the Government.

23         THE COURT:  All right.  Thank you.  You all have a

24   good day.

25         MR. J. MARCUS:  Thank you, Your Honor.

1          THE COURT:  Oh, yes?

2          MS. DESCALZO:  Your Honor, on the travel issue, my

3    client has a certain issue that I don't want -- a health issue

4    that will require some travel.  So I'm hoping that I may file a

5    motion under seal about that for you to review.

6          THE COURT:  Very well.  Thank you.

7          MR. FERNANDEZ:  Your Honor, I'm Jack Fernandez here.

8          Ms. Sterns is not involved in this particular part of

9    this, and that's why I'm standing in.

10          On that travel issue, Mr. Ramamurthy is the only

11    individual who has a bond condition, has a curfew.  Given that

12    the Court is interested in having him deal with us and look at

13    the documents, would the Court entertain a motion for us to

14    have that curfew removed so that he can be like the rest of the

15    Defendants?

16          THE COURT:  I think the curfew exists to have him be

17    at home reviewing documents.

18          MR. FERNANDEZ:  Understood, Your Honor.

19          THE COURT:  All right.

20          Mr. Feldman:  He is in Texas.

21          THE COURT:  Right.  He can look at them there.  I

22    assume your clients -- all of whom are participating here, have

23    access to this voluminous discovery wherever they are.

24    Because, otherwise, we are not getting trial-ready.  We have

25    you lawyers getting ready here and your clients in the dark.

1    So my assumption is that they have the documents that you have

2    and they're reviewing them and they're communicating with you

3    about the relevance and effect of each one.

4              MR. FERNANDEZ:  Thank you, Your Honor.

5              THE COURT:  All right.  Thank you.

6              THE COURT REPORTER:  I'm sorry, sir, your name?  Your

7    name?

8              MR. FERNANDEZ:  Jack Fernandez for Senthil Ramamurthy.

9              THE COURT:  Thank you very much.  We can all

10   disconnect.

11              (The proceedings concluded at 12:46 p.m.)

12                    C E R T I F I C A T E

13

14       I hereby certify that the foregoing is an

15    accurate transcription of the proceedings in the

16    above-entitled matter.

17

18   __07/22/19__    _Stephanie A. McCarn_____
19       DATE        STEPHANIE A. McCARN, RPR
                     Official United States Court Reporter
20                   400 North Miami Avenue, Twelfth Floor
                     Miami, Florida 33128
21                   (305) 523-5518

22

23

24

25