UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number 18-20710-CR-ALTONAGA/GOODMAN(s)(s)

UNITED STATES OF AMERICA,

vs.

SENTHIL RAMAMURTHY,

        **Defendant.**
_____/

## MOTION TO REVOKE BOND

The United States of America respectfully files this Motion to Revoke Bond and requests, pursuant to 18 U.S.C. § 3148, that the Court set a hearing on this matter as soon as practicable. The basis for the government's motion is that the Defendant engaged in criminal conduct while on supervised release and his conduct involved the health care field, which he is prohibited from engaging in as a further condition of his bond.

**I.     FACTUAL BACKGROUND**

1.  Defendant was charged by Indictment with conspiracy to commit health care and wire fraud; substantive health care fraud; conspiracy to pay and receive health care kickbacks; and substantive counts of both paying and receiving kickbacks. [D.E. 3].

2.  Defendant had his initial appearance on September 20, 2018, and was granted a $250,000 ten percent (10%) bond with electronic monitoring and home confinement with both standard and special conditions of release [D.E. 14]. In connection with the interview conducted by U.S. probation, the defendant represented that he was unemployed and had been unemployed since 2016 and that his parents were supporting him.

1

3.      On March 8, 2019 Ramamurthy, citing medical reasons, requested a modification of the terms of his release to include removal of his GPS electronic monitoring bracelet and to eliminate home confinement [D.E. 98].  The United States did not oppose Ramamurthy's motion, and on March 11, 2019, this Court removed the home detention requirement with GPS monitoring and imposed a 9:00 p.m. to 6:00 a.m. daily curfew [D.E. 99].

4.      From the inception of the case, this Court has periodically ordered Ramamurthy to travel from the Southern District of Texas, where he resides, to the Southern District of Florida for the purpose of participating in status conferences.  In fact, as a condition of his bond, Ramamurthy is restricted from traveling to the Southern District of Florida, except for court-ordered appearances.  [D.E. 15].

5.      On April 3, 2019 Ramamurthy attended a Court-ordered status conference in Miami at which the government stated its intention to supersede the indictment to include conduct related to the now charged genetic testing conspiracy.[1]

6.      Ramamurthy is scheduled to stand trial in January 2020 on charges that he spearheaded a scheme to defraud the United States and target Tricare, Medicare and Medicaid – federal programs that serve American soldiers, retirees, and their dependents, and programs that serve the elderly, disabled and indigent.  Specifically, Ramamurthy is charged with orchestrating schemes targeting the beneficiaries of these programs with unnecessary products and services so that he could reap millions of dollars in kickbacks from compounding pharmacies and genetic testing laboratories.

---

[1] Ramamurthy was subsequently charged by a second superseding indictment [D.E. 117] with conspiracy to defraud the United States and to receive health care kickbacks.  These charges stem from Ramamurthy's purported involvement in a scheme targeting elderly and indigent beneficiaries of Medicare and Medicaid with genetic cancer tests.

7. The instant motion involves purported violations of standard condition number 6, requiring that the defendant **"[s]hall not commit any act in violation of state or federal laws;"** and special condition letter q, which stated **"no employment in health care field."** *Id.*

## II. THE DEFENDANT COMMITTED CRIMES WHILE OUT ON BOND

8. Specifically, while out on bond, Ramamurthy has engaged in repetitive and on-going violations of the orders of this Court by conspiring with others to commit health care fraud and to receive kickbacks. Even worse, it is clear that Ramamurthy used court-required travel to the Southern District of Florida as an opportunity to meet in person with co-conspirators (who have also now been charged with conduct related to the Defendant's scheme), and to attempt to collect health care kickbacks.

9. In June 2019 another component of the Department of Justice, in connection with an investigation into the genetic testing laboratory identified in the second superseding indictment as "Laboratory 1" obtained a search warrant for a smart phone belonging to a target of that investigation, now identified as "B.H."[2] During their review of the contents of the seized smart phone, agents discovered communications in the form of text messages and "WhatsApp" messages between B.H. and Ramamurthy from June of 2016 through May of 2019.[3] *See* Exhibits 1-A (text messages) and 1-B (WhatsApp messages).

---

[2] On September 24, 2019, Minal Patel, the owner of Laboratory 1 was indicted in the S.D.FL. (Case No. 19-80181-CR-Ruiz) on charges of conspiring to commit health care, wire fraud and to defraud the United States and to pay and receive health care kickbacks, as well as substantive health care fraud and kickback charges. Laboratory 1 is alleged to have billed Medicare more than $310 million during times relevant to this case for medically unreasonable and unnecessary claims related to CGx testing. Laboratory 1 is also alleged to have paid millions of dollars in kickbacks to multiple co-conspirators, including more than $1.5 million to Ramamurthy in exchange for the referral of CGx swabs taken from Medicare and Medicaid beneficiaries.

[3] Relevant to the instant motion contained in Exhibit 1 are text and WhatsApp messages spanning approximately April 26, 2018 through May 3, 2019. Because the temporal scope of the seized communications covered a time frame that the government knows Ramamurthy to have been

10. On the evening of September 6, 2019 B.H. signed a plea agreement with the Government agreeing to plead guilty to conspiring to defraud the United States and to solicit and receive health care kickbacks in violation of Title 18, United States Code, Section 371. B.H., who is now cooperating with the United States was interviewed and acknowledged that, since at least January 2017, he accepted illegal kickbacks and bribes from Laboratory 1 in exchange for referring beneficiaries' completed genetic testing kits ("samples") and doctor's orders (known in the industry as "D.O.s") to Laboratory 1. B.H. explained that he also recruited "sales representatives" for Laboratory 1 to whom Laboratory 1 would also pay illegal kickbacks in exchange for beneficiaries and D.O's those representatives referred to Laboratory 1. Specifically, Laboratory 1 typically paid between 35% and 45% of the reimbursement it received from Medicare to B.H. and other "sales representatives." B.H. stated that he would receive 5% of the commissions Laboratory 1 paid to these other "sales representatives." B.H. called the 5% payment an "override."

11. B.H. stated that Ramamurthy was a "sales representative" he knew to be recruited to Laboratory 1 and that he had frequent communications with Ramamurthy about the referral of samples to laboratories, including Laboratory 1 in exchange for illegal kickbacks.

12. The text messages seized from B.H. demonstrate that Ramamurthy misrepresented his employment to U.S. Probation in a pre-trial services interview in September 2018 when he said he was unemployed and being supported by his parents. The text messages show that the defendant continued the use of his company to target Medicare and Medicaid patients, collect CGx samples and to sell them to genetic testing labs affiliated with B.H. This unlawful conduct continued even

---

represented by counsel, a filter attorney unrelated to this investigation was assigned to review the content for any potential attorney-client communications. Having discovered no such communications, the communications were turned over to the investigative team on this case. Two telephone numbers are associated with Ramamurthy: (1) 19564758935 and (2) 19565668581.

after this Court prohibited Ramamurthy as a condition of bond from engaging in employment in the health care field.[4]

13. B.H. was asked about the text communications with Ramamurthy found on his phone (described in greater detail below). The communications between B.H. and Ramamurthy reveal that in the months prior to Ramamurthy's original indictment, Ramamurthy collected and referred saliva samples taken from Medicare and Medicaid beneficiaries to genetic testing labs with which B.H. had affiliations in exchange for kickbacks.

14. The communications show that after September 20, 2018, the date on which this Court imposed a health care business restriction as part of Ramamurthy's conditions of bond, Ramamurthy continued to engage with B.H. in a systematic campaign to target Medicare and Medicaid beneficiaries with genetic cancer tests in exchange for kickbacks.

15. The communications also reveal that well after he was placed on bond, in November and December of 2018, Ramamurthy introduced B.H. to several genetic testing "marketers" that would collect and refer DNA samples belonging to Medicare and Medicaid beneficiaries to laboratories from which B.H. had arranged to receive kickbacks.

16. The communications also show that Ramamurthy and B.H. had in-person meetings in Miami on dates that coincided with Ramamurthy's appearance at required hearings before this Court. Ramamurthy was arraigned on January 7, 2019 on the first superseding indictment [D.E. 43]. The communications show that on January 2, 2019, Ramamurthy alerted B.H. that he was "flying to Miami this weekend." The two discussed a meeting that Sunday to discuss "50 clinics" that one of Ramamurthy's genetic testing marketers had as a source for referrals. The

---

[4] The second superseding indictment alleges that Ramamurthy's company, Q Health Services, LLC. received kickbacks in exchange for the referral of DNA specimens [D.E. 117 at p. 27].

communications reveal that a meeting did in fact occur on Sunday at the Epic hotel in Miami's Brickell neighborhood between Ramamurthy's marketer and B.H.

17. The communications reveal that throughout January and February of 2019 Ramamurthy and B.H. discussed planning and logistics related to Ramamurthy's referral of DNA samples to genetic testing labs via B.H.[5] A January 22, 2019 text message from B.H. to Ramamurthy encouraged Ramamurthy to "[f]ind Texas medicade" *sic.* On January 24, 2019, B.H. informed Ramamurthy that "[t]his might be the last run."[6] Ramamurthy replied on January 28, 2019: "I'm on it call you shortly." A text message from Ramamurthy to B.H. on February 4, 2019 exclaimed that his marketer "got 2!! (clinics)  He's sending the forms (provider forms) now to u." Later that day, Ramamurthy told B.H. to "[p]lease make sure. They mail. out kits to **REDACTED** tmw."[7] A February 8, 2019 text from Ramamurthy to B.H. inquired whether another lab was "working," so that one of Ramamurthy's marketers could send samples there. On February 21, 2019, Ramamurthy asked B.H. how much Medicare was paying the lab per sample, B.H. replied $8,700.

18. Communications continued in March and April 2019 between Ramamurthy and B.H. about referring DNA samples to labs for payment. In late March, 2019, Ramamurthy texted B.H. about the fact that his marketer was "sitting on a huge supply of stuff." During an interview, B.H. explained the "stuff" was DNA samples to be referred to labs. On March 28, 2019, Ramamurthy told B.H. on WhatsApp that "**REDACTED** has hundreds of these (CGx samples to

---

[5] The owner of the genetic testing labs at issue in this discussion between Ramamurthy and B.H. was indicted on September 26, 2019 in the Eastern District of Louisiana.
[6] B.H. was interviewed and stated that the "last run" referred to the fact that the scheme might be drying up.
[7] B.H. stated that Ramamurthy was asking him to have the lab mail genetic testing kits to his marketer tomorrow. The names of unindicted co-conspirators are redacted.

6

send to u," and that "**REDACTED** can do 2,000 samples (CGx) a week." On March 29, 2019, Ramamurthy texted B.H. that his marketer "got 20 docs signed up," and that he told his marketer to "send Medicare and Medicaid." That same day Ramamurthy texted B.H. that he was "flying to Miami Monday," asking B.H. "can u meet up." Ramamurthy was traveling to Miami so that he could attend a status conference ordered by this Court on April 3, 2019. The day prior to the status conference (April 2, 2019) before this Court, Ramamurthy texted B.H. "I'm poolside in Miami! We just got some approvals." The communications continued via WhatsApp. "Call me when you are free. **REDACTED** has 10,000 samples ready to go."

19.     The seized communications between Ramamurthy and B.H. demonstrate that Ramamurthy and one of his associates met B.H. on April 10, 2019 at a restaurant located on Linton Boulevard in Del Ray Beach, Florida. When B.H. was interviewed about this meeting, he told government investigators that Ramamurthy pressed him for payment for CGx samples that Ramamurthy had sent to laboratories B.H. was affiliated with. B.H. stated that Ramamurthy disclosed that he had been indicted but that Ramamurthy remained interested in referring CGx samples to B.H.'s labs. The seized communications show that the following day, April 11, 2019, Ramamurthy arranged an introduction between B.H. and a co-conspirator for the purpose of continuing the CGx cancer testing scheme. B.H. also stated that at the April 10, 2019 meeting, the defendant pressed B.H. for payment related to CGx samples he previously referred and that Ramamurthy insisted that B.H. payments be made to an off-shore account.

20.     The seized communications demonstrate that after Ramamurthy and B.H. met in person in South Florida in April 2019, Ramamurthy referred a new co-conspirator into the scheme with B.H. named "**REDACTED**." The seized communications show **REDACTED** and B.H discussing "organized sample collection events" targeting among others, Medicare beneficiaries

at South Texas oncology clinics and adult day care centers. B.H. also told government investigators that he agreed to pay the monies demanded by the Defendant at the April 10, 2019 meeting to that co-conspirator, and that B.H. in fact paid the money to that co-conspirator.

### III. THE DEFENDANT VIOLATED HIS BOND BY CONTINUING HIS SCHEME IN THE HEALTH CARE FIELD

21. The facts described above demonstrate clearly that the Defendant violated federal law while out on bond. It is also evident that the defendant willfully ignored the order of this Court by systematically engaging in his scheme to target Medicare and Medicaid patients with CGx tests.

22. In September 2018 this Court prohibited Ramamurthy as a condition of being released on bond, from any employment in the health care field [D.E. 14]. The Defendant blatantly and systematically violated this special condition of his bond when he continued to solicit and refer CGx samples to laboratories in exchange for kickbacks and bribes. This conduct continued even *after* Ramamurthy learned he was to be indicted for this very conduct.

### IV. LEGAL STANDARD

23. Title 18, United States Code, Section 3148(b) prescribes the procedure for revocation of a defendant's supervised release when the defendant is accused of either: (1) committing a Federal, State of local crime while on release; or violated any other condition of release.

24. Upon motion by an attorney for the Government, the Court shall revoke the defendant's release and enter an order of revocation upon a finding that there is: (1) probable cause to believe that the defendant committed a Federal, State or local crime while on release; or (2) the Court finds by a clear and convincing standard, that the defendant violated any other condition of release, and based on the factors set forth in Title 18, United States Code, Section 3142(g) that no condition or combination of conditions of release will assure that the defendant will not flee or

8

pose a danger to the safety or any other person or the community; or that the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(1)(A) and (B).

25. The record before this Court demonstrates that there is probable cause to believe that while on supervised release in this case, the defendant used court-mandated appearances in the Southern District of Florida as an opportunity to meet with co-conspirators and make arrangements for the continued referral of CGx samples to laboratories that would pay him thousands of dollars in kickbacks per sample for Medicare and Medicaid beneficiaries in violation of federal law. Moreover, it is also clear that the defendant willingly violated a known condition of release – no employment related to heath care by targeting beneficiaries of federal health care benefit programs as well as health care providers to collect CGx swab samples that he could refer to laboratories in exchange for kickbacks.

26. Furthermore, pursuant to § 3148(b)(2)(B), defendant has already demonstrated that he "is unlikely to abide by any condition or combination of conditions of release." The evidence tendered herein and attached hereto exposes the defendant as someone who does not take the criminal charges pending against him seriously and will not respect orders imposed upon him by this Court.

27. In this case, the Court and the Government placed a measure of trust in the Defendant, agreeing to a reasonable bond and later to the removal of an electronic monitoring unit for reasons represented to the government and to the Court as being medical in nature. However, it is clear that the Defendant does not take the orders imposed by this Court seriously as he continues to brazenly participate in the very conduct he is now charged with. Accordingly, this

Court and the Government can have no confidence that Defendant will abide by any conditions of supervised release.

28.     Accordingly, the government respectfully requests that this Court revoke the defendant's bond pursuant to Title 18, United States Code, Section 3148(b) and detain him pending trial.

29.     On September 27, 2019, the undersigned Assistant United States Attorney conferred with Jack Fernandez, Esq., counsel for the Defendant.  Mr. Fernandez objects to the motion and will respond.

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY

By:   */s/ Kevin J. Larsen*
      KEVIN J. LARSEN
      Assistant United States Attorney
      Special Bar Number: A5501050
      99 NE 4th Street, 6th Floor
      Miami, FL 33132
      Tel: (305) 961-9356
      Email: kevin.larsen@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via Notices of Electronic Filing generated by CM/ECF.

s/ *Kevin J. Larsen*
KEVIN J. LARSEN
Assistant United States Attorney
