## Valley Internal Medicine

## Dr Mangala Ramamurthy

## Medical Review

### Medicare Data of LabSolutions LLC Billed Genetic Testing: 10/13/2016 - 4/12/2017 with Dr Mangala Ramamurthy as Referring Provider

| CPT Procedure | Brief Description CPT Genetic Testing | Sum of CLF-Amt Billed | Sum of CLF-Amt Allowed | Sum of CLF-Amt Paid to Prov |
|---|---|---|---|---|
| 81211 | BRCA1 BRCA2 Breast and Ovarian Ca | $386,700.00 | $155,024.52 | $151,924.27 |
| 81406 | Molecular Pathology Level 7 Analysis | $360,995.00 | $146,900.00 | $143,962.00 |
| 81292 | Colorectal Ca, non-polyposis type 2 | $356,277.50 | $145,359.78 | $142,451.52 |
| 81321 | Cowden Syndrome, Hemartoma tumor | $331,540.00 | $135,118.80 | $132,415.68 |
| 81405 | Molecular Pathology Level 6 Analysis | $250,355.00 | $102,600.00 | $100,548.00 |
| 81404 | Molecular Pathology Level 5 Analysis | $168,377.50 | $68,625.00 | $67,252.50 |
| 81298 | Colorectal Ca, non-polyposis, Lynch Syndrome | $158,687.50 | $64,743.39 | $63,448.08 |
| 81295 | Colorectal Ca, non-polyposis type 1 | $128,611.00 | $34,124.34 | $33,441.81 |
| 81403 | Molecular Pathology Level 4 Analysis | $130,712.50 | $52,875.00 | $51,817.50 |
| 81300 | Colorectal Ca | $89,898.00 | $36,368.07 | $35,640.54 |
| 81297 | Colorectal Ca | $85,178.50 | $34,124.34 | $33,441.81 |
| 81323 | Cowden Syndrome, Hemartoma tumor | $47,685.40 | $19,704.54 | $19,310.40 |
| 81201 | Adenomatous polyposis coli | $21,945.00 | $8,610.00 | $8,437.80 |
| 81203 | Adenomatous polyposis coli | $21,945.00 | $8,610.00 | $8,437.80 |
| 81226 | Drug Metabolism | $6,768.00 | $0.00 | $0.00 |
| 81401 | Molecular Pathology Level 2 Analysis | $3,150.00 | $280.00 | $274.40 |
| 81225 | Drug Metabolism | $2,916.00 | $291.36 | $285.53 |
| 81227 | Drug Metabolism | $2,628.00 | $0.00 | $0.00 |
| 81479 | Unlisted Molecular pathology Procedure | $1,925.00 | $0.00 | $0.00 |
| 81355 | Warfarin Metabolism | $540.00 | $0.00 | $0.00 |
| 81400 | Molecular Pathology Level 1 Analysis | $308.00 | $123.00 | $120.54 |
| 81291 | Hereditary Hypercoagulability | $298.00 | $118.92 | $116.54 |
| 81241 | Hereditary Hypercoagulability Factor V | $209.00 | $83.24 | $81.58 |
| 81240 | Prothrombin, Coagulation Factor II | $168.00 | $67.03 | $65.69 |
| Totals | | $2,557,817.90 | $1,013,751.33 | $993,473.99 |

**Medical Review of Dr Managala Ramamurthy's Medical Records with LabSolutions Medicare Billing of Genetic Testing with Dr Ramamurthy as the Referring Provider**

**Office Visits**

- A total of 242 patients (including 3 Unknown) patients were billed by LabSolutions for Genetic Testing with Dr Ramamurthy as Referring Provider.
- Beneficiaries' ages ranged from 33 – 97.
- **Summary of Medical Review**

|  | Medicare Data Prior Relationship with Dr Ramamurthy | Office Note Prior Billed Testing | Office Note Same Date as Collection date | Office Note Corresponding to Results Given to Patient/Family | Office Note(s) Interval Between Testing and Results Given to Patient/Family | Office Note(s) After Results Given to Patient/Family |
|---|---|---|---|---|---|---|
| Yes | 108 / 242 (45%) | 86 / 242 (36%) | 125 / 242 (52%) | 130 / 242 (54%) | 84 / 242 (35%) | 83 / 242 (34%) |
| No (Includes 72 Patients With No Medical Record) | 134 / 242 (55%) | 156 / 242 (64%) | 117 / 242 (48%) | 112 / 242 (46%) | 158 / 242 (65%) | 159 / 242 (66%) |

- **Further Breakdown**

| Office Notes Before/During and/or After Results Given to Patient/Family | No Patient Medical Records | Office Notes Only on Testing Date and/or Date Results Given to Patient/Family | Only LabSolutions Requisition and/or Questionnaire | Billed Patient Unknown |
|---|---|---|---|---|
| 97 /242 40% | 72 / 242 30% | 62 / 242 26% | 8 / 242 3% | 3 / 242 1% |

- According to CMS data for LabSolutions billing of genetic testing with Dr Ramamurthy as referring provider, 55% of the 242 patients billed, or 134 patients, failed to show a prior relationship of billing prior to the testing.
- In comparison, according to medical review, 64% or 156 out of 242 billed patients failed to contain documentation of an office visit prior to the billed date of genetic testing service.
- 30% of the patients, or 72 out of the 242 billed patients had no medical record documentation to support the procedures billed.
- Out of 242 patients who were billed by LabSolutions for Genetic Testing as referred by Dr Mangala Ramamurthy, 62 or 26% of the patients had only one or two office visit notes in the medical record – either on the day of testing and/or on the day results were given to the patient/family. All of the office visits were essentially cloned, with only few minor variations. Most consecutive pages can be matched up exactly, with only a few variations. The page reporting the results contain the same overwritten spelling. There are no Physical Examinations on any of these visits. It would be expected that a physical examination would be performed on the initial visit to evaluate the patient's condition, make a diagnosis and then plan appropriate treatments.  The pages include no other chronic diagnoses, even though most of these patients were elderly. No medications were documented for any of these patients.  The only assessment was "Family hx CA." There was no documentation of which family members had a history of cancer, first, second, or third degree relative. There was no patient with a personal diagnosis of cancer. Very few patients were documented with vital signs – Blood pressure, heart rate, respiratory rate, or temperature. It would be expected that especially on an initial examination, the basics of vital signs would have been taken and documented. According to the Florida Medicare 3rd Quarter Part A Medicare Bulletin 2006 Cloning of Medical Notes, Volume 8, Number 3, p.4:

"Documentation is considered cloned when each entry in the medical record for a beneficiary is worded exactly like or similar to the previous entries.  Cloning also occurs when medical documentation is exactly the same from beneficiary to beneficiary.  It would not be expected that every patient had the exact same problem, symptoms, and required the exact same treatment.

Cloned documentation does not meet medical necessity requirements for coverage of services rendered due to lack of specific, individual information.  All documentation in the medical record must be specific to the patient and her/his situation at the time of the encounter.  Cloning of documentation is considered a misrepresentation of the medical necessity requirement for coverage of services.  Identification of this type of documentation will lead to denial of services for lack of medical necessity and recoupment of all overpayments made."

- 3% of the patients' medical records, or 8 out of the 242 billed patients, contained only the LabSolutions Requisition and/or Questionnaire. These medical records contained no documentation of any office visit.
- 1% or 3 out of the 242 patients billed were billed with an unknown patient identifier number (HICN).
- About 1/3 of the billed patients (34-36%) (83-86) were supported with documentation of an office visit note either before testing, during, or after the results were given to the patient/family.
- Only 10% or 24 out of the 242 patients were documented with a personal history of cancer in the office notes as compared to 11% or 26 out of the 242 patients on the LabSolutions Questionnaire.
- There were no patients documented with an Ashkenazi Jewish Ancestry.
- 47% or 113 out of the 242 patients were documented with a family history of cancer on the office visit note(s) prior to testing as compared to 53% or 128 out of the 242 patients on the LabSolutions Questionnaire.
- According to the billed dates of service of the genetic testing as referred by Dr Ramamurthy, 13 – 16 patients were tested in a single date of service. See high volume days: 11/16/2016, 12/12/2016, 12/13/2016.
- Most patients received Vitamin B12 injections, without diagnosis to support administration.
- Many patients were documented as receiving injections of Toradol® (Ketorolac) a very strong NSAID or Tramadol®, a narcotic for moderate to severe pain. Injections were given several times in a week to monthly for various complaints of pain including pain in the toes, the foot, the waist, the abdomen with little documentation as to associated diagnoses or home treatments already tried and failed.
- Treatments often included prescriptions for compound creams without documentation of the name of the creams, their ingredients, the purpose as pain, scar, etc. or previous failed treatments.
- Frequently the subjective chief complaint was that the patient came for pain management with little documentation of what treatment was given, the level of persisting pain, or the area being treated.
- Genetic Testing and Results were rarely documented on Electronic Health Record (EHR).
- Many patients "requested home health." There were no CMS required Plans of Care (POC) or face-to-Face Encounters to support the ordering of home health.
- Office Notes were written by Dr Mangala Ramamurthy and Dr
- Patient's Chief Complaint (C/C) under  "S" (Subjective Section) of the office visit note often included "Here for DM (Diabetes Mellitus) management " with no documentation of blood sugars or at times diabetic medications.
- Office visit frequency ranged from several times in one week, to monthly, to only date of genetic test and date results of the genetic test given.

**<u>Beneficiaries</u>**

- Same Addresses:
    1.

    2.

    3.

    4.

    5.

    6.

    7.

    8.

    9.

    10.

    11.

    12.

    13.

    14.

    15.

    16.

    17.

    18.

    19.

- Same Testing Dates of Service: 10/13/2016 – 4/12/2017 (Up to 13-16 patients tested per DOS: see high volume days: 11/16/2016, 12/12/2016, and 12/13/2016).
- There were other beneficiary medical records provided by Valley Internal Medicine with documentation of Saliva Genetic Testing not included on the Medicare data.

**Lab Solutions Questionnaire**

- The LabSolutions Requisition usually only included Initials for the Provider signature.
- Most of the Saliva Tests were usually documented as performed by                .
-                 and            s names also appeared on the Questionnaire
- Predict test was the only test ordered. Sometimes no specific test was checked.

**Lab Solutions Test Results**

- 42/242 or 17% of the patients tested positive.

**Dr Ramamurthy's CMS Billing Data**

- DOS: 12/4/2011 – 3/22/2019
- 537 Distinct Beneficiaries
- Place of Service: 11 Office (527 Distinct Benes), 12 Home (16 Distinct Benes), and 32 Nursing Facility (8 Distinct Benes). There were no hospital visits billed.
- The highest billing of distinct claims and billed amount was 99214 Established Patient Office or Other Outpatient Visit, Typically 25 minutes with 403 distinct benes billing a total of $713,680.00.
- 248 distinct benes (46%) were billed G0179 Physician Re-Certification for Medicare Covered Home health Services Under a Home Health Plan of Care.  Orders for Home Health were noted in the Treatment section of patients, but there were no Plans of Care or Face-to-Face Encounters that are required by Medicare for payment of home health services.
- Of the 537 benes, 455 or 85% were billed for J3420 Vitamin B12 injections.
- Of the 537 benes, 255 or 48% were billed J1885 Injection, Ketorolac Tromethamine Injections (Toradol®), a non-steroidal anti-inflammatory (NSAID) medication used for moderate to severe pain.
- Associated billing code for injections, CPT code 96372 Injection beneath the skin or into muscle for therapy, diagnosis, or prevention was billed for 472 distinct patients (88%of the patients) with a billed amount of $294,006.00. Treatments included orders for B12 injections, Toradol injections, and antibiotic injections.

**References**

- Local Coverage Determination (LCD) BRCA1 and BRCA 2 Genetic Testing (L36715) Novitas Solutions, Inc, Effective Date 12/01/2016.
- Local Coverage Determination (LCD) Biomarkers Overview (L35062), Novitas Solutions, Inc, Effective Date 10/01/2015.
- CMS IOM, Publication 100-03, *Medicare National Coverage Determinations (NCD) Manual*, Part 2, Section 90.2 Next Generation Sequencing for Patients with Advanced Cancer
- Social Security Act (§1861(r)) **defines** a **treating physician** as a "**physician** who furnishes a consultation or treats a patient for a specific medical problem, and who uses the results of a diagnostic test in the management of the patient's specific medical problem."
- Title XVIII of the Social Security Act, Section 1833(e) states that no payment shall be made to any provider for any claim that lacks the necessary information to process the claim.
- Florida Medicare 3rd Quarter Part A Medicare Bulletin 2006 Cloning of Medical Notes, Volume 8, Number 3, p.4.