**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-Cr-20710-CMA(s)(s)**

**UNITED STATES OF AMERICA**

**vs.**

**SENTHIL RAMAMURTHY,**
**MANGALA RAMAMURTHY,**
**ANTHONY MAUZY,**
**THOMAS SAHS,**
**RAJESH MAHBUBANI, and**
**JOHN SCHOLTES,**

      **Defendants.**
_____/

**GOVERNMENT'S MOTION TO COMPEL DISCLOSURE OF, AND DISCOVERY**
**REGARDING, ANY ADVICE OF COUNSEL DEFENSE**

      The United States of America hereby moves to compel each Defendant to timely disclose, and provide discovery regarding, any trial defense of reliance on advice of counsel, and to preclude any defense of good faith reliance on advice of counsel in the absence of that discovery. Specifically, the Government seeks an order: (A) requiring the Defendants to make any such disclosure and provide discovery at this time; (B) permitting the government to investigate and gain access to additional discovery on relevant communications by and between Defendants and any attorney or attorneys with whom the Defendants consulted; or (C) in the absence of such discovery, precluding that Defendant from asserting an advice of counsel or good faith defense based on attorney advice at trial (either via counsel, other witnesses and evidence, or their own testimony). This Court recently entered such an order, *see United States v. Robert Shapiro,* Case No. 19-20178-CR-Altonaga, [D.E. 108] at p. 2 (S.D. Fla. July 8, 2019), and we respectfully submit that it should do so again in this case.  Our proposed order is attached as Exhibit 1 to this motion.

There is an imperative for this motion, especially with trial barely three months away and the Government's initial exhibit list due in a matter of weeks. Based upon communications with defense counsel, we anticipate that some or all of the Defendants will offer broad arguments and evidence that "attorneys were involved" or that *some* parts of the fraud were discussed with attorneys, and that accordingly the Defendants should not be held criminally liable because lawyers were aware of aspects of the charged schemes and blessed the arrangements. Without a specific showing and factual predicate pursuant to applicable case law, however, this is an improper argument. Clarity on this subject will greatly benefit all parties, so the government respectfully requests that the Court provide a pretrial ruling setting forth the proper scope of an advice of counsel defense, if any, and require disclosure and discovery to the government. The urgent nature of the Government's request herein is fueled by the parties' November 8, 2019 deadline for filing *motions in limine*. It will be virtually impossible for the Government to move *in limine* on the admissibility of evidence relating to an advice of counsel defense, when the government is not in possession of all the pertinent evidence on this issue. The Government respectfully submits that *now* is the appropriate time for this Court to take up this issue.

### I.   THE CHARGES

The second superseding indictment charges three conspiracies involving health care fraud and the payment and/or receipt of health care kickbacks. The conspiracy began in 2014 as a scheme to bill Tricare for unnecessary compounded drugs, and it later evolved in 2016 into a scheme to bill Medicare for unnecessary genetic tests. Count 1 charges a conspiracy to commit health care fraud and wire fraud based on a joint scheme by all six defendants to target the Tricare program and submit claims for unnecessary, and expensive, creams and ointments. Count 10 charges a conspiracy to defraud the United States and to pay and receive health care kickbacks, related to the aforementioned Tricare scheme charged in count 1, and involves the payment and receipt of kickbacks among all

the defendants to induce the referral of Tricare beneficiaries to compounding pharmacies. Count 39 involves three of the six defendants, and relates to a continuing effort by those three defendants to perpetuate a similar kickback and fraud scheme targeting Medicare for expensive genetic tests. In addition to the conspiracies, the indictment charges all defendants with various substantive counts of health care fraud related to the initial Tricare scheme (counts 2-9), and five of the six defendants with various substantive counts of either paying or receiving health care kickbacks (counts 11-35). Defendant Mangala Ramamurthy is separately charged with three counts of making false statements (counts 36-38) which were made to agents during the course of the investigation.

The Court also set deadlines for exhibit and witness lists. The government's lists are due December 2, 2019 and pre-trial motions are due on November 8, 2019. This Court set trial for January 22, 2020.

## II. FACTUAL BACKGROUND[1]

For more than four years beginning in 2014, the Defendants spearheaded a multi-million dollar fraud and kickback scheme targeting government health care plans through a network of marketers, telemedicine organizations and physicians to push expensive and medically unnecessary compounded medications and genetic cancer tests on beneficiaries. The scheme was propelled by the Defendants' greed. First, the Defendants identified health care benefit programs that paid for compounded medications and DNA tests; second they targeted beneficiaries of these programs with an army of "marketers" paid to gain access to among other places, U.S. military bases, senior living centers, and adult day care centers where they encouraged soldiers and senior citizens to sign up for items and services they did not need. Third, the Defendants substituted patients' relationship with their own doctors by using telemedicine companies and other doctors (like Defendant Dr. Mangala

---

[1] The United States proffers these facts based upon anticipated evidence that will be presented as part of its case-in-chief, for the limited purpose of assisting the Court in deciding pretrial motions.

Ramamurthy) to approve pre-printed prescriptions for compounded medications and order genetic cancer tests without concern for patient need. Fourth, the Defendants collected between 45% and 55% of the amount paid by the patients' insurance plans (*e.g.* Tricare and Medicare) from compounding pharmacies and genetic testing laboratories as a kickback in exchange for the referrals. In the end the scheme caused millions to flow into accounts controlled by the Defendants.

During the pendency of these proceedings, both in open court and in conversations between government and various defense counsel, there have been repeated statements that the Defendants will collectively assert some form of an advice of counsel defense. For example, at a status conference on June 6, 2019, one attorney stated "[y]our honor, I think there is no question on the advice of counsel Defense at least on behalf of the MHQ Defendants." *See* June 6, 2019 Hr'g Tr. at 26-27. At other status conferences, various members of the defense team have telegraphed their intention to rely on an advice of counsel defense through mention of the applicability of one or more "safe harbors" to the Federal Anti-Kickback Statute in connection with putting on a lengthy defense case. Various members of the defense team have also stated their intent to rely on advice of counsel in discussions with the government.

Despite repeated requests by the Government both in and out of court, the Defendants have been unwilling to provide the waivers necessary to allow us access to the files of one identifiable attorney who purportedly rendered advice and who is now deceased.[2] Nor have counsel for the Defendants cooperated with other requests for discovery as to their anticipated defense. In fact, in a recent teleconference between counsel for the government and members of the defense team, one defense lawyer insisted that the government might expect to receive information (or discovery) relating to any would-be advice of counsel defense only by way of the Defendants' witness and

---

[2] The government is aware that legal files belonging to deceased attorney Craig Cuden, Esq. are located in a storage unit in the Southern District of Florida. The government plans to subpoena these records once all of the defendants waive attorney-client privilege, as they must, in connection with asserting the advice-of-counsel defense.

exhibit lists and not before.  Defendants' position is all the more unfounded because to date not a single one has produced any reciprocal discovery on any topic as required by Fed. R. Crim. P. 16.

To be clear, the evidence suggests that, from the outset of the charged schemes the Defendants were keenly aware of the illegality of their conduct.  Documents obtained in response to subpoenas demonstrate that as early as February 2015, one or more of the defendants sought legal advice from an attorney named Peter Bean practicing in Austin, Texas related to a marketing agreement.  Mr. Bean advised that that "these arrangements make me very nervous, to the point where I can't give you an assurance that you're fully protected."  Mr. Bean also stated "[m]y concern is that when these types of arrangements go bad, it's the companies in the Subagent position that often take the fall when the Department of Justice comes poking around."  Bean also stated "[t]he million dollar question is who a court or DOJ would characterize as responsible."  Additional documents produced by Med Health Quest Ventures, LLC. in response to subpoenas demonstrate that the MHQ Defendants explicitly understood and acknowledged that ongoing violations of the Anti-Kickback Statute were occurring in connection with marketing arrangements they had with compounding pharmacies and one or more of the co-defendants in this case.[3]  After receiving warnings from attorney Bean, the MHQ Defendants sought the opinion of attorney Cuden who purportedly rendered the contrary advice that they seek to rely upon to vitiate their criminal intent in this case.  Other documents produced in response to subpoenas show that the Defendants participated in routine teleconferences with an attorney where so-called compliance issues were discussed.  Yet there is a remarkable absence of notes and/or minutes of these "compliance calls" to shed light on what was discussed.  Other documents, including marked up versions of one or more proposed contractual agreements, contain comments made by one or more of the defendants

---

[3] Med Health Quest Ventures, LLC. is owned and controlled by Defendants Thomas Sahs, Anthony Mauzy and Rajesh Mahbubani (the "MHQ Defendants").

regarding inserting language to structuring compensation to look good on paper.

It is also clear from documents produced in response to government subpoenas that the Defendants sought the imprimatur of legitimacy to their business operations and in so doing they sought involvement of one or more attorneys. For example, one or more defendants will likely attempt to adduce at trial evidence of their compliance with the law by proving that their conduct was covered by one or more "safe harbors" to the Federal Anti-Kickback statute, such as being *bona fide* employees of the entity paying the kickbacks. The government will contend that the defendants' conduct is mere window dressing, however, in the absence of discovery into the facts communicated to counsel and any advice rendered as a result, it is impossible to ascertain the legitimacy of any good faith or advice of counsel defense. To allow a mere impression of consultation with counsel, without more, is improper. This advice provided cover.

### III. LEGAL STANDARD

"[T]he attorney-client privilege was intended as a shield, not a sword." *Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir. 1994) (internal citations and quotations omitted). A defendant who asserts an advice of counsel defense waives the attorney-client privilege as to the subject matter of that advice. *See, e.g.*, *United States v. Jensen*, 573 F. App'x 863, 870 (11th Cir. 2014) ("By claiming that [he] lacked intent to defraud because attorneys told him that [the disputed] transactions were legal, [defendant] waived the attorney-client privilege with respect to communications with counsel concerning [their] legality."); *see also Inmuno Vital v. Telemundo*, 203 F.R.D. 561, 564 (S.D. Fla. 2001) ("It is well established that when a party asserts a defense, such as the advice of counsel defense . . . that party waives the attorney-client privilege."); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). A criminal defendant's "testimony that he thought his actions were legal . . .

6

put[s] his knowledge of the law and the basis for his understanding of what the law required in issue." *Id*. "[A]ffirmatively to assert good faith [] inject[s] the issue of [] knowledge of the law into the case and thereby waive[s] the attorney-client privilege." *Cox*, 17 F.3d at 1419.

A party raising an advice of counsel defense, moreover, "must permit discovery of any and all legal advice rendered on the disputed issue." *Inmuno Vital*, 203 F.R.D. at 564. Citing concerns over fairness, "courts have been careful not to allow parties to introduce evidence of attorney-client communications favorable to the advice of counsel defense, while asserting the privilege with respect to communications that may be unfavorable to the defense." *Id.* "The advice of counsel defense cannot be limited to the counsel and advice of the defendants' choosing. Rather, when the advice of counsel defense is raised, the party raising the defense must permit discovery of any and all legal advice rendered on the disputed issue." Furthermore, "a party must produce not only communications and opinions of the same attorney, but also privileged information from *other* counsel involving the same subject." *Id.* Failure to allow such discovery requires the "exclusion of any evidence" of said defense. *Id.*; *see also Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891, 894 (S.D.N.Y. 1990) ("A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice of counsel defense.").

In addition, "[i]n order to qualify for an instruction on good faith reliance on the advice of counsel, a defendant must show that (1) he fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on advice given by his attorney." *United States v. Hill*, 643 F.3d 807, 851 (11th Cir. 2011) (*citing United States v. Miles*, 290 F.3d 1341, 1354 (11th Cir. 2002)). A court may properly decline to give such an instruction "if it lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998); *accord United States v. Romero*, 542 F. App'x 879, 882 (11th Cir. 2013) (unpublished); *see also United States v. Scully*, 877 F.3d 464,

476 (2d Cir. 2017) (holding that an advice-of-counsel instruction is only warranted "if there are sufficient facts in the record to support the defense"; "[t]here must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'"); *cf. United States v. Kottwitz*, 627 F.3d 1383, 1384 (11th Cir. 2010) (any foundation in the evidence suffices as a basis to provide defense instruction).  The defendant bears the burden of proof because good faith reliance on counsel is an affirmative defense.  *See United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013).

Although an advice-of-counsel defense is not an explicitly enumerated affirmative defense as contained in the Federal Rules of Criminal Procedure, this Court has broad discretion to order early disclosure and notice requirements in furtherance of, among other things, avoiding unnecessary delay and/or expense.  Indeed, as noted above, this Court recently adopted the sound reasoning contained in *United States v. Crowder,* 325 F. Supp. 3d 131 (D.D.C. 2018), in granting pre-trial motions seeking notice and disclosure of defendant's advice-of-counsel defense.  *See United States v. Robert Shapiro,* Case No. 19-20178-CR-Altonaga, [D.E. 108] at p. 2 (S.D. Fla. July 8, 2019); *see also United States v. Pisoni,* Case No. 15-20399-CR-DPG [D.E. 126] (S.D. Fla. Dec. 10, 2015) (requiring defendants notice and disclosure to government of all documents in support of advice of counsel defense).

In *Crowder,* the court held that defendants were required to give pretrial notice and disclosure of reliance of an advice-of-counsel defense on the basis that failure to do so may "impact the scope of discovery otherwise permitted or ordered, and thus risks unnecessary interruption and delay if asserted at trial." *Crowder,* 325 F. Supp. 3d at 138.  The court also recognized the complexity of an advice-of-counsel defense and the inherent risks with not requiring pretrial disclosure, including the possibility of requiring extensive pretrial briefing. *Id.*  Citing *Crowder*, this

Court in *Shapiro* explained that: "[a]lthough the Federal Rules of Criminal Procedure do not specifically require defendants to provide pretrial notice of an advice-of-counsel defense, courts have broad discretion to impose disclosure and notice requirements outside the [R]ules" (alterations added; citations omitted)). *Shapiro,* Case. No. 16-20178-Altonaga [D.E. 108 at p. 3] (S.D. Fla. June 8, 2019).

## IV. ARGUMENT

The government expects, based in part on representations made by counsel for some of the Defendants, that the Defendants intend to rely, at least in part, on a good faith reliance on advice-of-counsel defense. This defense can be irrelevant, highly confusing, and prejudicial in the absence of a proper predicate. *See United States v. Petrie*, 302 F.3d 1280, 1287 (11th Cir. 2002) (finding no abuse of discretion in trial court's decision to preclude good faith reliance on advice of counsel defense in case where proposed testimony was at best marginally relevant, and any probative value would have been outweighed by risk of confusion). At trial, the Court should preclude any argument or statement to the jury until or unless the Defendants satisfy the requisite evidentiary predicates, recognizing that the scope of disclosure to counsel must be established in the record in order to receive an instruction or allow argument as to such a defense.

Waiting until trial, however, is not sufficient and does not promote fairness or efficiency. In advance of trial, the Court should require the Defendants to provide notice of specific disclosures to specific counsel, so that generalized references to the involvement of or consultation with attorneys cannot be sprung on the Court or the Government. This would confuse the jury or advance a backdoor advice of counsel defense without the requisite showing.

This is entirely proper. *Hill*, for example, involved a bank fraud case in which the defendant supposedly received advice during a course of conduct that constituted the charged fraud. The defendant argued that an instruction was warranted because attorneys were involved generally with

9

obtaining bank loans and lines of credit involving various investors. 643 F.3d at 851. The Eleventh Circuit disagreed, affirming the district court's refusal to provide such an instruction, observing as follows:

> Although the burden on a defendant to put forth sufficient evidence to support a proposed jury instruction is low, *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995), Hill failed to meet it because there was no evidence to support the instruction. Hill points out that attorneys were used by many of his "investors" as well as by the lenders, and he was personally represented by at least five different attorneys over the course of the events. At no point, however, *did any of the attorneys advise Hill that the overall scheme or all of its essential components were legal*.
>
> Hill argues that he relied on the advice of attorneys Dewrell and Sacks with respect to Counts 1–14, which charged him with the line of credit fraud on Charter Bank. Both of those attorneys testified, but they did not say that they had represented Hill in his dealings with Charter, or that they had reviewed and advised Hill about the false statements on the credit applications, the false statements on Hill's and Graham's financial statements, or the false statements that Hill made to Hungerford, a vice president of Charter Bank who had requested assurances that Hill's lines of credit were sufficiently secured.

*Hill*, 643 F.3d at 851 (emphasis added). Post *Hill*, it follows that a defendant seeking to use such a defense in a complex fraud scheme must establish that he obtained legal advice regarding the overall scheme, and that the advice indicated that all of its essential components were legal. *See also United States v. Johnson*, 139 F.3d 1359, 1366 (11th Cir. 1998) (approving jury instruction that "good faith reliance upon the advice of counsel requires not only full and complete disclosure of the facts then known but also of material facts or information later acquired").

Pretrial disclosure also narrows the issues for the parties, because depending on the timing of the purported advice of counsel, if it did not predate the fraudulent conduct, it could not form a proper basis of a good faith reliance on advice of counsel defense. *See Elso v. United States*, 2012 WL 1890715, at *13 (S.D. Fla. May 24, 2012) ("The clear meaning of a good faith reliance defense on the advice of counsel is that *prior* to committing the offense, the defendant sought the advice of an attorney and, after disclosure of all the relevant facts, counsel advised that the proposed course

of action would not violate the law.") (emphasis in original).  On all of these fronts, disclosure and a proffer are warranted in advance of trial so that the Court can rule as to the proper boundaries of any good faith reliance on advice of counsel defense, and whether it is appropriate for opening statements and presentation to the jury.

Pretrial discovery about this defense also has practical benefits for the Court, and is essential in order to avoid delay, prevent "trial by ambush," and ensure that the jury's time is not wasted.  To the extent that the Defendants intend to rely on advice from *any* attorneys, we are entitled to discovery in that regard, and at minimum, prompt identification of the names of the alleged counsel. We are also entitled to seek discovery as to any of the involved attorneys and their communications with the Defendants, and as to any other individuals affiliated with the Defendants' companies alleged in the second superseding indictment.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court enter the attached proposed order (Ex. 1 hereto).  The government further requests that the Court provide a pretrial ruling setting forth the proper scope of an advice of counsel defense in this case, if any, and the showing that will be required before statements or argument to the jury will be allowed.  The requested relief will ensure the efficient use of this Court's resources and avoid unnecessary delays.

**CERTIFICATE PURSUANT TO LOCAL RULE 88.9**

Pursuant to Local Rule 88.9, the government contacted defense counsel by email on October 22, 2019 regarding the filing of the instant motion. With the exception of Ryan Stumphauzer, Esq., and David Oskar Marcus, Esq., counsel for Defendants Anthony Mauzy and Mangala Ramamurthy, respectively, the Government has been unable to obtain the position of remaining defense counsel. However, the Government previously conferred with all Defendants' counsel by telephone on September 4, 2019, who all then indicated that they oppose the requests contained in the instant motion.

                    Respectfully submitted,

                    ARIANA FAJARDO ORSHAN
                    UNITED STATES ATTORNEY

By:   /s/ *Kevin J. Larsen*
       KEVIN J. LARSEN
       Court ID No. A5501050
       ANA MARIA MARTINEZ
       Florida Bar. No. 0735167
       Assistant United States Attorneys
       99 NE 4th Street
       Miami, FL 33126
       Tel: (305) 961-9356
       Email: kevin.larsen@usdoj.gov