UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20710-CR-ALTONAGA

UNITED STATES OF AMERICA,

vs.

ANTHONY MAUZY,
THOMAS SAHS,
RAJESH MAHBUBANI, and
JOHN SCHOLTES,

    *Defendants.*

                            /

## DEFENDANTS' OMNIBUS MOTION IN LIMINE

Defendants Anthony Mauzy, Thomas Sahs, Rajesh Mahbubani, and John Scholtes ("Defendants") respectfully move *in limine* regarding the following topics:

    I.       Exclude patient testimony;

    II.      Preclude the government from eliciting reference to the terms "kickback" or "fraud;"

    III.     Preclude the government from mischaracterizing permissible marketing practices as criminal conduct;

    IV.     Exclude improper opinions regarding illegality of witnesses' and defendants' conduct; and

    V.      Exclude the subsequent bad act evidence set forth in the Government's Notice [ECF No. 197].

For the reasons stated below, the Court should grant the relief requested.

**I.    MOTION IN LIMINE TO EXCLUDE PATIENT TESTIMONY**

Defendants Anthony Mauzy, Thomas Sahs, Rajesh Mahbubani, and John Scholtes ("Defendants") respectfully move the Court to exclude the proposed testimony of 13 patient

beneficiary witnesses. *See* ECF No. 194, Ex. A. This testimony, which focuses on a small, cherry-picked group of beneficiaries (out of thousands of actual patient medical consultations and prescriptions conducted by independent telehealth networks) and whether these beneficiaries had appropriate telemedicine consultations with licensed medical practitioners who are not on trial and have not been charged with wrongdoing, is irrelevant to the government's charged case against the Defendants. Even if this testimony had some marginal probative value, the Court should exclude it under FRE 403 because it will confuse the jury and unfairly prejudice Defendants.

## BACKGROUND

The defendants on trial are not medical providers and did not submit a single claim to Tricare, Medicare or any other health insurance program. John Scholtes worked for more than two decades in finance before starting a healthcare advisory company, EMET Advisors, that provided corporate and financial support services to private healthcare firms. In 2015, Mr. Scholtes was hired as a consultant to assist Senthil Ramamurthy and his marketing company SKR in implementing written policies and procedures, including a compliance plan, and hiring a compliance officer. Along with Mr. Ramamurthy, Anthony Mauzy, Thomas Sahs, and Rajesh Mahbubani are the principals of MHQ, a marketing firm that worked with SKR in marketing compounding medications on behalf of specialty pharmacies.

The government has charged Defendants with conspiracy to commit health care fraud and wire fraud (Count 1); substantive health care fraud (Counts 5-9); conspiracy to defraud the United States by paying and receiving kickbacks (Count 10); and receiving kickbacks in connection with a federal health program (various counts). Mr. Scholtes also is charged in a separate conspiracy to defraud the United States by soliciting and receiving kickbacks from a national laboratory that conducted CGx genetic cancer screening (Count 39).

The Defendants never met or spoke with any of the patient beneficiaries the government intends to call as witnesses. There also are no allegations that the Defendants offered or paid any thing of value or kickback to any of the patients. Rather, the government proposes to elicit patient testimony as evidence that the medical prescriptions written by licensed medical professionals were improper. There are not even allegations that the Defendants had any conversations with any of the relevant medical professionals about a single medical prescription. In short, the government has zero evidence that the Defendants had knowledge that any of the thousands of medical prescriptions at issue, which were found to be reasonable and medically necessary by the Tricare and Medicare programs, were in fact improperly prescribed by a licensed medical professional.

Moreover, the government has not provided Defendants with the HIPAA-protected medical histories and patient files of these proposed patient beneficiary witnesses.[1] Accordingly, Defendants lack the ability to independently investigate the medical conditions of the patients and effectively cross-examine them on the substance of their medical needs or their interactions with the medical professionals at issue. The government also does not plan to call any of the medical professionals who issued the prescriptions as part of a telehealth patient consultation.

The proposed patient testimony has no bearing on the government's kickback theories which concern the contractual compensation arrangements between the marketing firms and two

---

[1] The produced government discovery as to these beneficiaries has been barebones and inadequate. There are **no** produced medical records for the numerous patients who received medical prescriptions after telehealth consultations with licensed physicians employed by independent telehealth companies such as MyOnCallDoc and Complete Healthcare Concierge. The two specialty pharmacies at issue filled more than 2600 prescriptions for more than 750 patients. All the government has produced is the written prescriptions filled by the pharmacy along with the pharmacy prescription log. The government did produce some medical records related to Dr. Mangala Ramamurthy, who will not be at trial. To date, there has been no disclosure or discovery connecting the trial Defendants to any material knowledge of Dr. Ramamurthy's treatment decisions regarding her own patients or her own medical practices.

specialty pharmacies and one genetic testing laboratory. The only possible relevance of such testimony would be as to the health care fraud charges in which the government alleges that "kickbacks"[2] were received by the marketing firms in the form of sales commissions "without regard to any medical necessity for the prescribed compounded medications." ECF No. 117 at 8. Patient testimony, unconnected to the Defendants' actual knowledge or conduct, is not appropriate evidence of whether the Defendants made an agreement to submit medically unnecessary insurance claims for reimbursement.

## DISCUSSION

The government's "without regard to medical necessity" theory of prosecution is a misstatement of the *mens rea* element required to prove a federal health care fraud scheme. In *United States v. Medina,* 485 F.3d 1291 (11th Cir. 2007), the Court of Appeals clearly held that, "in a health care fraud case, the defendant must be shown to have known that the [reimbursement] claims submitted were, in fact, false" at the time the claims were submitted. 485 F.3d at 1297-98 (adopting Tenth Circuit's "knowledge of falsity" requirement as set forth in *United States v. Laughlin,* 26 F.3d 1523, 1525-26 (10th Cir. 1994)); *see also United States v. Jackson*, 220 F. App'x 317, 323-24 (5th Cir. 2007) (reversing health care fraud conviction based on insufficient evidence that the defendant knew the Medicare claims were inaccurate). The Court of Appeals also explicitly found that the payment or receipt of kickbacks is not sufficient "to establish health care fraud without someone making a knowing false or fraudulent representation to Medicare." *Id.* at 1298; *see also United States v. Larm,* 824 F.2d 780 (9th Cir. 1987) (noting that "knowledge of falsity" is an essential element of Medicaid fraud pursuant to 42 U.S.C. § 1320a–

---

[2] The government's repeated efforts to inject a legal term of art, "kickback," into the trial at every opportunity, including by having government witnesses refer to compensation paid according to arms-length, negotiated contracts and agreements as "kickbacks" is the basis of a separate motion *in limine*.

7b(a)). Therefore, the government will have to prove that, prior to the reimbursement submissions, the Defendants intended for and knew that medical practitioners were ordering prescriptions that were not "medically necessary" or were not going to be dispensed by the pharmacies to the patients. *United States v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016) (citing *Medina*, 485 F.3d at 1304)).

Absent a direct connection to the Defendants, the proposed patient testimony about their own experiences with telehealth practitioners not on trial does not meaningfully assist the government's burden to prove intent and knowledge of falsity. It is undisputed that the Defendants were not directly involved in either the pharmacy claims submission process or the telemedicine consultation process. For example, there is no anticipated witness testimony that the Defendants persuaded any physician to prescribe a medically unnecessary prescription or refill.

Under these circumstances, patient testimony only serves to distract the jury from the real issue of whether the Defendants intentionally participated in a plan to have medical professionals order invalid prescriptions. *See United States v. DeCologero*, 530 F.3d 36, 60 (1st Cir. 2008) (explaining that trial courts may preclude testimony under FRE 403 if it would "distract from the main issues of the case"). Further, allowing patients to testify about their supposed medical "needs" amounts to improper lay medical opinion. And because the government has not obtained the patients' underlying medical records, there is no independent corroboration for the patients' self-assessments of their medical conditions or their telehealth consultations with physicians. *Compare United States v. W.R. Grace*, 401 F.Supp.2d 1093, 1101 (D. Mont. 2005) ("due process requires that defendants confronted by victim witnesses have an opportunity to inspect the medical records upon which the witnesses base their claims"). No such records were produced by the

5

government pursuant to FRCP 16(a)(1)(E). It also would be "unreasonable" to allow the government to provide the medical records this close to trial. *See id.* at 1100, n.3.

The Court should exercise its discretion and prevent the government from turning this into a trial-by-proxy of the conduct of people not on trial. Nor should the government be allowed to appeal to juror prejudice or passion by injecting evidence of patients' experiences not directly tied to the Defendants' knowledge. *See generally United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009); *see also* Standard 3-5.8(c) & (d) of the ABA standards governing jury argument (instructing that prosecutors should not rely on arguments or evidence "calculated to appeal to the prejudices of the jury") (*relied on by United States v. Corona*, 551 F.2d 1386, 1390-91 (5th Cir. 1977)); *see also United States v. Robinson*, 258 F. Supp. 3d 87, 90 (D.D.C. 2017) (excluding patient testimony suggesting that a physician-defendant was operating a "pill mill"); *United States v. Varoudakis*, 223 F.3d 113, 122 (1st Cir. 2000) (excluding evidence calculated to have a jury "render a verdict on an improper emotional basis").

For these reasons, Defendants respectfully request that the Court exclude patient beneficiary testimony from the trial.

## II.  MOTION IN LIMINE TO PRECLUDE GOVERNMENT FROM ELICITING REFERENCE TO THE TERMS "KICKBACK" OR "FRAUD"

The Second Superseding Indictment makes allegations that the Defendants intended to defraud federal health insurance programs and to pay and receive kickbacks as defined by specific federal statutes, including 42 U.S.C. § 1320a-7b. The meaning of "fraud" and "kickback" in this context are specialized, legal terms of art which will require this Court to instruct the jury on their legal definition at the conclusion of the trial. The government's pretrial remarks and disclosures make clear its intention to pepper fact and expert witness testimony and questioning with these legal terms as often as possible – as if labeling consultancy compensation or a marketing

6

commission as a "kickback" automatically makes it so. For example, in their expert disclosures, proposed government non-legal experts Gerrard and Wunderlin make repeated reference to the terms "fraud" and "kickback." *See* ECF No. 228 at 3, 8, 17 and 21. This type of testimony and language should be precluded from trial and reserved for the government's closing argument. It is improper legal opinion masquerading as fact and only will serve to confuse and mislead the jury as to the actual legal elements the government is required to prove beyond a reasonable doubt.

The federal Anti-Kickback Statute ("AKS") does not prohibit all remuneration, but only "illegal" remuneration as defined by law. *See, e.g.*, *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 26 (1st Cir. 1989) (noting that the threshold element of any kickback-based liability is that some "illegal remuneration" be offered or received to induce a purchase) (citing to 42 U.S.C. § 1320(a)97b(b)). The AKS also includes statutory and regulatory safe harbors that explicitly permit certain payment arrangements such as incentive-based compensation to employees or fair market value transactions with third parties. *See United States v. Shaw*, 106 F. Supp. 2d 103, 107-11 (D. Mass. 2000) (outlining that "[t]he anti-kickback statute ... establishes an intent-based criminal prohibition with optional statutory and regulatory 'safe harbors' that do not purport to define the full range of lawful activity. Rather, the safe harbors provide a means of assuring that payment practices are not illegal."). In this case, the government will attempt to prove that written marketing agreements, which compensated marketing companies with percentages of revenue, meet the legal definitions of an illegal kickback arrangement under the AKS. The government also will try to prove that the consulting fees earned by Mr. Scholtes (and that were not revenue-based) also constitute illegal remuneration as defined by the AKS.

Whether these forms of compensation amount to an illegal "kickback" under the AKS carries a distinct legal meaning, separate and apart from what the colloquial meaning of the term

is. It is precisely in these circumstances that courts exclude reference to such terms by fact and expert witnesses. *See, e.g.*, *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150-51 (6th Cir. 1985) ("The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate."). For example, courts have held as inadmissible testimony that a defendant's actions constituted "extortion," *DiBella v. Hopkins,* 403 F.3d 102, 121 (2d Cir. 2005); that a dog bite constituted "deadly force," *Miller v. Clark Cnty.,* 340 F.3d 959, 963 n.7 (9th Cir.2003); that defendants held a "fiduciary" relationship to plaintiffs, *Christiansen v. Nat'l Sav. & Trust Co.,* 683 F.2d 520, 529 (D.C.Cir.1982); and that a product was "unreasonably dangerous," *Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 685–86 (8th Cir. 1981).

Similarly, in *United States v. Cooper*, the trial court precluded the government's expert witnesses in a healthcare fraud case from using the term "fraud" to describe defendants' conduct. Several government experts had intended to offer testimony such as "billing separately for a battery charger is fraud;" and "billing Medicare prior to delivery is fraud." *Cooper*, 266 F. Supp. 2d 1283, 1295 (D. Kan. 2003). The trial court excluded this testimony and use of the term "fraud" because "[t]he term, 'fraud,' is a legally specialized term which tracks the statutory and common-law language of the intent elements of the offenses with which the defendants are charged. When an expert witness opines that a defendant's activity is fraudulent, the witness expressly draws the conclusion or inference that the defendant acted with the intent to defraud." *Id.* Further, this type of testimony "if believed, [] would necessarily dictate the conclusion that the defendant acted with the intent to defraud." *Id.* This "intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent." *Id.* (citing *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000)).

For these reasons, Defendants respectfully request that the Court bar the government from making reference to in its questioning or eliciting witness testimony as to specialized legal terms like "fraud" and "kickback."

### III. MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM MISCHARACTERIZING PERMISSIBLE MARKETING PRACTICES AS CRIMINAL CONDUCT

The government should not be permitted to argue or imply that lawful practices are evidence of criminal conduct. Defendants undertook many legal activities to innovatively market and sell the compounding medications at issue here. The government has sought to characterize many of these perfectly legal marketing activities as sinister or unlawful in nature. Particularly, the government has framed visits to military bases, the use of models to market, and removal from a designated area for soliciting as illegal. These acts are wholly proper. There is nothing illegal about marketing. It is a common occurrence for solicitors to be removed from premises, but removal doesn't make the conduct illegal. The government should be prevented from making any such argument or insinuation at trial. This type of testimony would only serve to mislead and confuse the jury and irreparably prejudice Defendants by casting lawful conduct as criminal. *See* Fed. R. Evid. 403. The Court can exercise its discretion to manage opening arguments and to limit those arguments as appropriate. *See, e.g., United States v. Dominguez*, 735 F. App'x 591, 596 (11th Cir. 1994) (district court did not abuse discretion in directing counsel from airing irrelevant facts during opening statement); *Schwartz v. Sys Software Assocs., Inc.*, 32 F.3d 284, 288 (7th Cir. 1994) (district court did not abuse discretion in directing counsel to "refrain from legal argument in his opening statement"); *Onujiogu v. United States*, 817 F.2d 3,6 (1st Cir. 1987) (the "district court has wide discretion in steadying the Rule 403 seesaw"); Fed. R. Evid. 403.

9

The Court should also bar the government and its witnesses, throughout trial, from characterizing evidence about legal and beneficial practices that are common and accepted in the health care industry as evidence of crimes or criminal intent. Such characterizations are wrong as a matter of law, not relevant to the case, and unduly prejudicial to the Defendants. Fed. R. Evid. 401, 403.

### IV. MOTION IN LIMINE TO EXCLUDE IMPROPER OPINIONS REGARDING THE ILLEGALITY OF WITNESSES' AND DEFENDANTS' CONDUCT

The government should be precluded from introducing evidence at trial of witnesses' (1) opinions that their own conduct was, in hindsight, illegal and (2) opinions that Defendants' conduct was illegal. Particularly, the interview reports and recordings produced in this case, include statements from agents telling witnesses that certain conduct is illegal, agents telling witnesses that Defendants' conduct was illegal, witnesses stating it is not, but later after continued prodding, stating that in hindsight the conduct was illegal. For instance, Agent King tells David Bryant that kickbacks were paid, and health care fraud was committed by Bryant and the rest of the Defendants during his recorded interview. Bryant states that he believed everything was "compliant" and that Mr. Mahbubani was "big on compliance" and trying to do everything right. After continued insistence from Agent King, Bryant states that he guesses in hindsight he accepted kickbacks. This is not the only instance of such testimony.

First, a witness's opinions (whether in hindsight or not) regarding the illegality of the Defendants' actions are inadmissible and inappropriate law opinions under Federal Rule of Evidence 701. *See, e.g. United States v. Kapoor, et al.*, 16-cr-103430ADM (D. Mass. January 15, 2019) (D.E. at 5) ("The Government may present evidence of a witness' contemporaneous understanding of the propriety of his or her conduct as relevant to that witness' state of mind. A witness may not express his or her opinion as to the legality of the conduct of others or explain

10

how he or she now views historical behavior."); *United States v. Van Eyl*, 468 F. 3d 428, 437 (7th Cir. 2006) (affirming order of new trial where "the [district] court feared the jury would conclude that if others thought the conduct was wrong, then [the defendant] must have possessed the intent to defraud."); *United States v. Henke*, 222 F.3d 633, 639-40 (9th Cir. 2000) (holding that the district court erred by admitting questioning "done in order to elicit [the witness's] conclusion that the defendants 'must have known' about the illegal conduct."); *United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996) (agreeing that testimony that defendant "must have known" improperly turned lay witness "into thirteenth juror.")  And to the extent that the witness's testimony is based on hindsight impressions or hunches about the purportedly illegal conduct, it is not based on "firsthand knowledge or observation" and thus not admissible.  *See* Fed. R. Evid. 701 Advisory Comm. Notes (describing "the familiar requirement of firsthand knowledge or observation*");  Walton v. Nalco Chemical Co.*, 272 F.3d 13, 25 (1st Cir. 2001) (excluding lay-opinion testimony that was not based on "personal knowledge [or] apposite data").

Second, a witness's hindsight opinions regarding the illegality of the witness's own actions (or one of the Defendant's) is irrelevant and unfairly prejudicial.  *See* Fed. R. Evid. 401, 403.  A witness's opinion that, in hindsight, the witness's past conduct was contrary to some unspecified law is irrelevant to whether Defendants had the requisite specific intent to agree to the particular violations of law alleged at the time the conduct took place. *See United States v. Herman*, 589 F.2d 1191, 1198 (3d Cir. 1978) (when balancing under Rule 403, a court should consider "the extent to which [the proposition that the evidence establishes is] directly at issue in the case"). Allowing such hindsight testimony would expose the trial to substantial legal issues that would be difficult, if not impossible to cure.

For these reasons, the Defendants respectfully requests that the Court bar the government from eliciting witness testimony about their hindsight impressions of the illegality of their own actions and their opinions of the illegality of the Defendants' actions, and to exclude any reference to such witness opinion or testimony from the government's opening statement.

**V.   MOTION IN LIMINE TO EXCLUDE THE SUBSEQUENT BAD ACT EVIDENCE SET FORTH IN THE GOVERNMENT'S NOTICE**

   A.   The Government has not properly noticed any 404(b) bad acts conduct after <u>repeated opportunities to do so for more than 90 days</u>.

The threadbare summary provided in the Government's Notice [ECF No. 197] fails to adequately advise the Trial Defendants of anything more than the marketing of "expensive compounded medications" in return for what the Government has concluded amount to "kickbacks." This time though the Government alleges that such conduct occurred in connection with a *different* group of beneficiaries, a private labor union known as the International Longshoremen and Warehouse Union (ILWU), with different pharmacies, a different health care plan (whichever private plan sponsored the ILWU), and that such conduct occurred *subsequent to* the charged conduct in the Second Superseding Indictment. The Government provides no other information about these supposed other bad acts – by whom they were committed, how, when, etc.

And, when repeatedly asked both via email from the undersigned counsel and/or during hearings before your Honor on September 6, 2019 and October 8, 2019, the Government has failed to articulate the legal basis for the supposed bad acts. By failing to make this threshold showing after having been provided the opportunity to do so for nearly 90 days, the Government is now likely to lengthen this trial by compelling the defense (mid-trial and/or after the expiration of important pre-trial deadlines) to identify and introduce additional rebuttal witnesses and testimony concerning the lawfulness of the supposed 404(b) bad act evidence. The Trial Defendants have a

right guaranteed by the Sixth Amendment of the U.S. Constitution to elicit such testimony undermining the prosecution's theory of the bad acts**.**

   B. <u>The alleged subsequent bad act evidence is prohibited propensity evidence</u>.

Beyond this, this Court should exclude any of the supposed other bad act evidence that the does not satisfy the baseline test set forth in Federal Rule of Evidence 404(b). *United States v. Stubbs,* 944 F.2d 828, 836 (11th Cir.1991)( the evidence must be relevant to an issue other than defendant's character; the probative value must not be substantially outweighed by its undue prejudice; and the government must offer sufficient proof so that the jury could find that defendant committed the act."); *see also United States v. Hogan,* 986 F.2d 1364. 1374 (11th Cir. 1993).

In the instant case, the proffered evidence falls far short of meeting this test. Instead, it is plain that such evidence is nothing more than improper propensity evidence masquerading as subsequent bad acts evidence. *See, United States v. Cortijo-Diaz,* 875 F.2d 13, 15 (1st Cir. 1989) ("[W]e cannot over-emphasize the central principle for which this rule stands ... evidence of other acts is *not admissible* to prove propensity ....") (emphasis in original)). In fact, the evidence is clearly offered for no other reason other than to infer that the Trial Defendants had the propensity to commit the charged offense. Propensity is, however, a prohibited reason for admitting Rule 404(b) evidence. *Cortijo-Diaz,* 875 F.2d at 15.

To avoid exclusion, the Government attempts to re-designate what amounts to obvious propensity evidence by including one conclusory statement at the end of the Notice, urging your Honor to treat the supposed bad acts evidence as evidence offered to prove intent, motive, knowledge, plan, preparation, identity, absence of mistake, and opportunity. ECF No. 197 at 4. Yet, Rule 404(b) states that prior acts *"may"* be admissible to prove intent or knowledge. It does not state that it *"is"* automatically admissible. As explained in the Advisory Committee Notes to

Rule 404(b), "[n]o mechanical solution is offered." In fact, the Advisory Committee rejected an automatic plug-in solution in favor of individualized determination by the trial judge. The Court must consider each 404(b) admissibility determination within the facts and circumstances of the case.

Here, such evidence is also temporally distinct from the charged conduct at the heart of the SSI -- that the Trial Defendants engaged in marketing efforts directed at Tricare beneficiaries in Florida and Texas -- which occurred prior to this alleged conduct and has no connection whatsoever to the core conduct alleged in the SSI. Indeed, by attempting to inject subsequent conduct (and essentially a new criminal charge which the Trial Defendants must be permitted to defend) the Government stretches the temporal limitations envisioned by 404(b) beyond their limit. By their plain terms, intent, motive, knowledge, preparation, plan, and opportunity all encompass evidence of *prior* conduct which makes it more probable than not that a defendant intended to, knew about, planned, prepared for, had the opportunity to commit, or was motivated to committed the charged conduct. Thus, evidence of *pre*-Tricare conduct might be sufficient to show intent, knowledge, motive, or absence of mistake, but after the fact conduct not tied in any way to any Tricare marketing activities has no bearing whatsoever on whether the Trial Defendants intended to, planned, had knowledge of, prepared for, or possessed the opportunity to commit the charged conduct as alleged in the SSI.

Moreover, using subsequent bad act evidence as evidence that is relevant to prove absence of mistake or identity is akin to asserting that because the Trial Defendants committed certain bad acts *later*, they must have been similarly disposed to commit those acts during the time of the charged conduct. This is another creative way of attempting to evade 404(b)'s prohibition against

propensity evidence because the argument boils down to: they engaged in the certain conduct *after the charged conduct*, so it cannot be a mistake that they engaged in the conduct alleged in the SSI.

        C.        Subsequent bad act evidence cannot be fairly characterized as a component of the <u>charged health care fraud scheme</u>.

At the last hearing, the Government advised the Court that the bad act evidence was necessary and relevant to demonstrate the overarching health care fraud scheme. *See* Transcript of October 8, 2019 Status Hearing, 24:9-12 ("it's also the Government's position that this is a continuation of inextricably intertwined evidence of violation of federal law as well, the healthcare fraud."); *Id*. at 24:22-24 ("I think this is all very much cleaned up by this is other evidence, and the federal healthcare fraud statute does apply.").

These statements and this approach are contrary to settled Eleventh Circuit case law in *United States v. Medina,* 485 F.3d 1291, 1297 (11th Cir. 2007) which holds unambiguously that the kickbacks, alone, cannot support health care fraud and therefore subsequent bad act evidence relating to supposed kickbacks has no bearing whatsoever on whether the Trial Defendants engaged in health care fraud as charged in the SSI. *Medina,* at 1297.

Furthermore, there is no common scheme, plan or design which threads the alleged Tricare marketing conduct set forth in the SSI between and amongst the Trial Defendants and the other co-defendants and the alleged subsequent bad acts. The subsequent bad acts and testimony sought to be introduced were allegedly committed at different times and under different circumstances. They relate to different beneficiaries, a different health care plan, different geography, and different persons. There is no evidence that the Tricare conduct which ended in May of 2015, is a continuation of, or is in any other way related to the subsequent bad acts. The only commonality is that the Trial Defendants were allegedly involved. Significantly, the MHQV Defendants severed their business relationship with Mr. Ramamurthy no later than February of 2016 by retaining a law

firm to draft a letter of termination. *See* ECF-194-1 at 43-44 (letter from MHQV to SKR and Senthil Ramamurthy).

Because the supposed common scheme or plan appears to be based on a misapplication of Eleventh Circuit case law and because there is no common scheme, plan, or preparation in this case, such evidence should be excluded at trial under the theories previously represented by the Government.

  D. <u>Subsequent bad acts evidence is misleading, confusing, and will needlessly waste this Court's time where, as here, two juries will already hear this case</u>.

This Honorable Court has already bifurcated this trial and two juries will hear the Government's case during the better part of two weeks, excluding breaks and foreseeable argument regarding, among other things, exhibits, witness testimony, and jury instructions.

As such, even if such subsequent bad acts evidence were to satisfy one of the permissible 404(b) categories, all of the same concerns raised in the MHQV Defendants' Motion to Dismiss for Misjoinder (ECF-188 at 7-8) are still applicable but with one additional, new, significant concern -- the impact of the Government's proposed mid-trial introduction of subsequent bad act evidence. Introduction of such evidence in the middle of trial poses a substantial likelihood of further complicating the trial, confusing the jurors. and needlessly wasting this Court's time. *See* Fed. R. Evid. 403. In addition, as the defense has previously underscored at hearings before your Honor, this potential mid-trial segue into subsequent act propensity evidence will require the defense to call rebuttal witnesses and possibly expert witnesses to the extent they are applicable. A rebuttal case would be absolutely critical to contest the allegations related to this uncharged, highly prejudicial subsequent acts evidence.

  E. <u>Fairness dictates that the Court exclude this evidence</u>.

Fairness dictates that this Court should exclude the subsequent bad acts evidence where, as

here, the government can do without it. *United States v. Jones,* 28 F.3d 1574 (11th Cir. 1994), *modified on other grounds,* 74 F.3d 275 (11th Cir. 1996); *United States v. Pollack,* 926 F2d 1044 (11th Cir. 1991; *United States v. Hernandez,* 896 F.2d 513 (11th Cir. 1990). Absent the subsequent bad acts evidence, the Government has compiled a 40-plus page SSI which includes what the Government presumably believes is a compelling case and therefore the prejudice to the defendant outweighs the marginal probative value, if any, of the subsequent bad acts evidence.

WHEREFORE, the Trial Defendants move this Court for an Order excluding any of the evidence set forth in the Government's Notice [ECF No. 197].

Respectfully submitted,

/s/ Jeffrey E. Marcus
Jeffrey E. Marcus
Fla Bar No. 310890
jmarcus@mnrlawfirm.com

/s/ Daniel L. Rashbaum
Daniel L. Rashbaum
Fla. Bar No. 75084
drashbaum@mnrlawfirm.com

/s/ Allison M. Green
Allison M. Green
Fla. Bar No. 111382
agreen@mnrlawfirm.com

**MARCUS NEIMAN & RASHBAUM LLP**
2 South Biscayne Boulevard, Suite 1750
Miami, Florida 33131
Telephone: (305) 400-4260

*Counsel for John Scholtes*

/s/ Andrew S. Feldman
Andrew S. Feldman
Fla. Bar No. 60325
afeldman@feldmanpllc.com

**Feldman Firm PLLC**

/s/ Erica Perdomo
Erica Perdomo
Fla. Bar No. 105466
eperdomo@sfslaw.com

/s/ Ryan K. Stumphauzer
Ryan K. Stumphauzer
Fla. Bar No. 12176
rstumphauzer@sfslaw.com

**Stumphauzer Foslid Sloman Ross & Kolaya, PLLC**
2 South Biscayne Boulevard, Suite 2550
Miami, Florida 33131
Telephone: (305) 371-9686

*Counsel for Anthony Mauzy*

/s/ Marissel Descalzo
Marissel Descalzo
Florida Bar No. 0669318
mdescalzo@tachebronis.com
service@tachebronis.com

17

| | |
|---|---|
| Miami Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 2790<br>Miami, Florida 33131<br>Telephone: (305) 714-9474<br><br>*Counsel for Thomas Sahs* | **Tache Bronis Christianson & Descalzo, P.A.**<br>150 S.E. 2nd Avenue, Suite 600<br>Miami, Florida 33131<br>Telephone: (305) 537-9565<br><br>*Counsel for Rajesh Mahbubani* |

### CERTIFICATE OF CONFERRAL PURSUANT TO S.D. FLA. L.R. 88.9(a)

I hereby certify that on November 15, 2019, undersigned counsel conferred with counsel for the government in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served electronically this 15th day of November, 2019 to:

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.