```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 18-cr-20710-CMA
 3

 4    UNITED STATES OF AMERICA,        Miami, Florida

 5              Plaintiff,             November 12, 2019

 6         vs.                         1:40 p.m. to 2:29 p.m.

 7    SENTHIL RAMAMURTHY, et al.,      Courtroom 12-2

 8              Defendants.            (Pages 1 to 34)

 9   ─────────────────────────────────────────────────────────

                           CHANGE OF PLEA
10           BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

     FOR THE GOVERNMENT:    KEVIN J. LARSEN, ESQ.
13                          JOHN C. SHIPLEY, JR., ESQ.
                            Assistant United States Attorney
14                          99 Northeast 4th Street
                            Miami, FL 33132
15                          (305) 961-9001
                            kevin.larsen@usdoj.gov
16                          john.shipley@usdoj.gov

17   FOR DEFENDANT          JACK EUGENE FERNANDEZ, JR., ESQ.
     SENTHIL RAMAMURTHY:    Zuckerman Spaeder LLP
18                          101 East Kennedy Boulevard, Suite 1200
                            Tampa, FL 33602-5838
19                          (813) 321-8225
                            (813) 321-8215
20                          jfernandez@zuckerman.com

21

     FOR DEFENDANT          DAVID O. MARKUS, ESQ.
22   MANGALA RAMAMURTHY:    ANITA M. MOSS, ESQ.
                            Markus/Moss PLLC
23                          40 Northwest 3rd Street, PH 1
                            Miami, FL 33128-1838
24                          (305) 379-6667
                            dmarkus@markuslaw.com
25                          mmoss@markuslaw.com
```

APPEARANCES CONTINUED:

REPORTED BY:          STEPHANIE A. McCARN, RPR
                      Official Court Reporter
                      400 North Miami Avenue
                      Twelfth Floor
                      Miami, Florida 33128
                      (305) 523-5518
                      Stephanie_McCarn@flsd.uscourts.gov

**I N D E X**

**WITNESSES**


**WITNESSES FOR THE GOVERNMENT:**                         **Page**
                                                           --




**WITNESSES FOR THE DEFENDANTS:**                         **Page**
                                                           --


**EXHIBITS MARKED & ADMITTED IN EVIDENCE**    **MARKED**    **ADMITTED**

**Government's Exhibit No.**                      --           --

**Defendants' Exhibit No.**                      --           --








**MISCELLANEOUS**

                                                          **Page**
Proceedings........................................    4
Court Reporter's Certificate.....................    34

```
 1        (The following proceedings were held at 1:40 p.m.)

 2             THE COURT:  United States and Senthil Ramamurthy and

 3   Mangala Ramamurthy.

 4             MR. FERNANDEZ:  Your Honor, Jack Fernandez for Senthil

 5   Ramamurthy.  May we have two or three minutes just to go over

 6   the updated factual proffer?

 7             THE COURT:  Yes.

 8        (Pause in proceedings.)

 9             MR. LARSEN:  Good afternoon, Your Honor.  Kevin Larsen

10   and Jonathan Shipley on behalf of the United States.

11             MR. SHIPLEY:  Good afternoon, Your Honor.

12             THE COURT:  Good afternoon.

13             MR. MARKUS:  Good afternoon, Your Honor.  David Markus

14   and Margot Moss for Mangala Ramamurthy.

15             MS. MOSS:  Good afternoon.

16             THE COURT:  Good afternoon.

17             MR. LARSEN:  Your Honor, I do have fully executed plea

18   agreements, originals, for Defendant Mangala Ramamurthy.  May I

19   approach?

20             THE COURT:  Yes, please.

21        (Pause in proceedings.)

22             MR. FERNANDEZ:  Thank you, Your Honor.  We're ready.

23             MR. LARSEN:  May I approach again, Your Honor?

24             THE COURT:  Yes, please.

25             Can I ask the Defendants to raise your right hands.
```

1    (The Defendants were sworn.)

2         THE COURT:  Mr. Ramamurthy?

3         DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

4         THE COURT:  Ms. Ramamurthy?

5         DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

6         THE COURT:  I will direct all of my questions in that

7    sequence without having to rename your names.

8         I am going to be asking you some questions this

9    afternoon in order to accept your change in plea from a plea of

10   not guilty to a plea of guilty.  If at any time you do not

11   understand any of my questions, please let know and I will try

12   to clarify the question for you.

13        Also if at any time you would like to speak with your

14   attorney and consult with him or her off the record, let me

15   know that and we will pause to give you an opportunity to do

16   so.

17        And last, please note that you are under oath.  All of

18   your answers to my questions must be truthful.  If they are

19   not, you may be subjected to charges of perjury.

20        And do you understand these instructions?

21        DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

22        DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

23        THE COURT:  Please state your full name.

24        DEFENDANT S. RAMAMURTHY:  Senthil Kumar Ramamurthy.

25        DEFENDANT M. RAMAMURTHY:  Mangala Mageswari Ramamurthy.

```
1              THE COURT:  How old are you?

2              DEFENDANT S. RAMAMURTHY:  37.

3              DEFENDANT M. RAMAMURTHY:  64.

4              THE COURT:  How far did you go in school?

5              DEFENDANT S. RAMAMURTHY:  Fourth year of medical

6    school.

7              DEFENDANT M. RAMAMURTHY:  Post graduate.

8              THE COURT:  And what country are you a citizen of?

9              DEFENDANT S. RAMAMURTHY:  United States.

10             DEFENDANT M. RAMAMURTHY:  United States.

11             THE COURT:  Have you ever been treated for a mental

12   illness or for an addiction to narcotic drugs?

13             DEFENDANT S. RAMAMURTHY:  No.

14             DEFENDANT M. RAMAMURTHY:  No, Your Honor.

15             THE COURT:  Have you taken any drugs or alcohol in the

16   last 48 hours?

17             DEFENDANT S. RAMAMURTHY:  No, Your Honor.

18             DEFENDANT M. RAMAMURTHY:  No, Your Honor.

19             THE COURT:  Do you believe that you have any mental or

20   physical condition or illness that prevents you from

21   understanding what's happening here in court this afternoon?

22             DEFENDANT S. RAMAMURTHY:  No, Your Honor.

23             DEFENDANT M. RAMAMURTHY:  No, Your Honor.

24             THE COURT:  And to Defense Counsel, in your opinion,

25   is your client competent to enter a guilty plea, Mr. Fernandez?
```

```
 1              MR. FERNANDEZ:  Yes, Your Honor.

 2              THE COURT:  Mr. Markus?

 3              MR. MARKUS:  Yes, Your Honor.

 4              THE COURT:  Prior to today, did you receive a copy of

 5    the superseding indictment containing the written charges

 6    against you?

 7              MR. FERNANDEZ:  That's directed to Mr. Ramamurthy,

 8    right?

 9              DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

10              DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

11              THE COURT:  Have you fully discussed that indictment

12    and your case, in general, with your attorneys?

13              DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

14              DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

15              THE COURT:  And are you fully satisfied with the

16    counsel, the representation and the advice that you have

17    received from your attorneys?

18              DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

19              DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

20              THE COURT:  So Mr. Ramamurthy, today you plead guilty

21    to a -- Count 1, which charges you with conspiracy to commit

22    healthcare fraud in violation of 18, U.S. Code, Section 1349.

23    And both Defendants plead guilty to Count 39, which charges

24    conspiracy to defraud the United States and to receive

25    healthcare kickbacks in violation of 18, U.S. Code,
```

```
 1    Section 371.
 2            Do you understand the charge or charges that you are
 3    pleading guilty to today?
 4            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.
 5            DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.
 6            THE COURT:  And I would ask the Government to please
 7    set forth the elements of these offenses.
 8            MR. LARSEN:  Thank you, Your Honor.  As it pertains to
 9    Defendant Mr. Senthil Ramamurthy, the charge of conspiracy to
10    commit healthcare fraud, the elements as part of -- as for the
11    conspiracy portion of the charge, the Government must prove
12    that the Defendant or two or more persons in some way or manner
13    agreed to try to accomplish a common and unlawful plan to
14    commit healthcare fraud as charged in the indictment and that
15    the Defendant knew the unlawful purpose of the plan and
16    willfully joined in it.
17            The underlying charge, healthcare fraud, requires the
18    Government to prove that the Defendant knowingly executed or
19    attempted to execute a scheme or artifice to defraud a
20    healthcare benefit program and then to -- or to obtain money or
21    property owned by or under the custody or control of a
22    healthcare benefit program, and in these cases it was TRICARE
23    and Medicare; that this team targeted those programs by means
24    of false or fraudulent pretenses, representations or promises;
25    that the healthcare benefit program affected interstate
```

1    commerce; that the false or fraudulent pretenses,

2    representations or promises related to a material fact; and

3    that the Defendant willfully and intended to defraud and that

4    the Defendant did, in fact, do so in connection with the

5    delivery of or payment for healthcare benefits, items or

6    services.

7            With respect to the -- Count 39, the Government must

8    prove the following elements:  That the Defendants and/or two

9    or more persons in some way agreed to try to accomplish a

10   shared and unlawful plan; that the Defendants knew the unlawful

11   purpose of the plan and willfully joined in it; and that during

12   the conspiracy one of the coconspirators, or the coconspirators

13   in this case, knowingly engaged in at least one overt act as

14   described in the indictment and that the overt act was

15   committed at or about the time alleged and with the purpose of

16   carrying out or accomplishing some object of the conspiracy.

17           THE COURT:  Thank you.

18           And to Defense Counsel, do you agree that's an

19   accurate statement of the elements?

20           MR. FERNANDEZ:  I do, Your Honor.

21           MR. MARKUS:  Yes, Your Honor.

22           THE COURT:  And would you please state the steps you

23   have taken to familiarize your client with the charge or

24   charges against him or her, the Government's evidence, his or

25   her defenses, the right to proceed to trial and the

```
 1   consequences of a guilty plea.
 2           MR. FERNANDEZ:  Your Honor, Jack Fernandez on behalf
 3   of Senthil Ramamurthy.
 4           We have reviewed all the Government's discovery and we
 5   have gone through the indictment and the superseding
 6   indictment.  Have spent a substantial amount of time with the
 7   client, along with Mr. Bernstein, and we are satisfied that
 8   he's aware of all the consequences of this.
 9           THE COURT:  Thank you.
10           MR. MARKUS:  Good afternoon, Your Honor.
11           THE COURT:  Good afternoon.
12           MR. MARKUS:  This has been a very difficult case for
13   Ms. Moss, Ms. Doyle and myself.  We have reviewed all the
14   discovery in the case with -- that the Government has provided
15   with Dr. Ramamurthy.  And, frankly, we thought it was a very
16   triable case, and so we had a very difficult decision.  We've
17   been going back and forth.  We've negotiated with the
18   Government and it was Dr. Ramamurthy who made this decision and
19   wants to go forward with the plea.  She wants to accept
20   responsibility after reviewing everything with us and reviewing
21   all the evidence, and that's what she would like to do and we
22   support that decision, Your Honor.
23           THE COURT:  Thank you.
24           And to the Defendants, do you agree with the summary
25   that your attorney has just provided me in response to my
```

1   question?

2          DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

3          DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

4          THE COURT:  Do you have in front of you a copy of your

5   written plea agreement?

6          DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

7          DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

8          THE COURT:  I have what appears to be the original.

9   It's showing your signature on the last page.  Did you have the

10  opportunity of reviewing this and discussing it fully with your

11  attorneys before you signed it?

12         DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

13         DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

14         THE COURT:  I will say, I have what appears to be

15  Mr. Ramamurthy's copy, not an original.

16         MR. LARSEN:  The plea agreement, Your Honor, or the

17  factual proffer?

18         THE COURT:  The plea agreement.

19      (Pause in proceedings.)

20         MR. LARSEN:  Your Honor, I think what happened in this

21  case is we signed on different -- in different locations.  I

22  can have Mr. Ramamurthy and I can re-execute an original.  I

23  have a fresh copy and bring -- provide it to the Court.

24         THE COURT:  Thank you.

25         MR. FERNANDEZ:  Your Honor, maybe we should proceed

1  with the one you have before you to make sure there is no

2  clerical error here and then we --

3       THE COURT:  Well, why don't I return this copy to you

4  and have Mr. Ramamurthy sign it?  How's that?

5    (Pause in proceedings.)

6       THE COURT:  What I am going to do at this time is I am

7  going to go over portions of the plea agreement with you

8  without reading the agreements in full to assure myself that

9  you understand it and that your plea is voluntary.  And I would

10 like to begin by addressing the subject of Paragraph 3, which

11 is sentencing, and describe to you now the sentencing process

12 in my own words.

13       When I accept your plea of guilty here this afternoon,

14 I am going to be asking the Court's probation office to prepare

15 what is known as a presentence investigation report.  A

16 probation officer will be assigned to investigate you and your

17 offense conduct.  That officer will gather information about

18 you, including by interviewing you personally in the presence

19 of your attorney, and will prepare a draft report that we will

20 all receive weeks before your sentencing hearing.

21       Included within the report will be a section that

22 addresses the federal sentencing guidelines.  You will see by

23 applying the guidelines to your offense conduct and based upon

24 your history, a range of sentencing is produced from a low to a

25 high end that the guidelines suggest as a reasonable sentence.

1          The attorneys have the ability to file written

2     objections to that draft report, including its guideline

3     calculation.  If any objections are filed, the probation

4     officer responds with a written addendum that, again, we

5     receive before your sentencing hearing.

6          At the sentencing hearing, the attorneys and I discuss

7     the advisory guidelines, and you will hear me orally announce

8     what I believe is your applicable advisory sentencing guideline

9     range.  And what I announce as your guideline range may be

10    different from what you see in the report.  It may also be

11    different from what you and your attorneys discuss as a likely

12    guideline range.

13         After I do that, I go on to consider and apply a

14    number of statutory factors before imposing sentence.  So at

15    the end of this process the sentence I impose may end up being

16    higher than or lower than your advisory guideline range.

17         I have the authority to sentence you up to the

18    statutory maximum for these offenses and you may not withdraw

19    your plea of guilty as a result of the sentence imposed.

20         Do you understand and agree?

21         DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

22         DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

23         THE COURT:  Now, Paragraph 4 informs that as to

24    Count 1, the maximum possible sentence is 10 years'

25    imprisonment followed by supervised release of up to three

1      years and a fine of up to $250,000.

2              And as to Count 39, I may impose a sentence of up to

3      five years' imprisonment followed by supervised release of up

4      to three years and a fine of up to $250,000 or twice the gross

5      gain or gross loss resulting from the offense, as well as

6      restitution.  And there is also restitution as to Count 1.

7              Do you understand what your maximum possible sentence

8      may be?

9              DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

10             MR. MARKUS:  Actually she is only pleading to Count

11     39, Your Honor.

12             THE COURT:  Correct.

13             MR. MARKUS:  Right.

14             DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

15             THE COURT:  In Paragraph 7, the Government will be

16     recommending at sentencing that I reduce by two levels the

17     sentencing guideline level applicable to your offense because

18     you have accepted personal responsibility.  If your offense

19     level should start at a 16 or higher, the Government will

20     request an additional one-level decrease.  And you see that

21     there are three conditions contained in Paragraph 7 that you

22     must satisfy in order for the Government to make these

23     recommendations.

24             Do you understand and agree?

25             DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

1          **DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.**

2          **THE COURT:  Mr. Ramamurthy, in your case, in**

3  **Paragraph 8, you and the Government agree that your base**

4  **offense level is a Level 6, that your conduct caused an actual**

5  **loss to TRICARE and Medicare in an amount greater than $9.5**

6  **million but less than $25 million, resulting in a 20-level**

7  **enhancement, and an additional 3-level enhancement applies**

8  **because the loss to TRICARE and Medicare exceeded $7 million.**

9          **Do you understand and agree?**

10          **DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.**

11          **THE COURT:  And Ms. Ramamurthy, in Paragraph 8, you**

12  **and the Government agree that your base offense level should be**

13  **a Level 6, that your conduct caused an actual or intended loss**

14  **to TRICARE and Medicare in an amount greater than $1.5 million**

15  **but less than $3.5 million, resulting in a 16-level enhancement**

16  **and a two -- an additional two-level enhancement applies to**

17  **your conduct because the loss to TRICARE and Medicare exceeded**

18  **$1 million.**

19          **Do you understand and agree?**

20          **DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.**

21          **THE COURT:  In Paragraph 10, you are agreeing to**

22  **provide cooperation to the U.S. Attorney's Office.  The U.S.**

23  **Attorney's Office reserves the right to evaluate that**

24  **cooperation and to file a motion before you are sentenced, at**

25  **the time of sentencing or after you have been sentenced**

```
 1    advising me of your cooperation and requesting a sentence

 2    reduction.  And I am under no obligation to grant such a

 3    motion, should it be filed.

 4            Do you understand and agree?

 5            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

 6            DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

 7            THE COURT:  In Paragraph 13, you are informed that you

 8    have the right to appeal your sentence, but in exchange for the

 9    agreement that you have negotiated with the Government, you are

10    giving up your right to appeal your sentence unless it exceeds

11    the statutory maximum or is the result of an upward departure

12    or variance from the guideline range I establish at sentencing.

13    Nothing in the agreement affects the Government's right to

14    appeal.  If the Government does file a notice of appeal, then

15    you are released from your waiver of appellate rights.  You

16    have discussed this appellate waiver provision with your

17    attorneys and you are waiving your right to appeal your

18    sentence knowingly and voluntarily.

19            Is all of this true and correct?

20            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

21            DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

22            THE COURT:  Mr. Ramamurthy, in Paragraph 15, you are

23    agreeing to the entry of a forfeiture money judgment against

24    you in the amount of $5,050,859.

25            Do you understand and agree?
```

1          DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

2          THE COURT:  And Ms. Ramamurthy, in Paragraph 14 of

3    your agreement, you are stipulating and agreeing that the

4    amount of restitution you will be paying the United States is

5    $1,502,433 jointly and severally with your codefendants.

6          Do you understand and agree?

7          DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

8          MR. MARKUS:  Your Honor, may I have just one second,

9    please?

10          THE COURT:  Yes.

11       (Pause in proceedings.)

12          MR. MARKUS:  Your Honor, I'm sorry.  The Government

13    and I agreed actually that that amount -- and we'll -- we'll

14    just file a supplement, if it's okay with the Court -- was 1.49

15    million and change.  We'll -- we'll file the exact amount with

16    the Court on the restitution amount, if that's okay with the

17    Court.

18          THE COURT:  Thank you.

19          And is that your understanding, Ms. Ramamurthy, as

20    well?

21          DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

22          THE COURT:  In Paragraph 16 of your agreement,

23    Ms. Ramamurthy, you are agreeing that within 30 days of

24    executing this plea agreement, you will resign your membership

25    in the Texas Medical Board and any other jurisdiction in which

```
 1    you are licensed to practice medicine.
 2             Do you understand and agree?
 3             DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.
 4             THE COURT:  Is anyone putting pressure upon you,
 5    forcing you or coercing you to plead guilty and agree to the
 6    terms in your plea agreement?
 7             DEFENDANT S. RAMAMURTHY:  No, Your Honor.
 8             DEFENDANT M. RAMAMURTHY:  No, Your Honor.
 9             THE COURT:  Has anyone made any promises or assurances
10    to you in exchange for your plea of guilty other than the
11    promises contained in the written plea agreement?
12             DEFENDANT S. RAMAMURTHY:  No, Your Honor.
13             DEFENDANT M. RAMAMURTHY:  No, Your Honor.
14             THE COURT:  Are you pleading guilty of your own free
15    will because, in fact, you are guilty as charged?
16             DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.
17             DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.
18             THE COURT:  You understand that the offense or
19    offenses to which you plead guilty are felony offenses.  When I
20    accept your plea of guilty, I will adjudicate you guilty and as
21    a result, you will suffer the loss of valuable civil liberties.
22    These include the right to vote, the right to hold office, the
23    right to serve on a jury, the right to possess firearms, and in
24    the event you are mistaken and not a citizen of the United
25    States, this may be used against you to deport you to your
```

1    native country.

2              DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

3              DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

4              THE COURT:  I am going to go over with you at this

5    time the Constitutional rights that you give up by pleading

6    guilty.  You understand that if this case had proceeded to a

7    trial, you would have had the right to be represented by an

8    attorney.  The Government would be required to bring witnesses

9    to court who would testify in your presence.  You would have

10   the right to confront those witnesses and have your attorney

11   cross-examine them.  You would have the right to bring

12   witnesses of your own to testify in your defense, and if those

13   witnesses did not wish to come to court, you could use the

14   Court's compulsory process to get them here.

15             You would have the right to testify and have your

16   testimony be considered like that of any other witness in the

17   case.  Or you could elect to remain silent, and if you did so,

18   that could not be used against you in any way.

19             You would be entitled to the presumption of innocence.

20   The Government would have to prove the charges against you

21   beyond and to the exclusion of every reasonable doubt, and that

22   is the highest burden of proof we have in your system of laws.

23             Your case would be tried to a jury consisting of 12

24   members whom you and the Government would selected.  And if you

25   lost at trial, you would have the right to take an appeal.

```
 1            Do you understand by pleading guilty you give up all
 2   of these rights we associate with trial as well as with appeal?
 3            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.
 4            DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.
 5            MR. LARSEN:  Your Honor, there was one provision -- I
 6   hate to interrupt -- of Paragraph 14 of Mr. Ramamurthy's.  I
 7   don't recall hearing the Court go over the restitution
 8   judgment.
 9            THE COURT:  I did not.
10            MR. LARSEN:  Okay.
11            THE COURT:  Mr. Ramamurthy, do you have in front of
12   you your factual proffer?
13            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.
14            THE COURT:  Did you have the opportunity of reviewing
15   this and discussing it fully with your attorney before you
16   signed it?
17            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.
18            THE COURT:  So you agree if this case had gone to
19   trial, the Government would be able to prove beyond a
20   reasonable doubt that beginning in September 2014 through July
21   2015, you conspired and agreed with John Scholtes, Anthony
22   Mauzy, Thomas Sahs, Rajesh Mahbubani, Mangala Ramamurthy, Asif
23   Uddin, Jennifer John Carbon and others to commit healthcare
24   fraud by submitting false and fraudulent claims to TRICARE.
25   TRICARE is a federal healthcare benefit program affecting
```

1    commerce.

2         DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

3         THE COURT:  Your scheme involved submitting false and

4    fraudulent claims and including those claims set forth in

5    Counts 2 to 9 to TRICARE for expensive and medically

6    unnecessary pain creams, scar creams and multivitamins that

7    were billed through Pharmacy 1, Pharmacy 2 and other

8    pharmacies.  Pharmacy 1 was a -- a compounding pharmacy in the

9    Middle District of Florida.

10        Pharmacy 2 was a compounding pharmacy in the Northern

11   District of Oklahoma.  You were an owner of SKR Services and

12   Ventures LLC, a Florida company, with it's principal place of

13   business in Miami.  Through SKR, you negotiated an agreement

14   with Pharmacy 1 and 2, whereby you and your coconspirators

15   received approximately 50 percent of the reimbursements less a

16   modest cost of goods sold from TRICARE for every prescription

17   referral.

18        During the conspiracy, you and your coconspirators

19   received approximately $3.4 million in kickbacks in exchange

20   for referring TRICARE prescriptions for approximately 1,066

21   beneficiaries to Pharmacies 1 and 2.  The kickbacks were

22   funneled through SKR.

23        You directly paid approximately $873,378 in kickbacks,

24   including kickback payments, as stated in Counts 12, 14, 17,

25   19, 21, 22 and 24, to Mauzy, Sahs and Mahbubani, either

1    individually or through their company, MHQ Ventures LLC.

2          You directly paid an additional $283,000 in kickbacks

3    to Uddin, including kickback payments set forth in Counts 25,

4    26, 30, and 35.  Those coconspirators paid sales reps to target

5    TRICARE beneficiaries.  The sales reps induced TRICARE

6    beneficiaries to sign up for expensive drugs without regard to

7    any legitimate medical need, and oftentimes based on false

8    representations and material omissions, including, for example,

9    claims that the drugs were custom designed for the patient or

10   that they were free when, in fact, TRICARE charged a copayment.

11         The prescription formulations were not customized for

12   individuals based on specific medical needs, but they were

13   developed to generate increased revenue from TRICARE.  TRICARE

14   reimbursed Pharmacies 1 and 2 thousands of dollars a month for

15   a single, compounded medication product.

16         As set forth in Count 4, TRICARE reimbursed

17   approximately $23,790 for a one-month supply of pain cream.

18         TRICARE reimbursed approximately $12,205 for a month

19   supply of scar scream as set forth in Count 2.

20         Based on these referrals from you, Sahs, Mauzy,

21   Mahbubani, Uddin, Carbon and others, TRICARE paid claims to

22   Pharmacies 1 and 2 in the approximate sum of $6,314,170.

23         After obtaining the beneficiary's information, you and

24   your coconspirators routed the beneficiary information in a

25   preprinted prescription to a telemedicine company for

1    ratification.  You and your coconspirators paid between

2    approximately $75 and $90 per prescription ratified by the

3    telemedicine companies.

4          Oftentimes, as in the case of Dr. Ramamurthy, who

5    ratified prescriptions, or Carbon who forged the name of a

6    doctor under her employ, the doctor never even examined the

7    patient, you and your coconspirators paid the sales reps

8    kickbacks of approximately 350 to 500 dollars for every

9    prescription they induced and that was adjudicated by TRICARE.

10         You paid approximately $447,000 to Scholtes, including

11    kickback payments set forth in Counts 15, 16 and 28.  And

12    kickbacks in exchange for, among other things, coordinating and

13    disseminating preprinted prescription pads containing

14    formulations for compounded medications devised for maximum

15    reimbursement and not for any individual's medical need.

16         And recruiting and establishing relationships with

17    telemedicine companies to provide doctors who ratified the

18    preprinted prescriptions without a valid physician-patient

19    consultation.

20         You also paid the approximate sum of $150,000 to

21    Carbon, including those kickback payments set forth in

22    Counts 27, 29 and 32, as direct and indirect kickbacks in

23    exchange for referring TRICARE beneficiary prescriptions for

24    compounded medications to you, and ratifying preprinted

25    prescriptions for compounded medications without regard to

1     medical necessity.

2         You e-mailed coconspirator Uddin on October 8, 2014, a

3     preprinted prescription pad with instructions to have the

4     healthcare provider sign it and, quote, always 12 refils*[sic]*,

5     auto refil*[sic],* 240 GM [grams], close quote.

6         On December 2, 2014, you texted Uddin to, quote, fill

7     out everything on the script except signature then e-mail to

8     jenifer*[sic]* and I...Dr. Espinosa will sign, close quote.

9         You also texted Uddin, he could send TRICARE

10    beneficiaries, quote, [a] prepaid visa to cover their co pays,

11    close quote.  That same day, you e-mailed Uddin introducing him

12    to Sahs.

13        On February 5, 2015, you e-mailed Uddin, Sahs, Mauzy

14    and Mahbubani instructing, quote, everyone [to] create an LLC,

15    close quote, because, quote, as the money amounts get larger,

16    it is in everyone's interest that I pay ONLY corporations and

17    not personal individuals, close quote.

18        Later, on February 10, 2015, you e-mailed Uddin, Sahs,

19    Mauzy and Mahbubani, instructing them to, quote, switch to

20    chronic pain #4 instead of #3, #3 no longer reimburses, close

21    quote.

22        You and other charged coconspirators used false

23    pretenses to gain access to U.S. military bases where you

24    targeted TRICARE beneficiaries.

25        You and other coconspirators, including Scholtes, sent

preprinted prescription pads to telemedicine companies directing those companies which scripts to use and where to send patients.

You and other charged coconspirators, including Scholtes, directed the transfer of patients between various pharmacies for the primary purpose of concealing the unlawful nature of the scheme.

After TRICARE significantly curtailed its reimbursement for compounded medications in June 2015, you, Sahs, Mauzy, Mahbubani and Scholtes, identified and pursued a potential new scheme by targeting healthcare programs with claims for Cancer Genomic or CGx.

Beginning in July 2016 through December 2017, you, Scholtes, Dr. Ramamurthy and others, conspired to defraud the United States and receive healthcare kickbacks, targeting Medicare beneficiaries to receive expensive and medically unnecessary CGx testing from Laboratory 1 in the Northern District of Georgia.

CGx testing is a highly complex and specialized type of genetic test designed to look for errors in genes associated with cancer.  Medicare authorizes payments for medically necessary CGx testing only when prescribed by the patient's treating physician to manage the patient's specific medical condition and the patient has a cancer diagnosis or personal history of cancer.

1          You and Scholtes negotiated a kickback arrangement

2     with Laboratory 1 where the lab agreed to pay 45 percent, minus

3     a modest prenegotiated cost of goods sold, of the amount

4     reimbursed to Laboratory 1 by Medicare for CGx -- for each CGx

5     test referred by your company, Q Health Services LLC.

6          You and your coconspirators targeted locations where

7     Medicare and Medicaid patients were known to be in high

8     concentration, such as adult day care and senior living centers

9     and health fairs.

10          Through Q Health you paid marketers to go to these

11     locations and collect DNA saliva samples from Medicare

12     beneficiaries.  You paid the marketers kickbacks for each

13     adjudicated CGx test submitted to and paid for by Medicare.

14          To maximize the chances of payments for the CGx tests

15     from Medicare, you and your coconspirators arranged for

16     healthcare providers, including through the use of

17     telemedicine, to ratify orders for CGx tests without conducting

18     legitimate examinations of the patients.

19          You recruited the services of Mangala Ramamurthy to

20     ratify orders for CGx texts for patients she had no valid

21     doctor-patient relationship with.  To conceal the lack of such

22     valid doctor-patient relationships, coconspirators generated,

23     quote/unquote, "medical records" that were almost identical for

24     each of the Medicare beneficiaries.

25          In all, Laboratory 1 paid kickbacks to you and your

coconspirators totalling approximately $1,527,590 for approximately 819 Medicare referrals.  Based on these referrals, Medicare paid Laboratory 1 approximately $3,322,006.

Scholtes e-mailed the CEO of Laboratory 1 on July 27, 2016, from the Southern District of Florida to the Northern District of Georgia, negotiating the percentage to be paid to you for each CGx referral Q Health sent to Laboratory 1.

On September 22, 2016, Mangala Ramamurthy completed and submitted to Laboratory 1 a provider's preferred order form and provider authorization.

On November 16, and December 14, 2016, respectively, Mangala Ramamurthy signed requisition orders ordering CGx testing for Medicare patients M.M. and A.C.  Laboratory 1 paid you a kickback in the approximate sum of $74,217 on February 1, 2017, and this amount included a payment for the referral of Medicare patient A.C.

On February 20, 2017, in response to concerns about low Medicaid reimbursement for CGx samples referred by Q Health, Scholtes sent an e-mail from the Southern District of Florida to a principal of Laboratory 1 in the Northern District of Georgia regarding a, quote, CGx Org. Call to review protocols and reimbursements, close quote.

In addition, Scholtes sent text messages to one or more employees of Laboratory 1 on April 17, May 1, and May 15, 2017, regarding receipts of payment from Laboratory 1 in

1    exchange for Q Health referrals of completed CGx samples.

2            Mr.  Ramamurthy, are all of these facts true and

3    correct?

4            DEFENDANT S. RAMAMURTHY:  Yes, Your Honor.

5            THE COURT:  Ms. Ramamurthy, do you have in front of

6    you a copy of your factual proffer?

7            DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

8            THE COURT:  Did you have the opportunity of reading

9    and discussing it fully with your attorneys before you signed

10    it?

11            DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

12            THE COURT:  So you agree if this case had gone to

13    trial, the Government would be able to prove beyond a

14    reasonable doubt that from July 2016, through December 2017,

15    you, Senthil Ramamurthy, John Scholtes and others conspired to

16    defraud the United States and receive healthcare kickbacks by

17    targeting Medicare beneficiaries to receive expensive and

18    medically unnecessary CGx testing from Laboratory 1 in the

19    Northern District of Georgia?

20            You are a licensed physician authorized to practice

21    medicine in Texas.  You were a principal of Valley Internal

22    Medicine, Geriatric and Diabetic Center, P.A., a medical clinic

23    in the McAllen Division of the Southern District of Texas

24    purportedly providing medical services to Medicare patients.

25            Valley Internal Medicine and Laboratory 1 are

authorized Medicare providers.  A provider may use its provider number to file claims with Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.  When submitting claims to Medicare for reimbursement, providers certify the contents of the claims are true, correct and complete.  The claims are prepared in compliance with the laws and regulations governing Medicare, including the antikickback statute, and the services purportedly provided are medically necessary.

As part of this scheme, you knew that Senthil Ramamurthy and Scholtes had negotiated a kickback arrangement with Laboratory 1 whereby the lab agreed to pay money for each CGx test referred by Senthil Ramamurthy's company, Q Health Services LLC.

You and your coconspirators targeted locations where Medicare beneficiaries were known to be in high concentration, such as adult day care and senior living centers and health fairs.

You and/or Individual 1, Valley Internal Medicine's office manager, who had no medical training, traveled to adult day care centers in and around McAllen, Texas to gain access to the centers, identify Medicare patients and have them complete a cancer family history questionnaire and collect a DNA saliva sample that Individual 1 transported back to Valley Internal Medicine.

Upon Individual 1's return, you would sign a

requisition form authorizing a CGx test for each Medicare beneficiary.

You ratified these orders for CGx tests without examining patients for which you had no valid doctor-patient relationship with at any time.  You created medical records almost identical for each of these Medicare beneficiaries.

You ordered or referred CGx testing for approximately 131 Medicare beneficiaries for which Medicare paid Laboratory 1 the approximately sum of $539,110.  Laboratory 1 in turn paid Senthil Ramamurthy approximately $242,599 in kickbacks tied to your referrals.

You ordered CGx testing for more than 100 more Medicare beneficiaries with whom you had a prior relationship.

You and your coconspirators committed the following overt acts:  On September 22, 2016, you completed and submitted to Laboratory 1 a provider's preferred order form and provider authorization.

On November 16, and December 14, 2016, respectively, you signed requisition forms ordering CGx testing for Medicare patients M.M. and A.C.

And on February 1, 2017, Laboratory 1 paid Senthil Ramamurthy a kickback in the approximate sum of $74,217, and this amount included a payment for the referral of Medicare patient A.C.

You also wrote prescriptions for compounded

medications for approximately 17 TRICARE patients, and in

connection with writing these prescriptions, you did not

perform medical consultations to ascertain whether the

medications ultimately dispensed were medically necessary.

As a result of your conduct, TRICARE paid claims to

Pharmacy 2 in the approximate sum of $756,023.  You were not a

medical provider under TRICARE and did not have any TRICARE

patients.

You conspired and agreed with the owners and operators

of Home Health Agency 1, a Medicare provider in the Southern

District of Texas, to refer Medicare patients to that home

health agency in exchange for illegal healthcare kickbacks.

You received, directly or indirectly, the approximate sum of

more than $170,000 between January 2014, and July 2019 and

these payments were, in fact, unlawful healthcare kickbacks in

exchange for your referral of Medicare patients to Home Health

Agency 1 so the agency could bill Medicare for home health

services.

A physician consulting agreement signed by you and

prepared by your coconspirators was an attempt by your

coconspirators to conceal the nature of the illegal healthcare

kickback relationship between you and Home Health Agency 1.

You may have provided some amount of legitimate services for

patients you referred to Home Health Agency 1.  The nature of

the payments from the home health agency were illegal

healthcare kickbacks.

As a result of your conduct, TRICARE and Medicare were fraudulently billed collectively by Pharmacy 2, Laboratory 1 and Home Health Agency 1, an amount of -- in excess of $1.5 million but less than $3.5 million.

Ms. Ramamurthy, are all of these facts true and correct?

DEFENDANT M. RAMAMURTHY:  Yes, Your Honor.

THE COURT:  To Defense Counsel, are you satisfied your client understands his or her rights, what he or she is giving up today and that there has been a sufficient factual basis for the plea of guilty?

MR. FERNANDEZ:  Yes, Your Honor.

MR. MARKUS:  Yes, Your Honor.

THE COURT:  It is the finding of the Court that the Defendants Senthil and Mangala Ramamurthy are fully competent and capable of entering informed pleas, that they are aware of the nature of the charges and the consequences of their pleas based upon their conversations with their attorneys and the colloquy before the Court.

That the pleas of guilty are knowing and voluntary and not support -- and supported by an independent basis in fact containing each of the essential elements of the offenses, and that the agreements are voluntary and not the result of force, threats or coercion.

1          I also find the Defendants have entered their pleas

2    with the advice and the assistance of effective and competent

3    counsel.

4          Your pleas are, therefore, accepted.  You are now

5    adjudged guilty.

6          And I will see you back in court for your sentencing

7    hearings, Mr. Ramamurthy, on Tuesday, January 21st at 1 p.m.

8          And Ms. Ramamurthy, on Tuesday, January 21st at

9    1:30 p.m.

10          I know, Mr. Markus, you have asked for a sentencing in

11    March but I don't put off sentencing for the completion of

12    cooperation.

13          MR. MARKUS:  Judge, just so you know, the trial in the

14    case for the four other codefendants are -- is set to start

15    January 21st, that same day.  And it is very possible that both

16    will be testifying in that trial.

17          THE COURT:  Correct.

18          MR. MARKUS:  So the Court doesn't want to have the

19    sentencing after they testify?

20          THE COURT:  The plea agreement references a Rule 35

21    after sentencing.  I don't put off sentencing for the

22    completion of cooperation.

23          MR. MARKUS:  Okay.  If I could just make one request,

24    then, and I have made this request about starting the trial one

25    day later before because I am going to be out of town on

1    that -- on that particular -- on the 21st.

2         And I think it's better to have the two sentencings on

3    different days anyway.  Could we be the next day on the 22nd,

4    then, just for Mom?

5         THE COURT:  It could be the next week if you like.

6         MR. MARKUS:  That would be great, Your Honor.

7         THE COURT:  So how about Tuesday, January 28th at

8    9 o'clock.

9         MR. MARKUS:  Thank you.

10        MR. FERNANDEZ:  To be clear, Your Honor, ours does not

11   change, correct?

12        THE COURT:  Yours does not change.

13        All right.  Thank you very much.

14        MR. MARKUS:  Thank you.

15        THE COURT:  You all have a good day.

16        (The proceedings concluded at 2:29 p.m.)
                    C E R T I F I C A T E

17

18        I hereby certify that the foregoing is an

19   accurate transcription of the proceedings in the

20   above-entitled matter.

21

22

23   _01/03/20_              STEPHANIE A. McCARN, RPR
        DATE                 Official United States Court Reporter
24                           400 North Miami Avenue, Twelfth Floor
                             Miami, Florida 33128
25                           (305) 523-5518