UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20710-CR-ALTONAGA/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SENTHIL RAMAMURTHY,

    Defendant.
_____/

**EMERGENCY MOTION FOR JUDICIAL RECOMMENDATION OF
TEMPORARY FURLOUGH FOR DEFENDANT SENTHIL RAMAMURTHY**

Defendant, Senthil Ramamurthy, through undersigned counsel, pursuant to S.D. Fla. R. 7.1(d)(1), moves the Court on an emergency basis for a recommendation that the Bureau of Prisons ("BOP") temporarily furlough Mr. Ramamurthy to supervised home confinement to account for the unique life-threatening risks COVID-19 presents to inmates with Mr. Ramamurthy's compromised medical history. The government takes no position on this motion. The grounds in support of the requested relief are detailed below.

**I.     INTRODUCTION**

Although the Court lacks jurisdiction to order BOP to furlough Mr. Ramamurthy, other federal courts have nonetheless issued orders recommending that BOP furlough similarly situated inmates given the unique exigencies COVID-19 presents to medically compromised inmates in federal detention. This is the relief Mr. Ramamurthy requests from the Court. Mr. Ramamurthy, who is currently housed at Federal Transfer Center; Oklahoma City ("FTC Oklahoma City") awaiting final transfer to Federal Correctional Institute, Bastrop ("FCI Bastrop"), suffers from several medical conditions that the

Center for Disease Control ("CDC") identifies as "high-risk" for COVID-19 complications, including diabetes, hypertension, and asthma. While incarcerated, Mr. Ramamurthy has also endured numerous Methicillin-resistant Staphylococcus aureus ("MRSA") infections, which have resulted in painful lesions on several areas of his body and leave him susceptible to sepsis, another CDC-recognized COVID-19 complication.

According to the CDC, irrespective of their age, medically compromised individuals like Mr. Ramamurthy who suffer from diabetes, asthma, and hypertension, endure the most severe impacts of COVID-19.[1] Indeed, more than 78% of COVID-19 cases that required intensive care unit hospitalization had at least one underlying condition; diabetes and chronic lung disease (including asthma) were two of the three most commonly reported conditions.[2] It should come as no surprise that "COVID-19-associated mortality is higher in persons with underlying chronic health conditions," including diabetes and hypertension.[3] These risks Mr. Ramamurthy faces from COVID-19 are magnified many-fold by the unavoidable circumstances of his incarceration at FTC Oklahoma City.

Recognizing this heightened risk to incarcerated persons, courts across the country, including the United States District Court for the Southern District of Florida, have ordered the release of inmates who—like Mr. Ramamurthy—have a high-risk of severe illness. *See e.g., United States v. Hernandez*, No. 18-20474-CR-ALTONAGA, Dkt. 42 (S.D. Fla. Apr. 2, 2020) (granting release to serve the remainder of her sentence on strict home confinement for "at-risk" inmate) [attached as Exhibit 1]; *United States v.*

---

[1] CDC, Coronavirus Disease 2019 (COVID-19): People who are at higher risk for severe illness, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last accessed May 122, 2020).
[2] https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm.
[3] *Id.*

2

*Hope*, No. 90-cr-06108-KMW, Dkt. 479 (S.D. Fla. Apr. 10, 2020) [attached as Exhibit 2]; *United States v. Minor*, No. 18-cr-80152-MIDDLEBROOKS, Dkt. 35 (S.D. Fla. Apr. 17, 2020) [attached as Exhibit 3]; *United States v. Suarez*, No. 18-20175-CR-COOKE, Dkt. 180 (S.D. Fla. Apr. 20, 2020) [attached as Exhibit 4]. This is not what Mr. Ramamurthy requests. Rather, Mr. Ramamurthy is only asking the Court to recommend that BOP temporarily furlough him from FTC Oklahoma City—an institution that has already been hit hard by an outbreak of COVID-19—to serve a portion of his sentence in home confinement, subject to BOP conditions of supervision, after which he will self-surrender to complete the remainder of his sentence. This temporary furlough will allow Mr. Ramamurthy to protect himself from the spread of COVID-19 by sheltering in place, as the CDC recommends.

## II.   BACKGROUND

On September 13, 2018, Mr. Ramamurthy appeared before Magistrate Judge Lauren Fleischer Louis as a result of an indictment filed against Mr. Ramamurthy and other co-defendants, alleging violations of *inter alia*, 18 U.S.C. § 1349, Conspiracy to Commit Health Care Fraud and Wire Fraud, and 18 U.S.C. § 371, Conspiracy to Defraud the United States and to Receive Healthcare Kickbacks.[4] The Court set bond for Mr. Ramamurthy and entered conditions of release with limited movement within the Southern District of Florida. On October 2, 2019, after a hearing, this Court ordered that Mr. Ramamurthy be detained based on violations of his original conditions of release imposed on September 27, 2018, and modified on May 28, 2019. He was detained at the

---

[4] On May 9, 2019, a grand jury returned a second superseding indictment against Mr. Ramamurthy and other co-defendants, alleging violations of *inter alia*, 18 U.S.C. § 1349, Conspiracy to Commit Health Care Fraud and Wire Fraud, and 18 U.S.C. § 371, Conspiracy to Defraud the United States and to Receive Healthcare Kickbacks.

Federal Detention Center, Miami (Miami, Florida) and on November 12, 2019, Mr. Ramamurthy entered a plea of guilty to Counts One and Thirty-Nine of a Second Superseding Indictment. On January 17, 2019, Mr. Ramamurthy was sentenced to 120 months imprisonment, following which Mr. Ramamurthy was transferred to FTC Oklahoma City, where he currently awaits transfer to his designated detention facility, FCI Bastrop.

When Mr. Ramamurthy entered detention, he was already suffering from several serious medical ailments.[5] First, he had been diagnosed with Type II diabetes, which makes him vulnerable to infection and can also aggravate unrelated illnesses. CDC has placed those suffering from Type II diabetes at high risk for serious complications from COVID-19 because diabetes-related health issues, such as high blood sugar levels, can make it harder to overcome COVID-19.[6] Second, his pre-existing asthma compromises his respiratory tract and can lead to illness and difficulty overcoming COVID-19.[7] Third, Mr. Ramamurthy also suffers from hypertension, for which he is prescribed medication. Hypertension places him in a high-risk category for viral illnesses, including COVID-19, even while taking his prescribed medication to manage the condition.[8] Indeed, Mr. Ramamurthy's increased risk for infection went from theoretical to actual once he arrived at FDC Miami, where, for the first time in his life, he developed abscesses and painful skin lesions related to an outbreak of MRSA in his housing unit.[9]

---

[5] A request for Mr. Ramamurthy's current medical information is pending with FTC Oklahoma City. Once Mr. Ramamurthy's medical records have been received, they will be made available to the court if necessary.
[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.
[7] *Id.*
[8] *See id.*
[9] Undersigned counsel understands that MRSA is not only prevalent in Mr. Ramamurthy's housing unit, but Mr. Ramamurthy's roommate recently suffered from a bout of MRSA that was

On April 27, 2020, counsel for Mr. Ramamurthy submitted a request to the Warden of FTC Oklahoma City requesting immediate transfer to his designated facility, FCI Bastrop, or in the alternative, a temporary furlough for home confinement while awaiting transfer to FCI Bastrop. Exhibit 5 (Letter from Jack E. Fernandez to Warden FTC Oklahoma City, dated April 27, 2020). Mr. Ramamurthy's request set forth his extensive medical issues that place him a heightened vulnerability to COVID-19. *Id.* On May 1, 2020, counsel for Mr. Ramamurthy sent a second letter to the Warden, reiterating the request for a temporary furlough and also requesting medical care for Mr. Ramamurthy for his recurrent MSRA infection. Exhibit 6 (Letter from Jack E. Fernandez to Warden FTC Oklahoma City, dated May 1, 2020). These requests to the Warden were unanswered and were again renewed by letter on May 15, 2020. Exhibit 7 (Letter from Jack E. Fernandez to Warden FTC Oklahoma City, dated May 15, 2020). On May 22, 2020, BOP responded to the request for medication and treatment for Mr. Ramamurthy's MRSA-related lesions and has provided him with the necessary medication. Exhibit 8 (Letter from J.D. Crook, Esq. to Jack E. Fernandez, dated May 22, 2020). Additionally, BOP acknowledged that it has received Mr. Ramamurthy's request for temporary furlough, but it gave no indication whether or when it would act on Mr. Ramamurthy's April 27, 2020 furlough request. *Id.*

### III.    LEGAL STANDARD

Although the Court lacks jurisdiction to order BOP to furlough Mr. Ramamurthy, "nothing 'prevents this Court from recommending' that such temporary release would be appropriate." *United States v. Moseley*, No. 16 Crim. 79 (ER), 2020 WL 1911217, at *2

---

left untreated until he was ultimately hospitalized for two weeks for treatment and has now also developed skin lesions again.

5

(S.D.N.Y. April 20, 2020) (quoting *United States v. Schaefer*, No. 07 Crim. 498 (LJL) (S.D.N.Y.), Doc. 73, at 4 (Apr. 6, 2020) [attached as Exhibit 9]). *See also United States v. Stahl*, No. 18-cr-694 (RA), 2020 WL 1819986, at *2 (S.D.N.Y. Apr. 10, 2020) ("[T]he Court respectfully but strenuously urges the BOP to consider temporarily releasing him pursuant to Section 3622(a) until the threat of COVID-19 has passed.").

The federal furlough statute, 18 U.S.C. § 3622, gives the Federal Bureau of Prisons ("BOP") the discretion temporarily to release prisoners in its custody if such release "appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him . . . ." If the prisoner meets these requirements, he or she may be authorized to "visit a designated place for a period not to exceed thirty days, and then return to the same or another facility . . . ." *Id.* The regulation set forth at 28 C.F.R. § 570.32 expressly allows for emergency furlough, which is defined as "[a] furlough allowing an inmate to address a family crisis or other urgent situation . . . ." as well as a transfer furlough, which is defined as "[a] furlough for the purpose of transferring an inmate from one Bureau facility to another, a non-federal facility, or community confinement (including home confinement). . . ." 28 C.F.R. § 570.32(a)-(b)(1). Both situations apply to Mr. Ramamurthy, as he faces an immediate medical crisis due to the spread of COVID-19 within FTC Oklahoma City as he awaits transfer to his designated facility. 28 C.F.R. § 570.32 permits BOP to authorize a furlough for up to 30 calendar days; because BOP has discretion to extend furloughs, if appropriate, it is possible that BOP could determine to extend a furlough for a medically vulnerable incarcerated person until the threat posed by COVID-19 subsides and it is safe for him to return to prison to complete his sentence. *See, e.g., United States v. Roberts*,

6

No. 18 Crim. 528–5 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 6, 2020); *Stahl*, 2020 WL 1819986, at *2 (recommending temporary furlough "until the threat of COVID-19 has passed.")

The unprecedented and increasingly dire COVID-19 pandemic and its unique impact on Mr. Ramamurthy as a diabetic with hypertension and asthma is the type of "urgent situation" justifying emergency furlough pursuant to 28 C.F.R. § 570.32(b)(1). Temporarily releasing Mr. Ramamurthy pending his final placement at FCI Bastrop pursuant to an emergency furlough is consistent with the public interest in protecting an individual from imminent risk of developing serious illness. Additionally, reasonable cause exists to believe that Mr. Ramamurthy will honor the conditions of the furlough. Considering the severe risk the COVID-19 pandemic poses to Mr. Ramamurthy's health and life, an emergency furlough is not only warranted, but necessary.

### IV. MR. RAMAMURTHY'S HEALTH IS IN IMMINENT JEOPARDY AND EMERGENCY FURLOUGH IS WARRANTED AND NECESSARY.

#### A. COVID-19 is a pandemic that is actively spreading throughout the nation and has infiltrated FTC Oklahoma City.

By now the Court is undoubtedly aware of COVID-19's massive societal impact. There have been nearly 100,000 deaths in the United States attributable to it and it has given rise to a Presidential declaration of national emergency.

The pandemic has been especially acute in U.S. prisons as it spreads among inmates and BOP staff. As of May 21, 2020, BOP has confirmed that 5,144 individuals have tested positive for COVID-19: Specifically, 1,735 inmates and 191 BOP staff are currently positive, 2,767 inmates and 392 staff have recovered, and 59 inmates have

died.[10] These numbers likely underestimate the actual number of cases due to limited testing[11] and COVID 19 is expected to reach those institutions that have not yet reported outbreaks. *See United States v. Daugerdas*, No. 09cr581, 2020 WL 2097653 (S.D.N.Y. May 1, 2020) (anticipating that COVID-19 will reach the institutions that have not yet reported cases, like it has spread throughout others).

Mr. Ramamurthy is currently housed at FTC Oklahoma City awaiting transfer to FCI Bastrop. Because FTC Oklahoma City is a federal transfer center, where inmates go pending designation elsewhere, it has a higher transient prison population. Inmates from all over the country transit through FTC Oklahoma City, a "major hub for prisoner transport," which may still be allowed to receive and transfer many inmates under the numerous exceptions to the BOP's temporary freeze on inmate transfers.[12] On March 24, 2020, *after* the BOP had implemented its freeze on inmate transfers, a Vice News report described the situation at FTC Oklahoma City as follows:

> The pace of new arrivals in Oklahoma City has slowed from 30-40 per day to 10-20, the person [a source who spoke on the condition of anonymity] said, but prisoners are still seated in close proximity to each other on transport aircraft. There are around 1,400 in-transit inmates at any

---

[10] https://www.bop.gov/coronavirus/ (last visited May 22, 2020).

[11] *NY Members of Congress Demand Aggressive and Immediate Covid-19 Testing* (Apr. 17, 2020) (reporting that only 19 inmates out of 2,400 at 2 federal prisons have been tested, with 10 of those 19 testing positive), https://www.law.com/newyorklawjournal/2020/04/17/ny-members-of-congress-demand-aggressive-and-immediate-covid-19-prevention-steps-at-citys-federal-jails/; *Louisiana federal prison no longer testing symptomatic inmates for coronavirus due to "sustained transmission"*, The Lens NOLA (Mar. 31, 2020), https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testing-symptomatic-inmates-for-coronavirus-due-to-sustained-transmission/ ("A federal prison . . . has stopped testing prisoners who are symptomatic for the coronavirus due to 'sustained transmission' at the facility.").

[12] https://keller.house.gov/media/in-the-news/sick-staff-inmate-transfers-and-no-tests-how-us-failing-federal-inmates.

8

> given time in Oklahoma City, meaning an outbreak there could quickly spread across the entire federal system.[13]

Even if FTC Oklahoma City were to fully suspend transfers, the virus has and will likely continue to spread throughout the institution and the surrounding community.[14]

Indeed, BOP data has recently reported a seemingly overnight spike in active COVID-19 cases at FTC Oklahoma City.[15] On May 18, 2020, FTC Oklahoma City had reported no active cases of COVID-19, one inmate dead from COVID-19, and seventeen other inmates who had previously tested positive recovered.[16] Only a day later, on May 19, 2020, FTC Oklahoma City reported that 54 inmates were actively positive for COVID-19—on that day it was the 10th highest for reported active cases out of the seventy-three BOP facilities and Residential Reentry Centers reporting confirmed COVID-19 cases.[17] As of May 21, 2020, BOP reports that Oklahoma City has a total of 73 individuals who tested positive for COVID-19 with 51 inmates and 3 staff actively positive, 1 inmate dead, and 18 recovered.[18] Although BOP's reporting numbers change daily and there is no information available on what, if any, testing protocols FTC

---

[13] *Id.*

[14] *Id.* ("Guards across the system said they are being ordered to use sick leave if they're unwell, which is limited and thus incentivizes working through illnesses. Staff with mild symptoms, such as a runny nose, now require work approval from agency headquarters in Washington, D.C., but the source in Oklahoma City said nobody seems to stay away for long. 'It's a rubber stamp,' they said. 'They give it a day and say the guy can come into work.'"). *See also* Exhibit 10 (U.S. Department of Justice Federal Bureau of Prisons, Press Release: Inmate Death at FTC Oklahoma City (dated May 2, 2020). On May 2, 2020, FTC Oklahoma City reported its first COVID-19-related death The decedent had arrived at the facility on March 26, 2020 but was not confirmed positive for COVID-19 until almost a month later, suggesting that he may not have contracted the disease until he was already at FTC Oklahoma City. Additionally, the decedent had to be transferred by FTC Oklahoma City staff to a local hospital for treatment, further increasing the potential for exposure.

[15] *See* https://www.bop.gov/coronavirus/ (last visited May 22, 2020).

[16] *See id.*

[17] *See id.*

[18] *See id.*

9

Oklahoma City has put in place, it is clear that the virus is present in the facility and spreading.

 **B. Mr. Ramamurthy is at imminent risk of becoming severely ill from COVID-19 and emergency furlough is necessary to protect him from the deadly pandemic.**

Because Mr. Ramamurthy suffers from Type II diabetes, hypertension, asthma, and has recurring bouts of MRSA which could lead to sepsis, he is at heightened risk of becoming severely ill from COVID-19 as it spreads through the BOP system.[17] Reported information from COVID-19 deaths over the past several months confirm this: 120 of the deaths from COVID-19 reported in the U.S. have been people in Mr. Ramamurthy's age group who suffered from hypertension, 147 have been diabetic, and 71 suffered from sepsis.[19] In regard to Mr. Ramamurthy's diabetes specifically, the CDC recommends diabetics follow so-called "sick day guidelines" which prescribe a series of protocols diabetics must follow when they are sick.[20] Said differently, for diabetics such as Mr. Ramamurthy negotiating the COVID-19 pandemic, every day is a sick day requiring special precautions which are, in large measure impossible in the prison setting. Of course, "social distancing"—as urged by medical professionals and the federal and state governments—is impossible to achieve in jails and prisons. FTC Oklahoma City reports that it currently houses 1,398 total inmates.[21] It is certainly not immune from the crowding and sanitation issues that persist across BOP facilities.

Crowded and poorly ventilated with not enough masks, soap, hand sanitizer, or medical resources, prisons have been described by medical professionals and courts as

---

[19] https://data.cdc.gov/NCHS/Conditions-contributing-to-deaths-involving-corona/hk9y-quqm.
[20] https://www.cdc.gov/diabetes/managing/flu-sick-days.html.
[21] https://www.bop.gov/locations/institutions/okl/; https://www.bop.gov/mobile/about/population_statistics.jsp.

10

creating "petri-dish-like conditions" and likely "tinderboxes" for the COVID-19 disease. *U.S. v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020). According to public health experts, people in confined spaces, including incarcerated individuals, "are at special risk of infection, given their living situations" and "may also be less able to participate in proactive measures to keep themselves safe" as "infection control is challenging in these settings."[22] Outbreaks of the flu regularly occur in jails, and many jails and prisons dealt with high numbers of H1N1 cases during the epidemic in 2009.[23] Indeed, because prisons are breeding grounds for COVID-19 infection, courts have ordered several institutions (FCI Elkton for example) to identify and evaluate medically vulnerable inmates, including those like Mr. Ramamurthy who have pre-existing health conditions, for removal, transfer, or release.[24]

For these reasons, the risks to Mr. Ramamurthy of becoming severely ill from COVID-19 while at FTC Oklahoma City are imminent, and this is why he seeks an immediate temporary furlough to protect him from unnecessary exposure to what, for him, could be a deadly outcome should he succumb to this pandemic. Undoubtedly, were Mr. Ramamurthy out in the community, he would be considered at high risk for contracting a severe form of COVID-19, requiring him to strictly self-isolate. The risk to him is exponentially higher while incarcerated at FTC Oklahoma City awaiting transfer to FCI Bastrop.

---

[22] https://wjactv.com/news/local/over-a-dozen-senators-demand-the-release-of-detained-children-amid-covid-19-pandemic (quoting March 18, 2020 letter from Congress to the Department of Homeland Security, U.S. Immigration and Customs Enforcement and Customs and Border Protection).
[23] https://www.theverge.com/2020/3/7/21167807/coronavirus-prison-jail-health-outbreak-covid-19-flu-soap.
[24] https://www.wkyc.com/article/news/investigations/over-240-elkton-prison-inmates-seek-compassionate-release-due-to-covid-19-spread/95-cde545c7-1b70-431f-80f4-c14537cc39d8.

In other cases similar to this one, courts have issued recommendations that BOP take action to protect inmates who are vulnerable to COVID-19. *See Roberts*, 2020 WL 1700032, at *3 (recommending that BOP consider a temporary release pursuant to the furlough statute and denying the defendant's motion for compassionate release without prejudice so that she may renew her request if BOP does not act within thirty days of its receipt). For example, in *United States v. Daugerdas*, No. 09cr581, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020), the district court denied the defendant's motion for compassionate release given the gravity of his crime, which the court described as having "orchestrated the largest tax shelter fraud scheme in American history—one that recruited ultra-wealthy taxpayers and corrupted young professionals at every turn [netting] Daugerdas . . . over $95 million in illicit proceeds for his own benefit, and the United States Treasury lost more than $1 billion in tax revenue." Thus, even though Daugerdas suffered from Type II diabetes, obesity, hypertension, and high cholesterol, which exposed individuals to a higher risk of serious illness from COVID-19, the relevant factors precluded granting compassionate release. Even so, however, the district court, while denying Mr. Daugerdas's compassionate release motion, nonetheless recommended BOP allow a medical furlough based on his health conditions, which placed him at heightened risk for COVID-related complications.

Likewise, in *United States v. Moseley*, No. 16 Crim. 79 (ER), 2020 WL 1911217, at *2 (S.D.N.Y. Apr. 20, 2020) the defendant, who had served about a year of a ten-year sentence for conspiracy to collect unlawful debts, unlawful collection of debts, conspiracy to commit wire fraud, wire fraud, aggravated identity theft, and false TILA disclosures, sought compassionate release based on the COVID-19 pandemic pending the

outcome of his appeal. Although the Court lacked jurisdiction to grant compassionate release, the court nonetheless suggested that a BOP-ordered furlough "may present the most appropriate course of action . . .." *Id. See also United States v. Underwood*, No. TDC-18-0201-1, 2020 WL 1529160 (D. Md. Mar. 31, 2020) (denying motion for release under the All Writs Act, but noting the court's belief "that a furlough may well be warranted, and would have no objection to the inclusion of this Order in any application for a furlough to be submitted by Underwood to the Bureau of Prisons…").[25]

"These are extraordinary times," *In the Matter of the Extradition of Manrique*, 19-mj-71055-MAG-1 (TSH), 2020 WL 1307109 (N.D. Cal. March 19, 2020) (referring to the COVID-19 pandemic) and are certainly the type of "urgent situation" that justifies granting of an emergency furlough. If forced to remain in FTC Oklahoma City, Mr. Ramamurthy faces imminent and substantial risk to his health and life. Furthermore, several courts have recognized that "the best—perhaps the only—way to mitigate the damage and reduce the death toll [of inmates from COVID-19] is to decrease the jail and prison population by releasing as many people as possible." *Daugerdas*, 2020 WL 2097653, at *5 (internal quotation marks omitted) (quoting *United States v. Nkanga*, 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020)).

    **C. Reasonable cause exists to believe that Mr. Ramamurthy will honor the conditions of furlough**.

---

[25] In other instances, even though the court expressed a preference for furlough, they granted compassionate release of vulnerable inmates due to BOP inaction. *See e.g., United States v. Delgado*, No. 3:18-cr-00017-VAB, Dkt. 76 (D. Conn. Apr. 30, 2020) (granting compassionate release, even though the court would have preferred furlough, because BOP failed to act) [attached as Exhibit 11]; *United States v. Park*, No. 16-cr-473 (RA), 2020 WL 1970603 (S.D.N.Y. Apr. 24, 2020) (granting release even though court would have preferred furlough, because BOP failed to act).

Mr. Ramamurthy acknowledges this Court revoked his pretrial release for his continued criminal activities. Since then, however, Mr. Ramamurthy has pled guilty, accepted responsibility, and assisted the government in the prosecution of others. He has shown the Court the level of his remorse and he has begun serving his time without incident. Mr. Ramamurthy's health considerations provide a further compelling reason to believe Mr. Ramamurthy will honor the conditions of the furlough. While Mr. Ramamurthy's risk of contracting COVID-19 would continue in the outside world, the best preventative measure is self-isolation. In other words, Mr. Ramamurthy would have the most compelling incentive—his own health and life—to stay home and under the supervision of the BOP. *See e.g., United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) ("While I acknowledge that possession of child pornography is a serious offense and that the defendant has already once violated the conditions of a term of supervised release, these considerations do not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is particularly vulnerable.").[26] In light the COVID-19 pandemic Mr. Ramamurthy has every reason to abide by the conditions of the furlough.

## V. CONCLUSION

Considering the increasingly dire COVID-19 pandemic, an immediate, but temporary, furlough for Mr. Ramamurthy while he is awaiting placement at FCI Bastrop

---

[26] Courts considering whether to grant bail have repeatedly held that health issues rendered defendants less of a flight risk. *See, e.g., United States v. Azubuike*, No. 02-CR-153-K, 2004 WL 7338330, at *4 (N.D. Okla. June 8, 2004) (finding that "given the poor state of his health," defendant "is likely to abide by the conditions of release" where defendant had a heart transplant and needed to take several medications throughout the day and was highly susceptible to infection due to Hepatitis B); *United States v. Dinunzio*, No. 08-10094-WGY, 2008 WL 2148754, at *4 (D. Mass. May 20, 2008) (defendant's medical conditions including morbid obesity, diabetes, coronary heart artery disease, and obstructive sleep apnea, weighed towards finding no risk of flight).

is not only warranted, but necessary to protect him from the imminent risk of serious illness. For the foregoing reasons, counsel respectfully requests that the Court issue an order recommending that Mr. Ramamurthy be granted a temporary furlough under home confinement, where he will continue to be supervised under the authority of the Bureau of Prisons, pending his transfer to FCI Bastrop.

## CERTIFICATION

Counsel for Mr. Ramamurthy has conferred with the government, which takes no position on the requested relief.

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

Dated:  May 22, 2020                    Respectfully submitted,

**Jack E. Fernandez**
Jack E. Fernandez
Fla. Bar No. 843751
Zuckerman Spaeder LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
Tel:  (813) 221-1010
Fax:  (813) 223-7961
jfernandez@zuckerman.com

**Gregg L. Bernstein**
Gregg L. Bernstein (admitted *pro hac vice*)
Alicia L. Shelton (admitted *pro hac vice*)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440

Baltimore, Maryland 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
gbernstein@zuckerman.com
ashelton@zuckerman.com

*Attorneys for Defendant*
*Senthil Ramamurthy*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 22nd day of May, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The Clerk of Court will serve a notice of electronic filing on all counsel of record. The foregoing document will be served electronically on:

>J.D. Crook, Esq.
>Legal Department, Federal Bureau of Prisons
>jdcrook@bop.gov
>
>Warden Young
>FTC Oklahoma City
>7410 S. MacArthur Blvd.
>Oklahoma City, OK  73169
>OKL/ExecAssistant@bop.gov
>
>AUSA Kevin Larsen
>United States Attorney's Office
>Southern District of Florida
>99 N.E. 4th Street, Suite 416
>Miami, FL 33132
>Kevin.Larsen2@usdoj.gov

        **Jack E. Fernandez**
        Jack E. Fernandez