# EXHIBIT 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20668-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SUNIL CHOPRA,

    Defendant,

_____/

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

This Cause is before the Court upon an Amended Expedited Motion for Compassionate Release[1] filed on May 26, 2020 by Defendant Sunil Chopra ("Defendant"). (DE 586). The Government responded in opposition on June 3, 2020. (DE 600). For the following reasons, Defendant's Motion is granted.

## BACKGROUND

In the present Motion, Defendant seeks compassionate release to lessen his chances of contracting the COVID-19 virus, which has serious and potentially lethal consequences for individuals of his age and medical background. Defendant is currently incarcerated at FCC Lompoc, one of the federal prisons hit hardest by the COVID-19 pandemic.[2] The New York Times

---

[1] Defendant's Motion for Reduced Sentence is moot in light of his Amended Motion.
[2] *FCI Lompoc*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/lof/ (last visited June 8, 2020).

reports that 1,112 prisoners have been infected within FCC Lompoc, making it one of largest virus clusters in the nation.[3]

FCC Lompoc is a minimum-security federal penitentiary split into two facilities, FCI Lompoc and USP Lompoc. Defendant presently is housed in a camp at USP Lompoc. Within USP Lompoc alone, the Bureau of Prisons ("BOP") reports that 176 inmates and 24 staffers have been infected.[4] (DE 597-1). As individuals routinely go between the two facilities, there is a substantial risk of increased infections at USP Lompoc.

As a result of these infections, four inmates have already lost their lives: two from USP Lompoc and two from FCI Lompoc.[5] These conditions have led to a substantial public outcry. A class action complaint has been filed by several inmates (DE 586-3), public protests have been held outside Lompoc,[6] and members of Congress have written to Michael Carvajal, Director of the BOP, expressing concern about Lompoc's response to the outbreak.

Defendant began his sentence in Lompoc on February 10, 2020, just before the COVID-19 outbreak. He is serving a 48-month sentence as a result of his guilty plea to conspiracy to obtain pre-retail medical products by fraud and deception in violation of 18 U.S.C. §670(a)(6). (DE 455).

---

[3] *Coronavirus in the U.S.: Latest Map and Case Count*, THE NEW YORK TIMES, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed June 8, 2020).

[4] Of course, these statistics are colored by the amount of testing which has been conducted in these facilities, and thus should not necessarily be taken at face value.

[5] Willis Jacobson, *Inmate at Lompoc prison becomes fourth at facility to die from COVID-19*, LOMPOC RECORD, June 1, 2020, https://lompocrecord.com/news/local/inmate-at-lompoc-prison-becomes-fourth-at-facility-to-die-from-covid-19/article_e2b03141-9b24-52a8-8c17-5d0edf1e588b.html.

[6] Janene Scully, Hundreds rally to protest plight of inmates at coronavirus-riddled Lompoc prison, THE TRIBUNE, May 26, 2020, https://www.sanluisobispo.com/news/coronavirus/article242994501.html#storylink=cpy,https://www.sanluisobispo.com/news/coronavirus/article242994501.html

Defendant was granted a significant downward variance from the sentencing guideline range of 97-121 months, in part due to his role and degree of participation in the overall offense, combined with his lack of prior criminal history. (DE 438).

On April 21, 2020, Defendant requested, through counsel, to be placed on home confinement with electronic monitoring to avoid contracting the COVID-19 virus. (DE 586-5). Defendant emphasized in his letter that contracting the virus would be potentially life threatening due to his medical conditions, which include asthma and a severe vitamin D deficiency. *Id.* Having received no response, on May 18, 2020, Defendant's counsel sent another letter to the Warden, repeating his request that Defendant be placed on home confinement. (DE 586-7). The letter included additional information regarding the correlation between vitamin D deficiencies and life threatening COVID-19 complications. Counsel states that on May 20, 2020, he received a letter denying Defendant's request for release.[7]

Due to this refusal, on May 22, 2020, Defendant filed a Motion for Compassionate Release, (DE 584), which he re-filed as an Amended Expedited Motion on May 26, 2020. (DE 586). In this Motion, which is presently under review, Defendant argues that pursuant to 18 U.S.C. §3582(c)(1)(A), extraordinary and compelling circumstances justify his immediate release.

Upon consideration of Defendant's Motion, I determined the most appropriate course of action would be to place Defendant on furlough until the COVID-19 emergency at FCC Lompoc ended and it was safe for Defendant to resume his incarceration. A furlough would accomplish the dual purpose of allowing Defendant to protect himself against serious illness or death, while also ensuring that Defendant paid his debt to society by serving his term of incarceration. However, the

---

[7] Counsel states that although he received this letter, he cannot presently locate it. As the Government does not dispute that Defendant's request was denied, I do not find it necessary for Defendant to file a copy of this letter.

decision to place a Defendant on furlough is within the exclusive control of the BOP and cannot be ordered by a federal judge. Therefore, in my May 28, 2020 Order, I urged the BOP to grant Defendant a furlough for the duration of the pandemic. (DE 592). I stated that "[i]f the BOP agrees to furlough Defendant, I will deny Defendant's Amended Motion for Compassionate Release. If, however, the BOP declines to grant this relief, I will consider the merits of Defendant's Motion." *Id.*

On May 29, 2020, the BOP issued a memorandum stating it had reviewed Defendant for furlough but denied the request because Defendant "is currently classified as a Minimum security level inmate with Out Custody status" and

> He was sentence[d] out of the Southern District of Florida, with release date of July 7, 2020, which is more than 2 years remaining on his sentence. [Defendant] arrived at FCC Lompoc on February 2, 2020, and has only be[en] at institution for 110 days. Additionally, he has numerous victims in his case and he owned and operated companies whose corporate office was based in California.

As Defendant will not be furloughed, I must now consider whether compassionate release is appropriate.

## I. LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides, in pertinent part, that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . if it finds that extraordinary and compelling reasons warrant such a reduction" and if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b),

132 Stat. 5194, 5239. Before granting compassionate release, the Sentencing Commission directs the court to consider whether a defendant poses "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13.

## II. DISCUSSION

The Parties do not dispute that Defendant has exhausted administrative remedies. Therefore, the only question is whether Defendant has displayed an extraordinary and compelling reason sufficient to justify release. Application Note 1 of Section 1B1.13 of the Sentencing Guidelines describes "extraordinary and compelling reasons" for release as including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes an "extraordinary and compelling reason" justifying compassionate release. U.S.S.G. 1B1.13.

On March 26, 2020, Attorney General William Barr ("AG Barr") issued guidance to the BOP regarding when an inmate should be released into home confinement due to COVID-19. Although this advice is not specifically directed to federal judges considering motions for compassionate release, it is instructive in this context. The memorandum provides that:

> Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some inmates, home confinement might be more effective in protecting their health. In addressing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:
> - The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
  . . .
- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;
- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety . . .;
- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community . . . .[8]

As an initial matter, while perhaps some individuals are safer while incarcerated, this is certainly not the case at FCC Lompoc. According to the CDC, 1,920,904 individuals have contracted the COVID-19 virus in the United States as of the writing of this Order.[9] The population of the United States is approximately 329,759, 580.[10] This means that approximately .58% of the United States population has contracted the COVID-19 virus. Even by the most conservative estimates, the percentage of cases within FCC Lompoc dwarfs that of the general public. Further, as demonstrated by Defendant's medical records, he has clearly been at risk of exposure himself. Twice he has been quarantined due to possible exposure to COVID-19. (DE 603).

Further, given the realities of prison life, it is not necessarily clear than any individual is safer from the virus while incarcerated. "Courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons 'is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected.'"[11]

---

[8] *See* Memorandum for Director of Bureau Prisons, William Barr, Attorney General, Prioritization of Home Confinement as Appropriate in Response to the COVID-19 Pandemic (Mar. 26, 2020).

[9] Ctrs. for Disease Control and Prevention, *Cases in U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 7, 2020).

[10] *U.S. and World Population Clock*, U.S. Census Bureau, https://www.census.gov/popclock/ (last visited June 7, 2020)

[11] *See United States v. Williams,* 2020 WL 1751545, at *2 (N.D. Fla. Apr. 1, 2020) (quoting *Basank v. Decker*, --- F. Supp. 3d ---, 2020 WL 1481503, at *3 (S.D.N.Y. March 26, 2020), and citing *United States v. Harris*, --- F. Supp. 3d ---, 2020 WL 1503444, at ¶ 7 (D.D.C. Mar. 27, 2020));

In recent testimony before the Senate Judiciary Committee, BOP Medical Director Dr. Jeffrey Allen commented that "[a]symptomatic transmission has caused particular challenges[.] It illustrates the infectivity of the disease and difficulty controlling it in correctional environments."[12] Particularly in FCC Lompoc where there is already such a high rate of infection, difficulty in controlling transmission is extremely concerning.

However, as the Government notes, incarceration within FCC Lompoc is not, in and of itself, grounds to grant compassionate release. Therefore, I must evaluate other relevant considerations to determine whether compassionate release is appropriate. In so doing, I am guided, in part, by the factors laid out by AG Barr.

1. **Age and Vulnerability**

Defendant is a 54-year-old man who states that he suffers from allergic rhinitis, intermittent asthma, obesity, elevated cholesterol, and a severe vitamin D deficiency. (DE 586). Defendant places particular emphasis on his vitamin D deficiency, citing several studies in which vitamin D deficiencies have been linked with serious COVID-19 symptoms. Defendant's doctor states that Defendant has "one of the lowest" levels of vitamin-D that Dr. Long has seen in 30 years of practice. (DE 586-2). The Government argues that Defendant has failed to establish that his vitamin D levels have not normalized since his diagnosis in February of 2019. The Government

---

*United States v. Campagna*, 2020 WL 1489829, at *2 (S.D.N.Y. Mar. 27, 2020); *Castillo v. Barr*, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); *United States v. Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020)).

[12] Dave Minsky, *Nearly all inmates at Lompoc FCI tested positive for coronavirus, most asymptomatic*, LOMPOC RECORD, June 5, 2020, https://lompocrecord.com/news/local/crime-and-courts/nearly-all-inmates-at-lompoc-fci-tested-positive-for-coronavirus-most-asymptomatic/article_f3fb06d7-f231-52b3-8f89-f21f11b73974.html.

does not dispute, however, that Defendant is not currently receiving vitamin D supplements and that his sun-exposure has been substantially limited by the COVID-related lock-down.

Defendant also suffers from intermittent asthma, which the CDC has identified as a COVID-19 risk factor.[13] Also, significantly, despite having access to Defendant's medical records, BOP did not state that it found his medical conditions to be inadequate to justify furlough.

### 2. The Security Level of the Facility

Defendant is currently under "minimum" security, which is the lowest security level.[14] According to the BOP website, "Minimum security institutions, also known as Federal Prison Camps (FPCs), have dormitory housing, a relatively low staff-to-inmate ratio, and limited or no perimeter fencing. These institutions are work- and program-oriented." *Id.* Probation has indicated that Defendant is currently assigned and working in the food service unit.

Oddly, Defendant's status as a minimum-security inmate was listed by BOP as a reason Defendant was *denied* furlough. According to AG Barr's memorandum, Defendant's minimum-security status should support a finding of release into home confinement.

### 3. Conduct in Prison

No assertions have been made with respect to any improper conduct by Defendant during his incarceration at Lompoc. Defendant was not convicted of a violent crime nor does the BOP bring forward any allegations of any violent or gang-related activity by Defendant at Lompoc.

---

[13] Ctrs. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 7, 2020) ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19.").
[14] Bureau of Prisons, https://www.bop.gov/about/facilities/federal_prisons.jsp (last visited June 7, 2020).

### 4. Verifiable Re-entry Plan

As Defendant was only recently incarcerated, Defendant did not have a plan for supervised release in place at the time he first sought to be released on home-confinement. However, Probation has indicated that Defendant's wife is currently renting an apartment where Defendant may be able to serve a term of home confinement. Defendant's wife has stated she will provide a copy of her lease to Probation, if necessary. Defendant's wife has also informed Probation that Defendant has secured employment as a logistics manager with a non-medical distribution/shipping company. Therefore, it appears that a verifiable re-entry plan could be put in place relatively quickly.

### 5. Crime of Conviction and Danger to the Community

Defendant's crime was entirely non-violent. He has no criminal history. He is precluded as a term of his supervised release from engaging in any work which involves "the sale, transfer, shipping or storage of any type of medical supplies or FDA consumer regulated products during the period of supervised release," thereby reducing his risk of engaging in the same enterprise. (DE 541). Further, in denying his request for furlough, BOP did not indicate he was being denied based on risk to the community.

### 6. Debt to Society

Although not a factor listed by the compassionate release statute, the guidelines of the Sentencing Commission, or AG Barr, both the Government and the BOP place considerable emphasis on the fact that Defendant has only begun serving his sentence and thus, has not yet paid his debt to society. In denying furlough to Defendant, the BOP highlighted the fact that Defendant's crime had many victims, presumably implying that these victims deserve to know that Defendant is being punished for his crime. The Government echoes this sentiment, arguing that

granting Defendant compassionate release would "fail to promote respect for the law; and it would severely, if not entirely, diminish the important deterrent effect of sentencing for this type of crime." (DE 600 at 10).

I agree that it is not typical to grant compassionate release to an individual who has served such a short portion of his sentence. However, my choices in this matter are constrained by the BOP's decision not to grant Defendant a furlough. As I noted in my previous Order, "Furloughing Defendant appears to present the fairest option as it lessens the potentially lethal risk of Defendant contracting the COVID-19 virus, while still requiring Defendant to repay his debt to society by serving his full term of imprisonment." (DE 592). As this option is now unavailable, I have only two choices: to allow Defendant to stay in Lompoc and risk serious illness or death, or to grant him compassionate release. In making this decision, I am guided by a simple truth: I sentenced Defendant to 48 months imprisonment, not death or confinement under threat of serious illness. His crime does not justify exposing him to that level of risk.

Further, home confinement with electronic monitoring *is a punishment*. Although Defendant may be granted compassionate release, he will not be allowed to walk free. His movements will be considerably limited for the full duration of his sentence, followed by a three-year period of supervised release. In fact, unlike a custodial sentence, a sentence of home confinement cannot be reduced due to good behavior. Defendant will be required to serve the full 48-months to which he was sentenced. Also, given the unique circumstances raised by the COVID-19 pandemic, I also do not find that deterrence is substantially undermined by granting Defendant compassionate release.

Finally, I reject the Government's argument that compassionate release may be granted only when an inmate has fully paid their debt to society. Judges impose sentences based on the

seriousness of the offense committed, and granting compassionate release necessarily requires cutting that period short. Instead, compassionate release reflects a finding that an individual *need not* repay their full debt to society in the form of incarceration, because extraordinary and compelling circumstances eliminate this requirement.

### III. CONCLUSION

Based upon the foregoing, and after careful consideration of the Parties' written submissions, the record, and applicable law, I find it appropriate to grant Defendant's request for compassionate release. Accordingly, it is hereby

**ORDERED and ADJUDGED** that:

1. Defendant Sunil Chopra's Amended Expedited Motion for Compassionate Release (DE 586) is **GRANTED**.

2. Defendant's Motion for Compassionate Release (DE 584) is **DENIED AS MOOT**.

3. Defendant's counsel shall work with Probation to create an approved plan of release as quickly as possible. Counsel shall file status reports each week from the date of this order giving a brief summary of all progress made towards creating a compliant plan of release.

4. Defendant shall be released from custody, effective immediately.

5. Defendant shall serve the remaining period of his sentence on home confinement, as set forth below:

   Home Detention with Electronic Monitoring - The defendant shall participate in the Home Detention Electronic Monitoring Program for a period of **FOURTY FOUR (44) MONTHS**. During this time, the defendant shall remain at his place of residence except for employment, religious observances, medical appointments and other activities approved in advance and provide the U.S. Probation Officer with requested documentation. The defendant shall maintain a telephone at his place of residence without 'call forwarding', 'call waiting', a modem, 'caller ID', or 'call back/call block' services for the above period. The defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer. The

defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

6. Upon completion of the 44-month home confinement period, Defendant shall begin his three-year term of supervised release, as set forth in his Amended Judgment. (DE 541). All previous conditions imposed in the Amended Judgment and commitment order remain in full force and effect.

7. Defendant must report in person to the United States Probation Office within 72 hours of his release.

**SIGNED** in Chambers at West Palm Beach, Florida, this 8th day of June, 2020.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE